# EXHIBIT 3



⚠ Caution
As of: October 29, 2019 6:50 PM Z

# Pilipovic v. Doe

United States District Court for the Eastern District of Michigan, Southern Division

September 19, 2019, Decided; September 19, 2019, Filed

Case No. 19-12033

**Reporter**

2019 U.S. Dist. LEXIS 160242 *; 2019 WL 4511678

HUSEIN PILIPOVIC, Plaintiff, v. JOHN DOE DRIVER and CRST INCORPORATED, Defendants.

**Subsequent History:** Appeal filed, 10/16/2019

## Core Terms

general jurisdiction, forum state, personal jurisdiction, systematic, contacts, alleges, confer, principal place of business, lack personal jurisdiction, conducting business, motion to dismiss, oral argument, incorporates, out-of-state, semi-truck, courts, driver

**Counsel:** **[*1]** For Husein Pilipovic, Plaintiff: Lukasz Wietrzynski, LEAD ATTORNEY, Michigan Injury Advocates, P.C., Rochester Hills, MI.

For CRST, Incorporated, Defendant: Dirk H. Beckwith, Foster, Swift, Southfield, MI.

**Judges:** Hon. GEORGE CARAM STEEH, UNITED STATES DISTRICT JUDGE.

**Opinion by:** GEORGE CARAM STEEH

## Opinion

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COMPLAINT (ECF No. 3)

Before the court is Defendant CRST Expedited, Inc.'s motion to dismiss for lack of personal jurisdiction or for improper venue. The facts and legal arguments presented in the parties' briefs are sufficient to adjudicate the motion. Oral argument would not significantly aid the decisional process. Thus, pursuant

to E.D. Mich. Local R. 7.1(f)(2), IT IS ORDERED that the motion be resolved without oral argument.

For the reasons explained below, Defendant's motion is granted.

BACKGROUND FACTS

This action arises from a motor vehicle accident that occurred in West Memphis, Arkansas. Plaintiff Husein Pilipovic alleges that a semi-truck owned by CRST Incorporated[1] and operated by a "John Doe" driver struck the semi-truck that Pilipovic was occupying. Pilipovic is a citizen of Michigan. CRST Expedited is incorporated in Iowa and has its principal place of business in Cedar Rapids, **[*2]** Iowa.

Plaintiff filed this action in Wayne County Circuit Court, alleging negligence against the John Doe driver and owner's liability against CRST Expedited. Defendant removed the action based upon diversity jurisdiction. Defendant seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(2), contending that the court lacks personal jurisdiction over it.

LAW AND ANALYSIS

Plaintiff bears the burden of demonstrating that jurisdiction exists and, in the face of a properly supported motion for dismissal, must "set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). Personal jurisdiction can be general, when the

---

[1] Defendant states that its correct name is CRST Expedited, Inc.

defendant has continuous and systematic contact with the forum state, or limited (also known as specific), when the subject matter of the lawsuit is related to the defendant's contacts with the forum state. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011).

Plaintiff alleges that the court has general personal jurisdiction over CRST Expedited. In Michigan, courts have general jurisdiction over a corporation when it incorporates under Michigan laws, consents to be sued in Michigan, or carries on a "continuous and systematic part of its general business within the state." M.C.L. § 600.711.[2] For a corporation, the "paradigm forum" for the exercise of general jurisdiction **[*3]** is its place of incorporation or principal place of business. *Goodyear*, 564 U.S. at 924. The exercise of general jurisdiction over a corporation is appropriate only when its affiliations with the forum state are "so constant and pervasive 'as to render [it] essentially at home.'" *Daimler AG v. Bauman*, 571 U.S. 117, 122, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014) (quoting *Goodyear*, 564 U.S. at 919).

CRST Expedited is not incorporated in Michigan and does not consent to suit in Michigan. Plaintiff argues that it engages in continuous and systematic business in Michigan because it has a 65,000-foot distribution center in Detroit and because it maintains a resident agent for service of process. Plaintiff cites no authority for the proposition that these contacts are sufficient to confer general jurisdiction over CRST Expedited. Merely conducting business in the forum state does not necessarily render a corporation "at home" there. *See Daimler*, 571 U.S. at 132 ("[A] corporation's 'continuous activity of some sorts within a state is not enough to support the demand that the corporation is amenable to suits unrelated to that activity.'"). Indeed, a "corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* at 139 n.20. The Supreme Court has rejected arguments similar to Plaintiff's, finding that conducting business in a state **[*4]** does not suffice for purposes of general jurisdiction. *See Daimler*, 571 U.S. at 123, 137-39 (multiple California facilities insufficient to confer general jurisdiction over out-of-state corporation); *BNSF Ry. Co. v. Tyrrell*, 137 S.Ct. 1549, 1559, 198 L. Ed. 2d 36 (2017) (one facility, miles of railroad track, and 2,100 employees in Montana insufficient to confer general jurisdiction over out-of-state corporation).

In light of this clear precedent, CRST Expedited's contacts are insufficient to render it essentially "at home" in Michigan. The court lacks personal jurisdiction over CRST Expedited.

The remaining defendant, "John Doe," has neither been identified nor served with the summons and complaint. Accordingly, this action has not commenced as to John Doe. *See Bufalino v. Michigan Bell Tel. Co.*, 404 F.2d 1023, 1028 (6th Cir. 1968) ("The action was never commenced as to the 'Does' because they were not identified nor served with process."); *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996) (citing *Bufalino*); *Thames v. City of Westland*, 310 F. Supp.3d 783, 802 (E.D. Mich. 2018) ("Until a plaintiff amends her complaint to identify a John Doe defendant by his true name, 'the John Doe allegations in the complaint are mere surplusage.'"). Therefore, the court will dismiss the complaint as to John Doe.

CONCLUSION

IT IS HEREBY ORDERED that Defendant CRST Expedited's motion to dismiss (ECF No. 3) is GRANTED and that the complaint is DISMISSED.

Dated: September 19, 2019

/s/ George **[*5]** Caram Steeh

GEORGE CARAM STEEH

UNITED STATES DISTRICT JUDGE

*End of Document*

---

[2] Within the limits of due process, "[f]ederal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014).



⚠ Caution
As of: October 29, 2019 6:52 PM Z

# Communs. Network Billing v. ILD Telcomms., Inc.

United States District Court for the Eastern District of Michigan, Southern Division

August 16, 2017, Decided; August 16, 2017, Filed

Civil Case No. 17-10260

**Reporter**
2017 U.S. Dist. LEXIS 130408 *; 2017 WL 3499869

COMMUNICATIONS NETWORK BILLING, INC., a Nevada corporation, Plaintiff, v. ILD TELECOMMUNICATIONS, INC., nka ILD CORP., a Delaware corporation, Defendant.

## Core Terms

personal jurisdiction, forum state, billing, contacts, avail, communications, Operations, collected, venue, bank account, purposefully, convenience, services, argues, general jurisdiction, conducting business, activities, witnesses, parties

**Counsel:** **[*1]** For Communications Network Billing, Inc., Plaintiff: Max S. Emmer, Frasco Caponigro Wineman & Scheible, Troy, MI; Tracey L. Porter, Eric D. Scheible, Frasco Caponigro Wineman & Scheible, PLLC, Troy, MI.

For ILD Telecommunications, Inc., now known as ILD Corp., Defendant: Anthony J. Kochis, Wolfson Bolton PLLC, Troy, MI.

**Judges:** Honorable LINDA V. PARKER, UNITED STATES DISTRICT JUDGE.

**Opinion by:** LINDA V. PARKER

## Opinion

**OPINION AND ORDER (1) GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2) AND (2) DENYING AS MOOT DEFENDANT'S MOTION TO TRANSFER VENUE [ECF NO. 11]**

### I. Introduction

This lawsuit arises from an agreement made between Plaintiff Communications Network Billing, Inc. ("Plaintiff" or "CNBI") and Defendant ILD Telecommunications, Inc. nka ILD Corp. ("Defendant" or "ILD"). (ECF No. 1.) Through the agreement, Plaintiff hired Defendant for billing and collection work related to Plaintiff's long distance services. (*Id.* at Pg ID 2.) Plaintiff alleges Defendant failed to remit fees and owes Plaintiff $838,870.92. (*Id.* at Pg ID 3.)

Presently before the court is Defendant's motion to dismiss or in the alternative motion to transfer venue, filed pursuant to Federal Rule of Civil Procedure 12(b)(2) and 28 U.S.C. § 1404(a) respectively on February **[*2]** 21, 2017. The motion has been fully briefed. Finding the facts and legal arguments sufficiently presented in the parties' briefs, the Court dispensed with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f) on this date. For the reasons that follow, the Court is granting Defendant's motion to dismiss and denying the motion to transfer venue as moot.

### II. Applicable Standards

When reviewing a Rule 12(b)(2) motion, a federal district court may proceed by relying solely on written submissions and affidavits to resolve the jurisdictional questions or it may permit limited discovery or hold an evidentiary hearing in aid of the motion. *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989) (citation omitted). In all scenarios, "'the plaintiff always bears the burden of establishing that jurisdiction exists.'" *Id.* (citing *McNutt v. General Motors Acceptance*

*Corp.*, 298 U.S. 178, 189, 56 S. Ct. 780, 80 L. Ed. 1135 (1936).

A federal court may only exercise personal jurisdiction in a diversity case if such jurisdiction is (1) authorized by the law of the state in which the court sits; and (2) is otherwise consistent with the Due Process Clause of the Fourteenth Amendment. *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir. 1994); *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980). The Sixth Circuit "historically has understood Michigan to intend its long-arm statute to extend to the boundaries of the fourteenth amendment" and therefore, "the court need only determine whether exercising personal jurisdiction violates constitutional [*3] due process." *Children's Legal Servs., PLLC v. Shor Levin & DeRita, PC*, 850 F.Supp.2d 673, 679 (6th Cir. 2012) (quoting *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) and *Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 477 (6th Cir. 2003)).

Personal jurisdiction over an out-of-state defendant arises from "certain minimum contacts with [the forum] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (internal citation omitted). Personal jurisdiction takes two forms: general and specific. "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011) (citing *Int'l Shoe Co.*, 326 U.S. at 317.) "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded at home." *Id.* at 924.

The Supreme Court recently reiterated the governing principles of specific jurisdiction in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 198 L. Ed. 2d 395 (2017). "In order for a state court to exercise specific jurisdiction, 'the *suit* must 'aris[e] out of or relat[e] to the defendant's contacts with the forum.'" *Bristol-Myers Squibb Co.*, 137 S.Ct. at 1780 (citing *Daimler AG v. Bauman*, 571 U.S. __, 134 S. Ct. 746, 754, 187 L. Ed. 2d 624 (2014) (internal quotation marks omitted; emphasis added)); *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-473, 105 S.

Ct. 2174, 85 L. Ed. 2d 528 (1985); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S. Ct. 1868, 80 L. Ed. 2d 404. "In other words, there must be an affiliation between the [*4] forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (citing *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 919.)

The Sixth Circuit has established a three-part test to determine whether a court may exercise specific personal jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000) (citing *Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

A defendant "purposefully avails" himself if his "contacts proximately result from the actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Burger King Corp.* 471 U.S.at 475. This requirement "ensures that a defendant will not be haled into a jurisdiction solely as the result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or third person.'" *Id.* at 475 (quoting *Keeton v. Hustler Magazine*, 465 U.S. 770, 774, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984); *Helicopteros*, 466 U.S. at 417)).

A court may transfer an action under [*5] 28 U.S.C. § 1404(a) if "(1) the action could have been brought in the transferee district court; (2) a transfer serves the interest of justice; and (3) a transfer is in the convenience of the witnesses and parties." *Kepler v. ITT Sheraton Corp.*, 860 F.Supp. 393, 398 (E.D. Mich.1994) (internal citation omitted). In determining whether transfer is proper, courts consider the following factors:

> (1) the convenience of the witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance

of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice.

*IFL Group v. World Wide Flight Servs.*, 306 F.Supp.2d 709, 712 (E.D. Mich. 2004) (citing *Overland, Inc. v. Taylor*, 79 F.Supp.2d 809, 811 (E.D. Mich. 2000)).

Defendant bears the burden of showing that transfer of venue is appropriate. *Id.* at 714. Plaintiff's choice of forum deserves "foremost consideration" and should not be disturbed unless the balance of factors strongly favors Defendant. *West Am. Ins. Co. v. Potts*, No. 89-6091, 1990 U.S. App. LEXIS 12513, 1990 WL 104034 at *2 (6th Cir. July 25, 1990) (unpublished) (citing *Nicol v. Koscinski*, 188 F.2d 537 (6th Cir.1951)). The convenience of the witnesses is "one of the most important factors in determining whether to grant a motion to change venue under § 1404(a)." *Downing*, No. 09-14351, 2010 U.S. Dist. LEXIS 35763, 2010 WL 1494767 at *5 (internal [*6] citation omitted).

### III. Background

Plaintiff CNBI provides long distance phone services to customers. (ECF No. 1 ¶ 5.) On May 12, 2004, Plaintiff entered into the Billing and Collections Agreement ("Agreement") with Defendant regarding billing and collections. (*Id.* at ¶ 6.) The Agreement stated that Defendant would provide billing and collection services for call records supplied by Plaintiff. (ECF No. 1-1 at Pg ID 13.) In particular, ILD would receive Plaintiff's billing records and transmit them to local exchange carriers. (ECF No. 11 at Pg ID 47.) The local exchange carriers would bill and collect the charges. (*Id.*) In return for providing billing and collection services, CNBI would pay ILD certain fees and charges. (ECF No. 1 ¶ 8.) Plaintiff alleges that Defendant failed to remit the fees it collected based on the call records supplied by Plaintiff. (*Id.* at ¶ 9.)

The Agreement states that it is between "[CNBI], a Nevada limited liability company with its principal office at 6701 Democracy Blvd, Suite 300, Bethesda, MD, 20817 and [ILD], a Delaware corporation with its principal office located at 16200 Addison Road, Suite 100, Addison, Texas 75001." (ECF No. 1-1 at Pg ID 13.) However, [*7] Plaintiff's complaint states that Plaintiff is a Nevada corporation with a principal place of business in Wayne County, Michigan. (ECF No. 1 ¶ 1.) The complaint also states that Defendant is a Delaware

corporation that conducts business in Wayne County, Michigan. (*Id.* ¶ 2.)

Defendant filed their motion to dismiss on February 21, 2017 alleging that this Court lacks personal jurisdiction over the matter. Defendant argues that it is not subject to personal jurisdiction in Michigan for four reasons. First, ILD argues that it is not subject to general personal jurisdiction because it does not conduct business, own properties, or have a corporate presence in Michigan. (ECF No. 11 at Pg ID 54.) Rather, ILD states it is a Delaware corporation with a principal place of business in Florida. (*Id.* at Pg ID 47.) Second, ILD contends that it is not subject to specific personal jurisdiction because it did not purposefully avail itself of the privilege of doing business in Michigan. (*Id.* at Pg ID 56.) Third, Defendant alleges that Plaintiff's claims do not arise from ILD's activities in Michigan. (*Id.* at Pg ID 59.) Fourth, Defendant claims their alleged acts do not have a substantial enough connection [*8] to make personal jurisdiction in Michigan reasonable. (*Id.* at Pg ID 60.) If this Court finds that there is personal jurisdiction, Defendant requests that this case be transferred to the Southern District of Florida for the convenience of the parties and witnesses and in the interest of justice. (*Id.* at Pg ID 62.)

In response, Plaintiff reminds the Court that it need only make a prima facie showing of jurisdiction to defeat a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2). (ECF No. 13 at Pg ID 84.) Next, Plaintiff argues that Defendant purposefully availed itself of the privilege to conduct business in Michigan. (*Id.* at Pg ID 88.) In particular, Plaintiff states that "[w]henever ILD communicated with CNBI regarding its performance under the Agreement, billing, services, or general inquiries and business operations, it did so with BOSS' employees[1] working from CNBI's office in Harper Woods, Michigan." (*Id.* at Pg ID 89.) Further, Defendant allegedly availed themselves to Michigan by remitting CNBI's payments into its Michigan-based Comerica bank accounts on a weekly basis. (*Id.*) According to Plaintiff, Defendant has therefore enjoyed the benefits of conducting business in Michigan. (*Id.*)

Next, Plaintiff argues that [*9] this action arises from Defendant's conduct in Michigan because Defendant failed to make timely payments to CNBI's Michigan-based bank accounts. (*Id.* at Pg ID 90.) Plaintiff also

---

[1] In their opposition brief, Plaintiff explains that it outsources its day-to-day operations to a third party, Back Office Support Systems, Inc. ("BOSS").

contends that Defendant's activities have a substantial connection to Michigan.

Lastly, Plaintiff requests that this matter not be transferred to the Southern District of Florida because transfer would shift the burden from Defendant to Plaintiff. (*Id.* at Pg ID 94.)

## IV. Analysis

### A. General Jurisdiction

This Court can assert personal jurisdiction over a foreign company if their contacts with the state are so "continuous and systematic" that the company finds that they are "essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 919 (citing *Int'l Shoe Co.*, 326 U.S. at 317.) Plaintiff does not allege that Defendant's conduct is continuous and systematic to warrant general jurisdiction over Defendant. Defendant has no physical contacts in Michigan nor does Defendant regularly conduct business in Michigan. Therefore, the Court does not have general jurisdiction over Defendant ILD.

### B. Specific Jurisdiction

The Court will now turn to the Sixth Circuit's three-part test to determine whether specific jurisdiction exists over ILD. As previously noted, to establish specific **[*10]** jurisdiction, the Court must find that:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Calphalon Corp.*, 228 F.3d at 721 (citing *Southern Machine Co*, 401 F.2d at 381 (6th Cir. 1968)).

Plaintiff argues that Defendant purposefully availed themselves to jurisdiction in Michigan because of its communications with BOSS and payments to Plaintiff's Michigan-based accounts. (ECF No. 13 at Pg ID 89.) Plaintiff notes that "[f]or nearly 13 years, ILD deposited tens of thousands of dollars on a weekly basis into

CNBI's Michigan based Comerica account." (*Id.* at Pg ID 83.) These repeated communications and transactions, Plaintiff argues, are sufficient to establish purposeful availment.

First, the Court notes that the following have remained undisputed, as noted by Defendant: (1) Defendant did not travel to Michigan to negotiate the Agreement; (2) Defendant's alleged statements that form the basis for the fraud claim **[*11]** were not made in Michigan; (3) Defendant sent money to Plaintiff from Florida; and (4) Defendant has no physical presence in Michigan. (ECF No. 15 at Pg ID 119.)

Defendant's contacts with Michigan are insufficient to establish purposeful availment. Defendant's only contacts with the forum were communications with a third party, BOSS, and depositing remittances into Plaintiff's bank account. In *Int'l Tech. Consultants v. Euroglas*, the Sixth Circuit similarly determined that the out-of-state defendant's letters, phone calls, and faxes to plaintiff in Michigan did not alter its determination that the court did not have personal jurisdiction over defendant. 107 F.3d 386, 395 (6th Cir. 1997). The Sixth Circuit explained:

> [T]he only reason the communications in question here were directed to Michigan was that [Plaintiff] found it convenient to be present there. [Defendant] was not attempting to exploit any market for its products in Michigan, and the company presumably would have been pleased to communicate with [Plaintiff] wherever the latter wished....From the perspective of [Defendant], it was purely fortuitous that [Plaintiff] happened to have a Michigan address.

*Id.*; see also *Wizie.com LLC v. Borukhin*, No. 2:14-10391, 2014 U.S. Dist. LEXIS 82430, 2014 WL 2743375 (E.D. Mich. June 17, 2014) (finding **[*12]** that exercising personal jurisdiction over defendant unreasonable where only contacts with forum state were emails, faxes, and phone calls). The Court similarly finds that it would be unreasonable to exercise specific personal jurisdiction over ILD for its communications with BOSS and deposits into the Michigan-based bank account.

The second prong of the Sixth Circuit test requires that the cause of action arise from the defendant's activities in the forum state. The Supreme Court's recent decision in *Brystol-Myers Squibb Co.* affirmed this principle, stating that "there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum

State and is therefore subject to the State's regulation. *Bristol-Myers Squibb Co.*, 137 S.Ct. at 1780 (citing *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 919.) The Complaint makes clear that the underlying controversy in this matter is ILD's alleged failure to remit the fees collected based on the call records supplied by CNBI. (ECF No. 1.) Therefore, the critical question is where Defendant allegedly made the decision to withhold CNBI's payments.

Defendant provided a declaration by Kathy McQuade, the vice-president of Billing and Collection of ILD. In the declaration, **[*13]** McQuade states that Defendant's billing clearinghouse division is based in Fort Lauderdale, Florida. (See ECF No. 11 at Pg ID 70.) The billing clearinghouse division in Fort Lauderdale is responsible for all of the servicing of the account, as well as the following tasks: generating and reviewing client settlement statements; addressing client inquiries and problems; and maintaining and negotiating the local exchange carrier agreements. (*Id.*)

With respect to CNBI, the staff members at the billing clearinghouse operations in Florida would submit monthly bill record data over the internet to ILD's billing and collection network database in Texas. (*Id.* at Pg ID 71.) After the data is aggregated in Texas, it is sent to third-party vendors in Virginia or Texas who would include the phone charges on a customer's local telephone bill. (*Id.*) Once the customer paid their bill, the money would be sent to ILD's bank in Florida. (*Id.*) Any money sent from ILD to CNBI was sent from ILD's bank account in Florida to the bank account designated by the customer, CNBI. (ECF No. 11 at Pg ID 51.) Based on these facts, the Court finds that any decision to withhold money from CNBI would have occurred in Florida. **[*14]** Therefore, Plaintiff fails to satisfy the second prong of the test.

The third prong of the test calls for an inquiry into whether defendant has a "substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Calphalon Corp.*, 228 F.3d at 721. For the above stated reasons, the Court finds that Defendant lacks a substantial connection with Michigan to make the exercise of jurisdiction over ILD reasonable.

### V. Conclusion

The Court therefore concludes that it lacks personal jurisdiction over the Defendant in this matter. Therefore, the Court does not need to discuss the issue of transferring venue.

Accordingly,

**IT IS ORDERED** that Defendant's motion to dismiss pursuant to Federal Rule of Procedure 12(b)(2) is **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant's motion to transfer venue is **DENIED AS MOOT**;

**IT IS FURTHER ORDERED** that Plaintiff's complaint is dismissed without prejudice.

/s/ Linda V. Parker

LINDA V. PARKER

U.S. DISTRICT JUDGE

Dated: August 16, 2017

---

**End of Document**



ⓘ Cited
As of: October 29, 2019 6:54 PM Z

# Meyer v. Capital All. Grp.

United States District Court for the Southern District of California

November 6, 2017, Decided; November 6, 2017, Filed

Case No.: 15-CV-2405-WVG

**Reporter**

2017 U.S. Dist. LEXIS 183690 *; 2017 WL 5138316

DAVID MEYER et. al., Plaintiffs, v. CAPITAL ALLIANCE GROUP et. al., Defendants.

## Core Terms

faxes, Defendants', telemarketing, motion to dismiss, private right of action, Consumer, trespass, Message, damages, regulations, loans, economic injury, allegations, Plaintiffs', conversion, summary judgment, advertising, unsolicited, telephone, lack standing, Communications, cases, telephone line, intrusion, phone, print, ink, summary judgment motion, personal property, subject matter jurisdiction

## Case Summary

### Overview

HOLDINGS: [1]-Recipients who received junk faxes advertising small business loans lacked standing to bring claims under the Junk Fax Law, Cal. Bus. & Prof. Code § 17538.41, and Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200 et seq., because they lacked the measurable economic damages that both statutes required; [2]-One recipient received seven faxes over a months-long period; his claim that the faxes consumed an unknown quantity of ink and paper failed to establish a cognizable, non-trivial economic injury; other recipients received the faxes through computer-based fax services that did not automatically print the faxes; [3]-Small business loans were not covered by the Consumer Legal Remedies Act (CLRA), Cal. Civ. Code §§ 1761, 1770, and the advertising services defendants provided to lenders were ancillary services that did not bring the case within the CLRA.

### Outcome

Defendants' motion for partial summary judgment was granted in part; defendants' motion to dismiss was granted in part; the recipients' motion for partial summary judgment was denied.

## LexisNexis® Headnotes

Civil Procedure > Judgments > Summary Judgment > Entitlement as Matter of Law

Civil Procedure > ... > Summary Judgment > Burdens of Proof > Movant Persuasion & Proof

Civil Procedure > ... > Summary Judgment > Burdens of Proof > Nonmovant Persuasion & Proof

*HN1*[⬇] **Summary Judgment, Entitlement as Matter of Law**

A party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense - on which summary judgment is sought. The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of establishing the basis for its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate absence of a genuine issue of material fact. The party opposing summary judgment cannot rest upon the mere allegations or denials of its

pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P 56(e).

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > Genuine Disputes

Civil Procedure > ... > Summary Judgment > Burdens of Proof > Movant Persuasion & Proof

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > Materiality of Facts

*HN2*[↓]  **Entitlement as Matter of Law, Genuine Disputes**

On summary judgment, the moving party has the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party. A fact is material if it could affect the outcome of the suit under applicable law. A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.

Antitrust & Trade Law > Consumer Protection > False Advertising > State Regulation

Business & Corporate Compliance > ... > Communications Law > Federal Acts > Telephone Consumer Protection Act

*HN3*[↓]  **False Advertising, State Regulation**

The Junk Fax Law, Cal. Bus. & Prof. Code § 17538.41, is part of the series of statutes that are commonly referred to as the False Advertising Law (FAL). Provisions directed at false advertising are contained in division 7, part 3, chapter 1, starting with section 17500, which prohibits false or misleading statements. Section 17538.43—which appears in division 7, part 3, chapter 1, article 2 of the Business and Professions Code is contained within the FAL. This section specifically regulates the transmission of junk faxes.

Antitrust & Trade Law > Consumer Protection > False Advertising > State Regulation

Business & Corporate Compliance > ... > Communications Law > Federal Acts > Telephone Consumer Protection Act

Civil Procedure > ... > Justiciability > Standing > Burdens of Proof

*HN4*[↓]  **False Advertising, State Regulation**

Although an alleged violation of the Telephone Consumer Protection Act (TCPA), 47 U.S.C.S. § 227 et seq., is enough to bestow standing under federal law, California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200 et seq., and False Advertising Law (FAL), Cal. Bus. & Prof. Code § 17500 et seq., have a more limited standing requirement than the general standing requirement for federal claims. Because elements for standing are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.

Antitrust & Trade Law > Consumer Protection > False Advertising > State Regulation

Civil Procedure > ... > Justiciability > Standing > Injury in Fact

Torts > Business Torts > Unfair Business Practices > Elements

*HN5*[↓]  **False Advertising, State Regulation**

To demonstrate standing under the Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200 et seq., and False Advertising Law (FAL), Cal. Bus. & Prof. Code § 17500 et seq., plaintiffs must (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim.

Antitrust & Trade Law > Consumer Protection > False Advertising > State Regulation

Civil Procedure > ... > Justiciability > Standing > Injury in Fact

Torts > ... > Compensatory Damages > Types of Losses > Economic Losses

Torts > Business Torts > Unfair Business Practices > Elements

**HN6[🔽]  False Advertising, State Regulation**

The economic injury requirement of the Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200 et seq., and the False Advertising Law (FAL), Cal. Bus. & Prof. Code § 17500 et seq., is more restrictive than federal injury in fact because it encompasses fewer kinds of injuries. To satisfy California's statutory injury-in-fact requirement, a plaintiff must show a personal, individualized loss of money or property in any nontrivial amount. Although this bar is not high, trivial, de minimis, or non-existent alleged injuries are not sufficient and do not constitute injury-in-fact for UCL and FAL standing. This economic damages requirement was the result of California Proposition 64, which amended the UCL and FAL to require economic damages.

Antitrust & Trade Law > Consumer Protection > False Advertising > State Regulation

Torts > ... > Compensatory Damages > Types of Losses > Economic Losses

Civil Procedure > ... > Justiciability > Standing > Injury in Fact

Torts > Business Torts > Unfair Business Practices > Elements

**HN7[🔽]  False Advertising, State Regulation**

In 2004, California voters passed Proposition 64, which amended the Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200 et seq., and False Advertising Law (FAL), Cal. Bus. & Prof. Code § 17500 et seq., to require plaintiffs to establish economic damages. Proposition 64 also amended the Junk Fax Law as codified in Cal. Bus. & Prof. Code § 17538.43.

Business & Corporate Compliance > ... > Communications Law > Federal Acts > Telephone Consumer Protection Act

**HN8[🔽]  Federal Acts, Telephone Consumer Protection Act**

Cal. Civ. Code § 1770(a)(22) is a part of the Consumer Legal Remedies Act (CLRA) and essentially requires that all unsolicited prerecorded telephone messages first be introduced by a live person who must ask for permission to play a recorded message. The CLRA simply does not apply to loan products.

Civil Procedure > Preliminary Considerations > Justiciability > Standing

**HN9[🔽]  Justiciability, Standing**

Because the question of standing is a threshold jurisdictional issue, federal courts have a duty to examine their jurisdiction sua sponte. The court may even dismiss a case for lack of subject matter jurisdiction without giving notice to the parties.

Antitrust & Trade Law > Consumer Protection > Deceptive & Unfair Trade Practices > State Regulation

Business & Corporate Compliance > ... > Communications Law > Federal Acts > Telephone Consumer Protection Act

**HN10[🔽]  Deceptive & Unfair Trade Practices, State Regulation**

The Consumer Legal Remedies Act (CLRA) applies to transactions intended to result or which result in the sale or lease of goods or services to a consumer. Cal. Civ. Code § 1770(a). The CLRA defines goods as tangible chattels bought or leased for use primarily for personal, family, or household purposes, Cal. Civ. Code § 1761(a), and services as work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods, § 1761(b). For purposes of the CLRA, loans are neither goods nor services. Federal district courts have also held that loans do not qualify as goods and

services under the CLRA.

Antitrust & Trade Law > Consumer Protection > Deceptive & Unfair Trade Practices > State Regulation

Governments > Legislation > Interpretation

*HN11*[ ]  **Deceptive & Unfair Trade Practices, State Regulation**

The Consumer Legal Remedies Act (CLRA), Cal. Civ. Code § 1770 et seq., does not cover ancillary services related to loans, and such services do not transform intangible goods and services into tangible goods and services that would otherwise not be covered by the CLRA.

Antitrust & Trade Law > Consumer Protection > False Advertising > State Regulation

Governments > Legislation > Interpretation

Antitrust & Trade Law > Consumer Protection > Deceptive & Unfair Trade Practices > State Regulation

*HN12*[ ]  **False Advertising, State Regulation**

The Consumer Legal Remedies Act (CLRA) defines "services" as work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods. Cal. Civ. Code § 1761(b). For services in connection with the sale of goods to qualify under the CLRA, goods must themselves be covered by the CLRA. Since loans at their core are not goods or services under the CLRA, advertising related to selling such intangible financial goods are not services furnished in connection with any goods or services. It would seem wildly incongruous that the CLRA would apply to advertising or marketing of loans but not apply to the loans themselves. Indeed, bootstrapping the CLRA into this case in this manner would defeat the apparent legislative intent in limiting the definition of goods and services by greatly expanding that definition.

Torts > Intentional Torts > Conversion > Elements

*HN13*[ ]  **Conversion, Elements**

Under California law, trespass to chattels lies where an intentional interference with the possession of personal property has proximately caused injury. In cases of interference with possession of personal property not amounting to conversion, the owner has a cause of action for trespass or case, and may recover only the actual damages suffered by reason of the impairment of the property or the loss of its use. To allege a plausible claim for trespass to a computer system or similar device, California law requires that plaintiffs plead with factual particularity that the purported trespass: (1) caused physical damage to the personal property, (2) impaired the condition, quality, or value of the personal property, or (3) deprived plaintiff of the use of personal property for a substantial time.

Business & Corporate Compliance > ... > Civil Actions > Computer & Internet Law > Civil Actions

Torts > Premises & Property Liability > Trespass to Real Property

Business & Corporate Compliance > ... > Computer & Internet Law > Privacy & Security > State Regulation

*HN14*[ ]  **Computer & Internet, Civil Actions**

Under California law the tort of trespass does not encompass, and should not be extended to encompass, an electronic communication that neither damages the recipient computer system nor impairs its functioning. Such an electronic communication does not constitute an actionable trespass to personal property, i.e., the computer system, because it does not interfere with the possessor's use or possession of, or any other legally protected interest in, the personal property itself.

Torts > Intentional Torts > Conversion > Elements

*HN15*[ ]  **Conversion, Elements**

The mere unauthorized use of another chattel is not actionable as trespass to chattel without any showing of injury. In the context of cognizable injury, a mere momentary or theoretical deprivation of use is not sufficient unless there is a dispossession. Thus, in the absence of any actual damage or dispossession, a

cause of action for trespass to chattels will not lie.

Business & Corporate Compliance > ... > Civil Actions > Computer & Internet Law > Civil Actions

Torts > Intentional Torts > Conversion > Elements

Business & Corporate Compliance > ... > Computer & Internet Law > Privacy & Security > State Regulation

**HN16**[⬇]  **Computer & Internet, Civil Actions**

Courts have rejected trespass to chattels claims where the alleged injury was trifling and did not materially interfere with the computer system or resources.

Torts > Intentional Torts > Conversion > Elements

**HN17**[⬇]  **Conversion, Elements**

Under California law, plaintiffs asserting conversion must prove an ownership or right to possession of the property at the time of the conversion, the defendant's conversion by a wrongful act or disposition of property rights, and resulting damages. Conversion requires a higher showing than trespass, which has been dubbed the little brother of conversion.

Business & Corporate Compliance > ... > Communications Law > Federal Acts > Telephone Consumer Protection Act

Governments > Legislation > Interpretation

**HN18**[⬇]  **Federal Acts, Telephone Consumer Protection Act**

Under the implementing regulations of the Telephone Consumer Protection Act (TCPA), 47 U.S.C.S. § 227 et seq., a fax "sender" is defined as the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement. 47 C.F.R. § 64.1200(f)(10). Thus, under this definition, a company can "send" an unsolicited fax advertisement without directly participating in the physical transmission of such a fax.

Business & Corporate Law > Agency Relationships > Authority to Act > Actual Authority

Business & Corporate Law > Agency Relationships > Authority to Act > Apparent Authority

Business & Corporate Law > Agency Relationships > Ratification > Scope

**HN19**[⬇]  **Authority to Act, Actual Authority**

There are three different agency theories of liability under California law: actual authority, apparent authority, and ratification. Under the classical or actual authority theory of agency, to form an agency relationship, both the principal and the agent must manifest assent to the principal's right to control the agent. This in turn implicates the degree of control exercised by the principal over the activities of the agent. Agency is not established when control may be exercised only as to the result of the work and not the means by which it is accomplished; in such a case an independent contractor relationship exists.

Business & Corporate Law > ... > Authority to Act > Apparent Authority > Conduct of Parties

Business & Corporate Law > ... > Authority to Act > Apparent Authority > Proof

**HN20**[⬇]  **Apparent Authority, Conduct of Parties**

Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations. Apparent authority cannot be established merely by showing that the alleged agent claimed authority or purported to exercise it. Rather, it is only established by proof of something said or done by the alleged principal, on which the plaintiff reasonably relied. The principal's manifestations giving rise to apparent authority may consist of direct statements to the third person, directions to the agent to tell something to the third person, or the granting of permission to the agent to perform acts under circumstances which create in him a reputation of authority.

Business & Corporate Law > Agency
Relationships > Ratification > Scope

**HN21[⬇]  Agency Relationships, Ratification**

Under the ratification theory of agency, although a
principal is liable when it ratifies an originally
unauthorized tort, the principal-agent relationship is still
a requisite, and ratification can have no meaning without
it.

Business & Corporate
Compliance > ... > Communications Law > Federal
Acts > Telephone Consumer Protection Act

Business & Corporate Law > ... > Corporate
Governance > Directors & Officers > Management
Duties & Liabilities

**HN22[⬇]  Federal Acts, Telephone Consumer
Protection Act**

The Telephone Consumer Protection Act (TCPA), 47
U.S.C.S. § 227 et seq., imposes personal liability on
companies' directors and officers who direct, authorize,
or ratify violations of the TCPA.

Civil Procedure > Preliminary
Considerations > Justiciability > Case &
Controversy Requirements

Constitutional Law > The Judiciary > Case or
Controversy > Ripeness

Constitutional Law > The Judiciary > Case or
Controversy > Standing

Civil Procedure > ... > Jurisdiction > Subject Matter
Jurisdiction > Jurisdiction Over Actions

Civil Procedure > Preliminary
Considerations > Justiciability > Standing

**HN23[⬇]  Justiciability, Case & Controversy
Requirements**

Under U.S. Const. art. III, § 2, the district court's subject
matter jurisdiction is limited to deciding cases or
controversies. No case or controversy exists if a plaintiff

lacks standing or if a case is not ripe for adjudication,
and consequently a federal court lacks subject matter
jurisdiction.

Civil Procedure > ... > Jurisdiction > Subject Matter
Jurisdiction > Jurisdiction Over Actions

Civil Procedure > Preliminary
Considerations > Justiciability > Standing

Civil Procedure > ... > Responses > Defenses,
Demurrers & Objections > Motions to Dismiss

Civil Procedure > ... > Responses > Defenses,
Demurrers & Objections > Waiver & Preservation of
Defenses

**HN24[⬇]  Subject Matter Jurisdiction, Jurisdiction
Over Actions**

Lack of subject matter jurisdiction may be raised by any
party at any time, and it is never waived. Thus, an
exception to Fed. R. Civ. P. 12(g) applies and permits a
motion to challenge the district court's jurisdiction based
on plaintiffs' lack of standing. Fed. R. Civ. P. 12(h)(3)
provides that if the court determines at any time that it
lacks subject-matter jurisdiction, the court must dismiss
the action.

Business & Corporate
Compliance > ... > Communications Law > Federal
Acts > Telephone Consumer Protection Act

Civil
Procedure > ... > Justiciability > Standing > Injury in
Fact

Constitutional Law > ... > Case or
Controversy > Standing > Elements

**HN25[⬇]  Federal Acts, Telephone Consumer
Protection Act**

In the context of the Telephone Consumer Protection
Act (TCPA), 47 U.S.C.S. § 227 et seq., unsolicited fax
messages, like unsolicited telemarketing phone calls or
text messages, violate the consumer's privacy and
disturb their solicitude. For TCPA purposes, these
injuries are sufficient to confer Article III standing, and
plaintiffs need not allege any additional harm.

2017 U.S. Dist. LEXIS 183690, *183690

Civil
Procedure > ... > Justiciability > Standing > Injury in
Fact

Constitutional Law > ... > Case or
Controversy > Standing > Elements

Governments > Legislation > Statutory Remedies &
Rights

**HN26**[⤓] **Standing, Injury in Fact**

Standing bears on jurisdiction, and the district court can
examine its jurisdiction at any time. Plaintiffs have
standing to bring suit provided they satisfy constitutional
and prudential requirements. To meet the constitutional
requirements for standing, a plaintiff must demonstrate it
has suffered an injury in fact, the injury is fairly traceable
to the challenged action, and it is likely that the injury
will be redressed by a favorable decision. To satisfy the
prudential standing requirements, a plaintiff must have
been granted a right to sue by the statute. Thus,
whether a statute grants a private right of action bears
on a plaintiff's standing and thus the court's jurisdiction.

Business & Corporate
Compliance > ... > Communications Law > Federal
Acts > Telephone Consumer Protection Act

**HN27**[⤓] **Federal Acts, Telephone Consumer
Protection Act**

The Federal Communication Commission's regulations
implementing the Telephone Consumer Protection Act
(TCPA), 47 U.S.C.S. § 227 et seq., in 47 C.F.R. §
64.1200(b) require all prerecorded messages to state
the identity of the entity responsible for the call at the
beginning of the call and provide a contact number
during the message for that entity.

Business & Corporate
Compliance > ... > Communications Law > Federal
Acts > Telephone Consumer Protection Act

Governments > Legislation > Statutory Remedies &
Rights

**HN28**[⤓] **Federal Acts, Telephone Consumer
Protection Act**

Only two provisions of the Telephone Consumer
Protection Act (TCPA), 47 U.S.C.S. § 227 et seq.,
expressly create private rights of action. 47 U.S.C.S. §
227(b)(3), 227(c)(5). However, the regulations in 47
C.F.R. § 64.1200(b) flow directly from the directives in
Section 227(d)(3). Section 227(d), unlike sections
227(b) and 227(c), does not contain a provision that
creates a private right of action.

Business & Corporate
Compliance > ... > Communications Law > Federal
Acts > Telephone Consumer Protection Act

Governments > Legislation > Statutory Remedies &
Rights

**HN29**[⤓] **Federal Acts, Telephone Consumer
Protection Act**

Congress did not intend private parties to enforce either
47 U.S.C.S. § 227(d) of the Telephone Consumer
Protection Act (TCPA), 47 U.S.C.S. § 227 et seq., or the
regulations prescribed pursuant to that section. A
private cause of action should not be read into section
227(d) and its attendant regulations where Congress
conspicuously omitted it but explicitly included it in
adjacent subsections.

Business & Corporate
Compliance > ... > Communications Law > Federal
Acts > Telephone Consumer Protection Act

Governments > Legislation > Statutory Remedies &
Rights

**HN30**[⤓] **Federal Acts, Telephone Consumer
Protection Act**

47 C.F.R. § 64.1601(e), a regulation under the
Telephone Consumer Protection Act (TCPA), 47
U.S.C.S. § 227 et seq., does not create a private right of
action.

Governments > Legislation > Interpretation

Governments > Legislation > Statutory Remedies &
Rights

**HN31[⬇]** **Legislation, Interpretation**

Where a statutory scheme and its implementing regulations have expressly created a private right of action but have not expressly done so elsewhere in the same scheme, it is highly improbable that Congress—or the implementing agency—absent-mindedly forgot to mention an intended private action. If the statute itself does not display an intent to create a private remedy, then a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute. The Supreme Court has held that the judicial task is instead limited solely to determining whether Congress intended to create the private right of action asserted. If the statute does not itself so provide, a private cause of action will not be created through judicial mandate.

Business & Corporate Compliance > ... > Communications Law > Federal Acts > Telephone Consumer Protection Act

Governments > Legislation > Interpretation

Governments > Legislation > Statutory Remedies & Rights

**HN32[⬇]** **Federal Acts, Telephone Consumer Protection Act**

47 C.F.R. § 64.1601(e), implementing the Telephone Consumer Protection Act (TCPA), 47 U.S.C.S. § 227 et seq., does not expressly convey a private right of action. Although the section references § 227(c), the Federal Communications Commission's rule in § 64.1601(e) appears to support consumers' enforcement efforts under the TCPA's subsection (c), rather than to create a separate mechanism upon which a consumer can make an actionable claim.

Torts > ... > Multiple Defendants > Concerted Action > Civil Conspiracy

**HN33[⬇]** **Concerted Action, Civil Conspiracy**

Civil conspiracy is a legal theory of liability, not an independent, actionable claim.

**Counsel:** **[*1]** For David Meyer, Ken Moser, Arnie Katz, DCM Properties, Inc., Venture Support Group, LLC,

Plaintiffs: Christopher Reichman, LEAD ATTORNEY, Justin M. Prato, Prato & Reichman, APC, San Diego, CA.

For Capital Alliance Group, Capital Alliance Partners, LLC, Mark Mendoza, Narin Charanvattanakit, also known as Charan, Narin, also known as Clayton Heath, doing business as Bankcapital, doing business as Bankcapital Direct, doing business as Simple Business Funding, doing business as Community Business Funding, doing business as 3-Day Loans, doing business as Zoom Capital, doing business as Fund Quick, doing business as Snap Business Funding, doing business as Next Day Business Loans, Defendants: Gene S. Stone, LEAD ATTORNEY, Homan & Stone, Redlands, CA.

**Judges:** Hon. William V. Gallo, United States Magistrate Judge.

**Opinion by:** William V. Gallo

# Opinion

**ORDER (1) GRANTING-IN-PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT; (2) GRANTING-IN-PART DEFENDANTS' MOTION TO DISMISS; and (3) DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**.

**[Doc. Nos. 48, 49, 50, 61 & 76.]**

In this action, Plaintiffs allege they received unlawful facsimile advertisements and telemarketing calls in violation of the Telephone Consumer Protection Act ("TCPA") **[*2]** and other federal and state statutes and regulations. Pending before the Court are cross-motions for partial summary judgment and a motion to dismiss the Second Amended Complaint ("SAC"). As explained below, Defendants' summary judgment motion is GRANTED-IN-PART, their motion to dismiss is GRANTED-IN-PART, and Plaintiffs' summary judgment motion is DENIED. Ultimately only Claims One and Three, both under the TCPA, remain from the Second Amended Complaint.

## I. CASE SUMMARY

Plaintiffs David Meyer, Arnie Katz, and Ken Moser are individual business owners who maintain fax and

telephone lines in furtherance of their businesses.[1] According to Plaintiffs, Defendant Capital Alliance Group, in its various formulations, is engaged in the business of advertising small business loans through third-party companies, which then illegally sent "junk faxes" and initiated telemarketing "robocalls" on its behalf.[2] All three plaintiffs received several junk faxes, which they allege ultimately traced back to Defendants. Plaintiff Moser also received telemarketing calls on his mobile telephone, which he alleges traced back to Defendants. Plaintiffs brought this action under various state and federal [*3] statutes and regulations and ultimately seek treble damages and attorneys' fees based on what they allege is Defendants' longstanding, willful, and knowing pattern of violative conduct. Trial is scheduled to commence on December 4, 2017.

## II. DISCUSSION

### A. Defendants' Motion for Partial Summary Judgment (Doc. No. 50)

#### 1. Legal Standard

*HN1*[ ] "A party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense - on which summary judgment is sought. The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of establishing the basis for its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The party opposing summary judgment cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'" *Estate of Tucker v. Interscope Records*, 515 F.3d 1019, 1030 (9th Cir. 2008), cert. denied, 555 U.S. 827, 129 S. Ct. 174,

---

[1] Plaintiff DMC Properties, Inc. ("DCM"), is owned and operated by Meyer, and Plaintiff Venture Support Group, LLC ("Venture"), is owned and operated by Katz.

[2] Defendants Mark Mendoza and Narin Charanvattanakit are Capital Alliance Group's principals.

172 L. Ed. 2d 44 (2008) (quoting Fed. R. Civ. P 56(e)).

*HN2*[ ] The moving party has "the burden of showing the absence [*4] of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); *see also Tolan v. Cotton*, 572 U.S. __, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014). A fact is material if it could affect the outcome of the suit under applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248.

#### 2. Claims Two, Seven, and Eight

##### a. Claims Two (Cal. Bus. & Prof. Code § 17538.41, Junk Fax Law) and Eight (Cal. Bus. & Prof. Code §§ 17200 *et seq.*, Unfair Competition Law)

Defendants contend Plaintiffs lacks standing to bring both Claim Two (the so-called "Junk Fax Law," Cal. Bus. Prof. Code § 17538.41)[3] and Claim Eight (California's Unfair Competition Law ("UCL"), Cal. Bus. Prof. Code §§ 17200 *et seq.*) because they lack the measurable economic damages that both statutes require. (Doc. No. 48 at 16-17; Doc. No. 50 at 12.)[4] Defendants are correct.

*HN4*[ ] Although an alleged violation of the TCPA is enough to bestow standing under federal law, *Van*

---

[3] *HN3*[ ] The Junk Fax Law is part of the series of statutes that are commonly referred to as the "false advertising law" ("FAL"). *See People ex rel. Kennedy v. Beaumont Inv., Ltd.*, 111 Cal. App. 4th 102, 3 Cal. Rptr. 3d 429, 443 (Cal. Ct. App. 2003) ("Provisions . . . directed at false advertising are contained in division 7, part 3, chapter 1, starting with section 17500, which prohibits false or misleading statements. For simplicity, we sometimes refer to these provisions as the 'false advertising law.'"). Section 17538.43—which appears in division 7, part 3, chapter 1, article 2 of the Business and Professions Code is contained within the FAL. This section specifically regulates the transmission of junk faxes.

[4] All pin-cite references to documents filed on the Court's CM/ECF system are to the page numbers electronically-generated by the CM/ECF system, not to the documents' native pagination.

*Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1042 (9th Cir. 2017), the UCL and FAL have a "more limited standing requirement" than the general standing requirement for federal claims, *id.* at 1048. "Because elements for standing 'are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as **[*5]** any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.'" *Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 90 Cal. Rptr. 3d 589, 622 (Cal. Ct. App. 2009) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).

*HN5*[↑] To demonstrate standing under the UCL and FAL, Plaintiffs must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 120 Cal. Rptr. 3d 741, 246 P.3d 877, 885 (Cal. 2011) (emphasis in original).

*HN6*[↑] The UCL and FAL's "economic injury requirement is 'more restrictive than federal injury in fact' because it encompasses fewer kinds of injuries." *Van Patten*, 847 F.3d at 1048-49 (quoting *Kwikset*, 246 P.3d at 886). To satisfy California's statutory injury-in-fact requirement, a plaintiff must show "a personal, individualized loss of money or property in any nontrivial amount." *Kwikset Corp.*, 246 P.3d at 887.

Although this bar is not high, trivial, *de minimis*, or non-existent alleged injuries are not sufficient and do not constitute injury-in-fact for UCL and FAL standing. *Kwikset Corp.*, 246 P.3d at 887 (requiring "nontrivial amount"; noting that where California courts have found standing present, "the plaintiff could allege or prove an identifiable monetary **[*6]** or property injury."). For example, in *Van Patten*, the Ninth Circuit found that the plaintiff's receipt of an unwanted text was sufficient to confer Article III standing, but not enough for standing under the UCL. 847 F.3d at 1043, 1049. There, the only economic injury plaintiff alleged was that he was required to pay for receiving defendant's text messages, but the evidence showed that his cell phone plan allowed unlimited messaging, meaning that he had no measurable economic loss. *Id.* at 1049; *see also Reichman v. Poshmark, Inc.*, No. 16-CV-2359-DMS(JLB), 267 F. Supp. 3d 1278, 2017 U.S. Dist. LEXIS 36371, at *17-18 (S.D. Cal. Jan. 3, 2017) (finding

allegations insufficient where that unsolicited text "advertising uses the paid for and economically valuable text message allotments."); *Olmos v. Bank of Am., N.A.*, No. 15-CV-2786-BAS(BGS), 2016 U.S. Dist. LEXIS 72329, at *10-11 (S.D. Cal. June 1, 2016) ("[T]he allegation that Plaintiff received two short text messages is insufficient to convey standing because the loss of battery life and bandwidth as a result of these two messages was de minimis."). As Defendants point out, this economic damages requirement was the result of California Proposition 64, which amended the UCL and FAL to require economic damages.

*HN7*[↑] In 2004, California voters passed Proposition 64, which amended the UCL and FAL to require plaintiffs to establish economic damages. Plaintiffs **[*7]** here argue that Proposition 64 amended only the UCL and had no impact on the Junk Fax Law as codified in § 17538.43. (Doc. No. 63 at 4.) Plaintiffs are decidedly wrong. Proposition 64 also amended the FAL in the same manner as the UCL. *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 216 Cal. Rptr. 3d 627, 393 P.3d 85, 92 (Cal. 2017) ("In 2004, the voters, by passing Proposition 64, amended [the UCL and FAL] to provide that private individuals may . . . file an action for relief only if they have 'suffered injury in fact and [have] lost money or property as a result of' a violation . . . ."); *Kwikset Corp.*, 246 P.3d at 887 ("Proposition 64 requires that a plaintiff's economic injury come "as a result of" the unfair competition *or a violation of the false advertising law.*") (emphasis added); *Angelucci v. Century Supper Club*, 41 Cal. 4th 160, 59 Cal. Rptr. 3d 142, 158 P.3d 718, 728 n.10 (Cal. 2007) ("We note as well that in 2004 the California electorate enacted legislation restricting previously broad standing requirements for a private right of action under the state unfair competition *and false advertising laws* (Bus. & Prof. Code, §§ 17200 *et seq., 17500 et seq.*)") (emphasis added). Accordingly, section 17538.43 of the FAL requires the same economic injury as the UCL.[5]

Here, Defendants contend none of the three Plaintiffs incurred cognizable economic damages as a result of receiving Defendants' faxes. The Court agrees and addresses each Plaintiff in turn. In doing so, the Court **[*8]** keeps in mind that Plaintiffs bear the burden of proving they having standing and that "[i]n response to a summary judgment motion [they cannot rest on] . . . mere allegations, but must set forth by affidavit or other

---

[5] Because the UCL's economic injury requirement applies equally to the FAL, references to the only UCL or the FAL in this analysis apply equally to both.

2017 U.S. Dist. LEXIS 183690, *8

evidence *specific facts*, which for purposes of the summary judgment motion will be taken to be true." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (emphasis added; citation and internal quotations omitted); *see also Kwikset Corp.*, 246 P.3d at 888-89 (applying *Lujan* standard to state claim, but at motion to dismiss stage); *Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 90 Cal. Rptr. 3d 589, 622 (Cal. Ct. App. 2009) (same).[6]

### i. DCM Properties, Inc. and David Meyer

Meyer, DCM's president, testified at deposition that he did not recall whether his fax machine required service after he received Defendants' faxes. (Defendants' Fact No. 10; Doc. No. 50-3 at 18.) Meyer testified he pays Vonage a flat rate for fax services and does not pay for individual faxes. (Defendants' Fact No. 5; Doc. No. 50-3 at 11.) He did not known how much the junk faxes cost DCM in paper or electricity. (Doc. No. 50-3 at 21, 24.) He speculated there might be a limit to the number of faxes he could receive, but did not know whether there was such a limit on his service plan. (*Id.*) Additionally, during the year Meyer received Defendants' faxes, his business both sent and received **[\*9]** "a number of faxes" every day using a single fax machine. (Defendants' Fact No. 6; Doc. No. 50-3 at 14.) Moreover, at deposition, Meyer withdrew any claim of actual damages related to transmission of the junk faxes. (Defendants' Fact No. 11; Doc. No. 53 at 19.)

The only evidence Meyer musters in response to this portion of Defendants' summary judgment motion is his own declaration. (*See* Doc. No. 63-2.) With respect to the economic injury issue, he therein declares that DCM Properties maintains a fax machine that operates in the following manner: "If someone uses a device to send a fax to our fax number it will transcribe text and/or images from a paper document to an electronic signal to be received by our fax machine which will then automatically print out a paper document copy of the fax. *This uses DCM Properties, Inc.'s ink and paper which we and not the sender must purchase to make the physical fax document.*" (Doc. No. 63-2 at 2 ¶ 5 (emphasis added).) Beyond this generic statement, Meyer provides no evidence—documents or lay or

expert testimony—that in any manner establishes any measure of economic injury he sustained from receiving seven faxes. He merely avers that the faxes consumed **[\*10]** an unknown quantity of ink and paper that his business had to purchase to operate the fax machine. He and DCM conclude that because they suffered a "loss of ink and paper," they have satisfied the economic loss requirement for UCL and FAL standing. (Doc. No. 63 at 5.)

It is plainly evident that Meyer is unable to establish that he suffered a cognizable, non-trivial economic injury under the UCL and FAL. Although ink and paper have *some* cost, Meyer provides nothing more than the generic assertion that "literally anybody living in America would have to know that ink and paper are economic commodities." (Doc. No. 63 at 5.) In relying on such generic assertions, Meyer misses the point, relies on "mere allegations," and provides no specific evidence from which the Court can conclude that he and DCM suffered anything beyond a trivial, *di minimis* loss.

To the contrary, Meyer's testimony actually establishes that DCM's loss *was* trivial and *di minimis*. For example, DCM received a total of seven faxes from Defendants in 2013 and 2014, and Meyer testified that DCM employees sent and received "a number" of faxes on a daily basis during that year. Although "a number" of faxes per day is not numerically **[\*11]** defined by either party, the ink and paper that seven junk faxes would consume during 2013 and 2014 would have been negligible. Even conservatively assuming for the sake of argument that DCM sent and received only two faxes per day in 2013 and 2014, the resources that the 723 *non*-junk faxes would have consumed in those years would have dwarfed any negligible resources that Defendants' seven[7] junk faxes consumed. Even under this conservative scenario, DCM's losses were *di minimis* and trivial.

Moreover, as in *Van Patten*, DCM paid a flat rate to Vonage and was not charged on a per-fax basis. Thus, there is no evidence that DCM incurred any additional service provider charges when it received the seven junk faxes.

Plaintiffs seem to have recognized and admitted their

---

[6] "[F]or a [UCL] lawsuit properly to be allowed to continue, standing must exist at all times until judgment is entered and not just on the date the complaint is filed." *Troyk*, 90 Cal. Rptr. 3d at 622 (citation and internal quotations omitted).

[7] Under this conservative scenario that favors Meyer, seven faxes account for less than 1% of all faxes Meyer would have sent and received in 2013 and 2014. Of course, the reality is likely that DCM sent and received many more than only two faxes per day.

inability to prove economic damages from the inception of this case. (*See, e.g.*, SAC ¶ 61 (stating, in the context of the TCPA claim, that "[g]*iven the nominal amount of actual damages*, Plaintiffs elect to pursue statutory damages . . . .") (emphasis added).) Because Meyer and DCM have only nominal damages and have failed to meet their burden to establish quantifiable, non-trivial economic injury, they lack standing under the **[*12]** UCL and the Junk Fax Law.

### ii. Arnie Katz, Venture Support Group LLC, and Ken Moser

Plaintiffs Arnie Katz, Venture, and Ken Moser are similarly situated in that they received junk faxes through computer-based fax services called "myfax.com" and "efax.com." These services did not automatically print any of the faxes they received, and the faxes were instead digitally stored on their computers.[8] (Defendants' Fact No. 17; Doc. No. 50-5 at 9-10; *see* Doc. No. 63-3 at 2 ¶¶ 5-6.) Both Katz and Moser saved the junk faxes and chose to voluntarily print the faxes at a later date. (Doc. No. 50-5 at 11; Doc. No. 50-6 at 8-9.) Katz was not charged for individual faxes and paid a flat rate fee to his service provider. (Doc. No. 50-5 at 9.)

Additionally, like Meyer, Katz and Moser generally assert, without any evidence, that their economic loss— whatever the amount might be—encompasses the "use of ink and paper." (Doc. No. 63 at 6.) However, they provide no concrete evidence of economic injury to rebut Defendants' argument that they suffered no such injury. They simply contend that ink and paper have some measure of economic value, and that is enough to satisfy the economic injury requirement under the **[*13]** UCL and FAL. Applying the standard cited above, it is again plainly evident that Katz and Moser suffered nothing more than trivial, nominal, *di minimis* economic injury from the junk faxes they received. They have not-so-tacitly admitted this since the inception of this case. (SAC ¶ 61.) And they now confirm as much given the complete dearth of evidence of quantifiable economic injury.

Finally, it not insignificant that Katz and Moser voluntarily printed the faxes that were electronically stored on their computers. Katz and Moser thus

voluntarily took affirmative steps to cause the consumption of ink and electricity—nothing Defendants did compelled Katz and Moser to print the digital faxes and incur damages, whether cognizable or not. Thus, even if Katz, Moser, and Venture had quantifiable damages, they could not be properly traced or attributed to Defendants. Defendants could not have caused such damages because they did not cause the faxes' printing.

Because Katz, Moser, and Venture have failed to meet their burden to establish that they suffered a quantifiable, non-trivial economic injury, they lack standing under the UCL and the Junk Fax Law.

### iii. Conclusion

In sum, Defendants argue **[*14]** Plaintiffs had sustained no cognizable economic injury for UCL and FAL standing purposes. In response, Plaintiffs provided no specific evidence of economic injury and failed to dispute Defendants' asserted facts. Accordingly, Plaintiffs have not sufficiently established for purposes of the summary judgment any injury in fact. *Cf. Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 90 Cal. Rptr. 3d 589, 624-25 (Cal. Ct. App. 2009) (denying Defendant's summary judgment motion challenging standing where Plaintiff presented sufficient evidence that he was charged an additional $5 per month). Based on the foregoing, the Court lacks subject matter jurisdiction over Claims Two (Junk Fax Law) and Eight (UCL) because Plaintiffs lack standing. Accordingly, Defendants' motion for summary judgment is GRANTED-IN-PART and judgment shall be entered in Defendants' favor on these claims.

### b. Claim Seven: Consumer Legal Remedies Act, Cal. Civil Code § 1770(a)(22)

In Claim Seven, Plaintiff Moser alleges Defendants violated *HN8*[⬆] California Civil Code § 1770(a)(22), which is a part of the Consumer Legal Remedies Act ("CLRA"), and which essentially requires that all unsolicited prerecorded telephone messages first be introduced by a live person who must ask for permission to play a recorded message. Continuing the challenge to Plaintiffs' standing, Defendants contend Moser **[*15]** has not proven he suffered damages under the CLRA.[9]

---

[8] Katz also had a traditional, physical fax machine and testified at deposition that this machine had not required repair. (Defendants' Fact No. 26; Doc. No. 50-6 at 9.)

[9] For the first time in their *reply brief*, Defendants also argue Moser was not a "consumer" under the CLRA because he never intended to purchase the goods and services they were

However, there is a more fundamental reason why Moser lacks standing: the CLRA simply does not apply to loan products in the first place. Although neither party addressed whether the CLRA applies to the type of product marketed by the unsolicited faxes and telemarketing at issue in this case, the Court nonetheless has a duty to examine its jurisdiction *sua sponte*. The Court does so now and finds that the CLRA does not apply to this case.

As an initial matter, *HN9*[⬆] because the question of standing is a threshold jurisdictional issue, federal courts have a duty to examine their jurisdiction *sua sponte*. *See D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1035 (9th Cir. 2008); *United Investors Life Ins. Co. v. Waddell & Reed Inc.*, 360 F.3d 960, 967 (9th Cir. 2004) (stating that "the district court had a duty to establish subject matter jurisdiction . . . sua sponte, whether the parties raised the issue or not"). The Court may even dismiss a case for lack of subject matter jurisdiction without giving notice to the parties. *Scholastic Entm't, Inc. v. Fox Entm't Grp., Inc.*, 336 F.3d 982, 985 (9th Cir. 2003); *Franklin v. Oregon, State Welfare Div.*, 662 F.2d 1337, 1342 (9th Cir. 1981).

*HN10*[⬆] The CLRA applies to "transaction[s] intended to result or which result[] in the sale or lease of goods or services to [a] consumer . . . ." Cal. Civ. Code § 1770(a). The CLRA defines "goods" as "tangible chattels bought or leased for use primarily for personal, family, or household purposes," *id.* § 1761(a), and **[*16]** "services" as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods," *id.* § 1761(b). For purposes of the CLRA, loans are neither goods nor services. *Alborzian v. JPMorgan Chase Bank, N.A.*, 235 Cal. App. 4th 29, 185 Cal. Rptr. 3d 84, 93 (Cal. Ct. App. 2015) ("A mortgage loan is not a 'good' because it is not a 'tangible chattel'; it is not a 'service' because it is not 'work, labor, [or] services . . . furnished in connection with the sale or repair of goods.'"); *see also Fairbanks v. Superior Court*, 46 Cal. 4th 56, 92 Cal. Rptr. 3d 279, 205 P.3d 201, 206 (Cal. 2009) ("[A]ncillary services that insurers provide [such as loans] to actual and prospective purchasers of life insurance do not bring the [insurance] policies within the coverage of the [CLRA]."); *Elstead v. JPMorgan Chase Bank*, Nos. A140069, A141247, 2017 Cal. App. Unpub. LEXIS 1567, at *51-52 (Mar. 3, 2017) (approvingly discussing *Alborzian* in dicta).

Federal district courts have also held that loans do not qualify as goods and services under the CLRA. *See, e.g., Jamison v. Bank of Am., N.A.*, 194 F. Supp. 3d 1022, 1031-32 (E.D. Cal. 2016) ("[T]he court agrees with the California Court of Appeal decision in *Alborzian* and the majority of district court cases and concludes defendant's mortgage services do not fall within the coverage of the CLRA."); *Consumer Solutions Reo, LLC v. Hillery*, 658 F. Supp. 2d 1002, 1016-17 (N.D. Cal. 2009) (dismissing CLRA claim with prejudice because "loans are intangible goods and that ancillary services provided in the sale of intangible goods **[*17]** do not bring these goods within the coverage of the CLRA."); *Sapan v. Lexington Mortg. Corp.*, No. SACV 16-01718-JVS(DFMx), 2017 U.S. Dist. LEXIS 63069, at *5-6 (C.D. Cal. Apr. 17, 2017); *Kirkeby v. JP Morgan Chase Bank, N.A.*, No. 13-CV-377-WQH(MDD), 2014 U.S. Dist. LEXIS 174385, at *22-25 (S.D. Cal. Dec. 17, 2014) (holding loan modification programs, which are contractual obligations to pay money, are not goods or services within the meaning of the CLRA); *Sonoda v. Amerisave Mortg. Corp.*, No. C-11-1803-EMC, 2011 U.S. Dist. LEXIS 73940, at *5 (N.D. Cal. July 8, 2011) ("If a contractual obligation to pay money (under an insurance contract) is not a service, then neither is a contractual obligation to *lend* money.") (emphasis in original); *Reynoso v. Paul Fin., LLC*, No. 09-3225-SC, 2009 U.S. Dist. LEXIS 106555, at *28-29 (N.D. Cal. Nov. 16, 2009) (concluding the CLRA does not extend to "ancillary services" in connection with mortgage loans).

Here, there is no dispute that Defendants' telemarketing efforts concerned attempts to sell short-term business loans. (Doc. No. 61-5 at 20-28, 32 (exhibits D, E, F, and H to Moser Declaration containing email communications Moser received from Capital Alliance in response to Moser's communications with Capital Alliance after he received telemarketing calls to his cellular telephone; all emails specifically mention short-term business loans); SAC, Doc. No. 1-1 at 30-85 (55 exhibits to Second Amended Complaint containing faxes offering short-term business loans). **[*18]** Short-term business loans are not materially distinguishable from the mortgage loans at issue in *Alborzian*—at bottom, both are contractual obligations to lend money. Moreover, the services Defendants provided to lenders

---

trying to market through their telemarketing calls. If true, Moser lacks standing under the CLRA for this additional reason. However, the entire focus of Defendants' MSJ was on their contention that Moser has no standing based on the lack of actual economic damages. Given the Court's finding that the CLRA does not apply in this case in the first place, the Court does not resolve whether Moser qualifies as a "consumer" under the CLRA.

are ancillary services that do not bring this case within the CLRA. The Court agrees with the multitude of state and federal cases and finds the CLRA does not cover the subject matter of this case.

At oral argument, Plaintiffs attempted to distinguish this case by arguing that Defendants were not lenders and were not themselves in the business of making business loans—they merely served as loan advertisers. They contend that because Defendants did not actually issue loans and simply provided marketing or advertising services for the loan originators, they provided services "related to" loans and thus fall outside the rule above. The Court is not persuaded. In *Fairbanks v. Superior Court*, 46 Cal. 4th 56, 92 Cal. Rptr. 3d 279, 205 P.3d 201 (Cal. 2009), the Supreme Court of California held that "the ancillary services that insurers provide to actual and prospective purchasers of life insurance do not bring the policies within the coverage of the CLRA." 205 P.3d at 206. Since then, state and federal courts have followed *Fairbanks* and have consistently found that **HN11**[↑] the CLRA does **[*19]** not cover ancillary services related to loans, and such services do not transform intangible goods and services into tangible goods and services that would otherwise not be covered by the CLRA. *See, e.g., Jamison v. Bank of Am., N.A.*, 194 F. Supp. 3d 1022 (E.D. Cal. 2016) (CLRA inapplicable to servicer of mortgage loan); *Gerbitz v. ING Bank*, 967 F. Supp. 2d 1072, 1080 (D. Del. 2013) (finding that California law "makes clear that . . . ancillary services, including maintenance or other customer services, do not transform an intangible service into a tangible good or service under the CLRA."); *Alborzian v. JPMorgan Chase Bank, N.A.*, 235 Cal. App. 4th 29, 185 Cal. Rptr. 3d 84, 93 (Cal. Ct. App. 2015) (affirming the dismissal of a homeowner's CLRA claim alleged against one of its mortgage lenders *and* a debt collection agent of the lender); *Robles v. One W. Bank*, No. B234196, 2012 Cal. App. Unpub. LEXIS 7618, at *13-14 (Cal. Ct. App. Oct. 22, 2012) (explaining that the court in Fairbanks "held that 'ancillary services' provided by insurers—like those also provided by sellers of investment securities, bank deposit accounts, and loans—which include 'assist[ing] prospective customers in selecting products that suit their needs, and . . . provid[ing] additional customer services related to the maintenance, value, use, redemption, resale, or repayment,' do not fall under the CLRA.").

The Court finds these state and federal cases persuasive. **HN12**[↑] The CLRA defines "services" as "work, labor, and services for other than a commercial **[*20]** or business use, including services

furnished *in connection with the sale* or repair of *goods*." *Alborzian*, 185 Cal. Rptr. 3d at 93 (citing Cal. Civ. Code § 1761(b)) (emphasis added). For services "in connection with" the sale of goods to qualify under the CLRA, "goods" must themselves be covered by the CLRA. *See Gerbitz*, 967 F. Supp. 2d at 1080. Since loans at their core are not "goods" or "services" under the CLRA, advertising related to selling such intangible financial goods are not "services furnished in connection with" any goods or services. *See Consumer Solutions Reo, LLC v. Hillery*, 658 F. Supp. 2d 1002, 1016-17 (N.D. Cal. 2009) ("*Fairbanks* . . . indicates that loans are intangible goods and that ancillary services provided in the sale of intangible goods do not bring these goods within the coverage of the CLRA."). It would seem wildly incongruous that the CLRA would apply to advertising or marketing of loans but not apply to the loans themselves. Indeed, bootstrapping the CLRA into this case in this manner would, as the Supreme Court of California explained, "defeat the apparent legislative intent in limiting the definition of" goods and services, *Fairbanks*, 205 P.3d at 202; *see also Gerbitz*, 967 F. Supp. 2d at 1080, by greatly expanding that definition.

The Court finds that Defendants' advertising or marketing of loans is an ancillary service that does not fall within the CLRA. Accordingly, Moser lacks **[*21]** standing under the CLRA, and Defendants are entitled to summary judgment on Claim Seven.[10]

### 3. Claims Nine (Trespass) and Ten (Conversion)

Defendants seek summary judgment on the ninth claim (trespass) and tenth claim (conversion) on the basis that Plaintiffs suffered no actual harm from Defendants' faxes or telemarketing calls. (Doc. No. 50 at 16-18.) Plaintiffs respond that they suffered harm in the form of the "tying up" of telephone lines and the use of Plaintiffs' "physical and electronic" resources. (Doc. No. 63 at 8.) Such nebulous "damages" are not sufficient for trespass and conversion claims under California law.

**HN13**[↑] "Under California law, trespass to chattels lies where an intentional interference with the possession of personal property *has proximately caused injury*. In

---

[10] Given the Court's findings above, the Court need not resolve whether the CLRA requires actual economic damages or whether any damages satisfy CLRA standing. (*See* Doc. No. 50 at 15.) In light of the Court's grant of summary judgment, the portion of the motion to dismiss the CLRA claim is DENIED as moot.

cases of interference with possession of personal property not amounting to conversion, the owner has a cause of action for trespass or case, and *may recover only the actual damages suffered by reason of the impairment of the property or the loss of its use.*" *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1 Cal. Rptr. 3d 32, 71 P.3d 296, 302 (Cal. 2003) (internal quotations and citation omitted) (emphasis in original). To allege a plausible claim for trespass to a computer system or similar device, California **[*22]** law requires that plaintiffs plead with factual particularity that the purported trespass: (1) caused physical damage to the personal property, (2) impaired the condition, quality, or value of the personal property, or (3) deprived plaintiff of the use of personal property for a substantial time. *Id.* at 306. The Supreme Court of California has emphasized that:

> *HN14*[⬆️] [U]nder California law the tort [of trespass] does not encompass, *and should not be extended to encompass*, an electronic communication that neither damages the recipient computer system nor impairs its functioning. Such an electronic communication does not constitute an actionable trespass to personal property, i.e., the computer system, because it does not interfere with the possessor's use or possession of, or any other legally protected interest in, the personal property itself.

*Id.* at 300 (emphasis added).

In *Hamidi*, a computer company brought an action against a former employee and sought an injunction to prevent him from sending e-mails to the company's employees. The employee had used Intel's internal internet-connected e-mail system to send e-mails to between 8,000 and 35,000 employees on six occasions, and he refused to stop when Intel requested **[*23]** that he do so. *Id.* The trial court granted summary judgment for Intel and issued a permanent injunction on a theory of trespass to chattels. *Id.* at 301-02. The appellate court affirmed, but the Supreme Court of California reversed on the grounds that the tort of trespass to chattels did not encompass, and should not be extended to encompass, electronic intrusions that neither damaged nor impaired the functioning of Intel's computer system. *Id.* at 300, 304. In doing so, *HN15*[⬆️] the court rejected the argument that the mere "unauthorized use of another chattel is actionable even without any showing of injury." *Id.* at 306. In the context of cognizable injury, the court then explained that "*[a] mere momentary or theoretical deprivation of use is not*

*sufficient* unless there is a dispossession . . . ." *Id.* (internal quotations and citation omitted; emphasis added). Thus, the Court held that in the absence of any actual damage or dispossession, a cause of action for trespass to chattels will not lie. *Id.* at 308, 311.

Cases where viable electronic intrusion-based trespass claims lay have involved more than the trifling interference with phone and fax lines evident in the instant case. *See, e.g., Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1559, 54 Cal. Rptr. 2d 468, 471 (Cal. Ct. App. 1996) (finding trespass claim actionable where the defendant's **[*24]** automated dialing system "*overburdened the system*, denying some subscribers access to phones lines") (emphasis added); *In re Lenovo Adware Litig.*, No. 15-MD-2624-RMW, 2016 U.S. Dist. LEXIS 149958, at *35 (N.D. Cal. Oct. 27, 2016) (denying motion to dismiss where "Plaintiffs allege[d] that consumers complained that [software installed on computers] 'interfered with watching videos online, caused the computers to run slow, blocked or slowed connections to certain websites, and caused security issues.'"); *see also Sch. of Visual Arts v. Kuprewicz*, 3 Misc. 3d 278, 771 N.Y.S.2d 804, 808 (N.Y. Sup. Ct. 2003) (finding sufficient plaintiffs' allegations that "large volumes" of unsolicited job applications and pornographic e-mails "depleted hard disk space, drained processing power, and adversely affected other system resources on SVA's computer system").

Consistent with the reasoning in *Hamidi*, *HN16*[⬆️] courts have rejected trespass claims where the alleged injury was trifling and did not materially interfere with the computer system or resources. *See, e.g., In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1069 (N.D. Cal. 2012) (dismissing complaint with prejudice where alleged harm included consumption of bandwidth, storage space, memory and finding that "[w]hile these allegations conceivably constitute a harm, they do not plausibly establish a significant reduction in service constituting an interference with the intended functioning **[*25]** of the system, which is necessary to establish a cause of action for trespass."); *Fields v. Wise Media, LLC*, No. C12-05160-WHA, 2013 U.S. Dist. LEXIS 136914, at *13 (N.D. Cal. Sep. 24, 2013) (dismissing complaint with prejudice and rejecting argument that the "defendants' interference with plaintiffs' phones by sending unsolicited text messages directly affects a 'legally protected interest' of plaintiffs, even if their phones are not physically damaged."); *see also Fields*, 2013 U.S. Dist. LEXIS 136914, at *14-15 ("Allowing plaintiffs to assert a claim for trespass to chattels absent actual physical harm or impairment to

their phones would vastly expand tort law and this order will not do so absent binding Ninth Circuit authority. This order denies plaintiffs leave to add trespass to chattels as a claim for relief based on the plain reading of *Hamidi*.").

Here, Plaintiffs' trespass claim is precisely the type of momentary, injury-lacking intrusion described in *Hamidi*. Beyond bare assertions that "the illegal facsimiles and calls tied up the phone lines and used the physical and electronic resources of Plaintiffs," (*see* Doc. No. 63 at 8), Plaintiffs have presented no competent evidence of meaningful interference with—or any dispossession of—their computers, telephone lines, or fax lines. Besides **[*26]** the general assertion that their telephone and fax lines were "tied up," they present no evidence of any measureable damage or impairment of functioning. Rather, the only evidence before the Court establishes that Plaintiffs sustained nothing more than momentary intrusions.

Additionally, Plaintiffs have not—and cannot—establish the cost of their alleged losses. First, had they had any such evidence, they surely would have presented it at this summary judgment phase. And second, Plaintiffs all testified in depositions that they could not quantify the amount of their losses. Such trifling intrusions are patently insufficient and plainly not actionable under California law. *See Hamidi*, 71 P.3d at 306. Accordingly, because the only evidence before the Court establishes nothing more than a momentary intrusion upon Plaintiffs, their trespass claim fails. *Accord id.* at 306-07 ("That Hamidi's messages temporarily used some portion of the Intel computers' processors or storage is, . . . not enough; Intel must, but does not, demonstrate some measurable loss from the use of its computer system.")

However, even if Plaintiffs had been able to quantify the amount of their losses, those amounts would nonetheless have been nominal given **[*27]** the small number of telephone calls and faxes they received. Indeed, Plaintiffs themselves acknowledge that they suffered nothing more than nominal damages. (SAC, Doc. No. 1-1 at ¶¶ 40, 61 ("*Given the nominal amount of actual damages*, Plaintiffs elect to pursue statutory damages . . . .") (emphasis added).) The trespass claim would nonetheless fail for the simple and undisputed fact that Plaintiffs suffered nothing more than nominal damages, if any at all. *See Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 359 (4th Cir. 2006) ("[T]he courts that recognize trespass to chattels based upon computer intrusions *do not allow 'an action for*

*nominal damages* for harmless intermeddlings with the chattel.'") (citing *Hamidi*, 71 P.3d at 302) (emphasis added).

Plaintiffs' reliance on *Thrifty-Tel* is misplaced because that case involved a far greater intrusion upon telephone lines than Plaintiffs experienced. There, the defendants essentially hacked Thrifty-Tel's telephone lines, used software to perform "rapid-fire random number searches" four hours on end, made *thousands* of long-distance telephone calls, and "[b]ecause Thrifty-Tel is a small carrier with relatively few telephone lines, [the defendant's] automated calling overburdened the system, denying some subscribers access to phones lines." *Thrifty-Tel, Inc.*, 54 Cal. Rptr. 2d at 471-72 **[*28]** . The California Court of Appeal held that the trespass claim survived under these aggravated circumstances that demonstrated substantial interference with, occupation, and use of Thrifty-Tel's resources. Here, however, the totality of the evidence Plaintiffs muster is that their fax and telephone lines were momentarily "tied up" on a trivial number of occasions[11] and fail to present any evidence of any real harm they suffered as a result.[12] This case is therefore a far cry from *Thrifty-Tel*, which does not support Plaintiffs' analysis-lacking assertions claiming otherwise.

As for Claim Ten for conversion, *HN17*[↑] under California law, Plaintiffs must prove an "ownership or

---

[11] Defendants Meyer and DCM Properties collectively received seven faxes and no telemarketing calls. (Doc. No. 63-2 at ¶ 6.) Defendant Moser received six faxes and four telemarketing calls. (Doc. No. 63-3 at ¶¶ 67, 11, 14, 15-16.) Defendant Katz received 41 faxes and no telemarketing calls. (Doc. No. 63-4 at ¶ 14.) Even Katz's 41 faxes pale in comparison to the thousands of calls the *Thrifty-Tel* defendants made using far more intrusive methods that essentially hijacked the company's telephone lines. Indeed, the *Thrify-Tel* defendants' conduct was far more egregious, as it involved the intrusion into the company's computer systems and intrusive, rapid-fire searches using outside software that overburdened the systems for hours.

[12] Any ink, paper, and electricity costs Katz and Moser incurred from printing the faxes are not attributable to Defendants. They admit that their computers did not automatically print the faxes and instead stored all of them digitally. Any costs related to printing the faxes were incurred by Katz and Moser's own affirmative actions and cannot be compared to *Thrifty-Tel*. Plaintiffs imposed the costs *upon themselves*. It utterly strains credulity to attribute any such costs to Defendants when Katz and Moser themselves chose to print digital faxes stored on their computers.

right to possession of the property at the time of the conversion, the defendant's conversion by a wrongful act or disposition of property rights, and resulting damages." *Avidor v. Sutter's Place, Inc.*, 212 Cal. App. 4th 1439, 151 Cal. Rptr. 3d 804, 814 (Cal. Ct. App. 2013). Conversion requires a higher showing than trespass, which has been dubbed the "little brother of conversion." *Hamidi*, 71 P.3d at 302 ("[T]he tort of trespass to chattels allows recovery for interferences with possession of personal property 'not sufficiently important to be classed as conversion.'"); *Plotnik v. Meihaus*, 208 Cal. App. 4th 1590, 146 Cal. Rptr. 3d 585, 600 (Cal. Ct. App. 2012) ("Trespass to personal property often arises in circumstances where a defendant's interference with another's property falls short of that required for **[*29]** a conversion cause of action."); *Thrifty-Tel, Inc.*, 54 Cal. Rptr. 2d at 473. Because conversion claims require a higher showing, it follows that plaintiffs who cannot meet the lower trespass threshold will not be able to meet the higher conversion threshold. Defendants are entitled to summary judgment on both the trespass (claim 9) and conversion claims (claim ten).

### 4. Claim Eleven (Civil Conspiracy)

In light of the Court's finding below dismissing Claim Eleven with prejudice, this portion of Defendants' summary judgment motion is DENIED as moot.

### B. Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 61)

### 1. Claims One (Junk Faxes, 47 U.S.C. § 227(b)(1)(C)) and Three (Telemarketing Calls, 47 U.S.C. § 227(b)(1)(B))

In Claim One, Plaintiffs Meyer, Katz, and DCM Properties allege they received junk faxes in violation of 47 U.S.C. § 227(b)(1)(C). In Claim Three, Plaintiff Moser further alleges he received pre-recorded telemarketing calls on his home telephone on at least four occasions in violation of 47 U.S.C. § 227(b)(1)(B). Because a genuine dispute of material fact exists as to Defendants' third-party liability, Plaintiffs' motion for summary judgment on these claims is DENIED.

As an initial matter, **HN18**[⬆] "[u]nder the TCPA's implementing regulations, a fax 'sender' is defined as 'the person **[*30]** or entity *on whose behalf* a facsimile

unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement.'" *Bee, Denning, Inc. v. Capital All. Grp.*, 310 F.R.D. 614, 620 n.2 (S.D. Cal. 2015) (quoting 47 C.F.R. § 64.1200(f)(10)) (emphasis in original). "Thus, under this definition, a company can 'send' an unsolicited fax advertisement without directly participating in the physical transmission of such a fax." *Id.* Accordingly, Defendants are incorrect that they cannot be held liable because they did not personally send faxes or make telemarketing calls.

As for both Claims One and Three, the question is whether Defendants can be held liable for the fax transmissions or telemarketing calls of third-party vendors. This analysis requires Plaintiffs to prove there is an agency relationship between Capital Alliance and Absolute Fax for Claim One and Capital Alliance and Message Communications for Claim Three. If there is no legal agency relationship, then Message Communications and Absolute Fax are independent contractors under the law and Defendants cannot be held liable.

**HN19**[⬆] There are three different agency theories of liability under California law: actual authority, apparent authority, and ratification. *Id.* at n.3; *see also Henderson v. United Student Aid Funds, Inc.*, No. 13-CV-1845-JLS(BLM), 2017 U.S. Dist. LEXIS 28165, at *19 (S.D. Cal. Feb. 27, 2017) **[*31]** (discuss all three agency theories in the context of the TCPA; granting defendants' summary judgment motion).

Under the "classical" or actual authority theory of agency, "'[t]o form an agency relationship, both the principal and the agent must manifest assent to the principal's right to control the agent." *Henderson*, 2017 U.S. Dist. LEXIS 28165, at *16 (quoting *United States v. Bonds*, 608 F.3d 495, 506 (9th Cir. 2010)). "This in turn implicates 'the degree of control exercised by the principal over the activities of the agent.'" *Id.* (quoting *In re Coupon Clearing Serv., Inc.*, 113 F.3d 1091, 1099 (9th Cir. 1997)). "Agency is not established when 'control may be exercised only as to the result of the work and not the means by which it is accomplished[;]' in such a case "an independent contractor relationship exists.'" *Id.* (same).

Here, as to Claim One, Plaintiffs proffer that the evidence establishes that "Capital Alliance, though its CEO, Mr. Charanvattanakit, admits it hired a company called Absolute Fax to send fax ads on its behalf. Mr. Charanvattanakit agrees that he knew Absolute Fax

would send fax advertisements for Capital Alliance Group. [He] admits that Capital Alliance Group paid Absolute Fax to send the fax ads. [He] admits that Absolute Fax sent these fax ads. He also admits that he did not discuss TCPA compliance **[*32]** with Absolute Fax." (Doc. No. 61-1 at 9.) As to Claim Three, Plaintiffs proffer that the evidence establishes that "Capital Alliance, though its CEO, Mr. Charanvattanakit, admits it hired a company called Message Communications to make calls on its behalf. [He] agrees that he knew Message Communications would make prerecorded phone calls for Capital Alliance. [He] admits Capital Alliance paid Message Communications to make the calls. [He] admits that Message Communications made these calls." (Doc. No. 61-1 at 14-15.)

Even accepting all of the above as true, Plaintiffs have nonetheless failed to establish actual authority agency as a matter of law.[13] Plaintiffs have at most established Capital Alliance's control over the *result* of the work—not over the means by which it was accomplished. In other words, Plaintiffs have only established Defendants' hiring of third-party vendors to accomplish the ultimate goal of sending faxes and making telemarketing calls, but they have not established the requisite control over the methods and means the companies employed to accomplish these tasks. Plaintiffs inadvertently signal this lack of oversight and control when they argue that Capital Alliance **[*33]** "did not express to Message Communications any requirement of TCPA-compliance in transmitting its calls." (Doc. No. 61 at 16.) At this juncture, Plaintiffs have not shown as a matter of law that an actual authority agency relationship existed such that Capital Alliance is liable for the faxes Plaintiffs received and the telemarketing calls Moser received.

Next, *HN20*[⬆] "[a]pparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." *Makaron v. GE Sec. Mfg.*, No. CV-14-1274-GW(AGRx), 2015 U.S. Dist. LEXIS 75240, at *20-21 (C.D. Cal. May 18, 2015) (internal quotations and citation omitted). Apparent authority "cannot be established merely by showing that [the alleged agent] claimed authority or purported to exercise it." *NLRB v.*

*Dist. Council of Iron Workers of Cal. & Vicinity*, 124 F.3d 1094, 1099 (9th Cir.1997). Rather, it is only established "by proof of something said or done by the [alleged principal], on which [the plaintiff] reasonably relied." *Id.* "The principal's manifestations giving rise to apparent authority may consist of direct statements to the third person, directions to the agent to tell something to the third person, or the granting **[*34]** of permission to the agent to perform acts . . . under circumstances which create in him a reputation of authority. . . ." *Mavrix Photographs, Ltd. Liab. Co. v. LiveJournal, Inc.*, No. 14-56596, 873 F.3d 1045, 2017 U.S. App. LEXIS 16624, at *18-19 (9th Cir. Apr. 7, 2017) (amended opinion) (quoting *Hawaiian Paradise Park Corp. v. Friendly Broad. Co.*, 414 F.2d 750, 756 (9th Cir. 1969)).

Here, there is currently insufficient evidence for the Court to conclude that apparent authority agency exists as a matter of law. Plaintiffs argue that consumers who called the numbers listed on faxes pressed buttons, reached Capital Alliance, and had "no choice other than to believe Message Communications was acting on behalf of Capital Alliance Group since the third party would never even know during the call that anybody other than Capital Alliance Group was on the line." (Doc. 61 at 17.) But they cite no cases that support this argument. While there could be sufficient evidence for a jury to find Message Communications and Absolute Fax had apparent authority, there is insufficient evidence for the Court to so conclude as a matter of law. In sum, reasonable minds could differ, and Plaintiffs have not produced sufficient evidence. A triable issue of fact exists as to whether Defendants are liable for TCPA violations under the apparent authority theory of vicarious liability.

Finally, *HN21*[⬆] under the ratification theory of agency, "[a]lthough a principal **[*35]** is liable when it ratifies an originally unauthorized tort, the principal-agent relationship is still a requisite, and ratification can have no meaning without it." *Batzel v. Smith*, 333 F.3d 1018, 1036 (9th Cir. 2003); *see also Henderson*, 2017 U.S. Dist. LEXIS 28165, at *23-24. Accordingly, the Court necessarily denies this portion of the MSJ as well because it is dependent on the existence of actual or apparent authority agency.

## 2. Claims Two, Three, and Six

Plaintiffs seeks entry of judgment in their favor on Claims Two, Three, and Six. However, in light of the Court's rulings on these claims in Defendants' favor

---

[13] Defendants' objections to the expert report of Jeffrey Hansen are moot. Even accepting, for the sake of argument, all of Plaintiffs' proffered evidence, including Hansen's report, jury questions still remain.

elsewhere in this Order, these portions of Plaintiffs' motion are DENIED as moot.

### 4. Personal Liability of Narin Charanvattanakit and Mark Mendoza; Statutory Damages; and Entitlement to "Willful" or "Knowing" Trebled Damages

*HN22*[↑] The TCPA imposes personal liability on companies' directors and officers who direct, authorize, or ratify violations of the TCPA. Plaintiffs seek summary judgment on the personal liability of Mark Mendoza and Narin Charanvattanakit, Capital Alliance's principals. However, because the Court has found Plaintiffs have not established a TCPA violation in the first place and thus denied their MSJ on Claims One and Three, this portion of the motion is also DENIED. **[*36]** Additionally, Plaintiffs' motion as to their entitlement of statutory damages is DENIED for the same reason. Finally, the motion as to whether Defendants wilfully or knowingly violated the TCPA is DENIED for the same reason. The fundamental determination that the TCPA has been violated must precede each of these inquiries, which cannot logically follow if there has been no TCPA violation in the first place.

### C. Defendants' Motion to Dismiss (Doc. Nos. 48, 49)

Defendants' motion to dismiss is based on (1) the lack of subject matter jurisdiction based on lack of standing and (2) failure to state a claim under Rule 12(b)(6). As a result of the rulings above on Defendants' MSJ, five portions of the motion to dismiss are moot. The Court GRANTS the motion in part and dismisses Claims Four, Five, Six, and Eleven with prejudice. The motion with respect to Claims One and Three is DENIED.

### 1. Claim One: Telephone Consumer Protection Act, 47 U.S.C. §§ 227 *et al.*

Defendants contend Plaintiffs lack standing to bring the TCPA Claim One. (Doc. No. 48 at 11-15.) As an initial matter, the Court finds this portion of the motion is timely, as it is a challenge to the Court's jurisdiction. However, Plaintiffs have properly alleged Article **[*37]** III standing, and the Court has jurisdiction over the TCPA claim as a result.

### a. Timeliness of the Motion to Dismiss

*HN23*[↑] Under Article III § 2 of the Constitution, this Court's subject matter jurisdiction is limited to deciding "cases" or "controversies." *See, e.g., Allen v. Wright*, 468 U.S. 737, 750, 104 S. Ct. 3315, 82 L. Ed. 2d 556 (1984). No case or controversy exists if a plaintiff lacks standing or if a case is not ripe for adjudication, *see, e.g., Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 1999) (en banc), and consequently a federal court lacks subject matter jurisdiction. *See, e.g., White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (reiterating that "standing . . . pertain[s] to a federal court's subject-matter jurisdiction under Article III"); *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) ("Whether a claim is ripe for adjudication goes to a court's subject matter jurisdiction under the case or controversy clause of article III of the federal Constitution.").

Plaintiffs object that FRCP 12(g) prohibits Defendants from filing this motion to dismiss in its entirety because they failed to raise the jurisdictional challenge in their initial motion to dismiss. However, *HN24*[↑] lack of subject matter jurisdiction may be raised by any party at any time, and it is never waived. *See United States v. Cotton*, 535 U.S. 625, 630, 122 S. Ct. 1781, 152 L. Ed. 2d 860 (2002). Thus, an exception to FRCP 12(g) applies here and permits Defendants to challenge the Court's jurisdiction based on Plaintiffs' lack of standing. *See* FRCP 12(h)(3) ("If the court determines *at any time* that it lacks subject-matter jurisdiction, **[*38]** the court must dismiss the action.") (emphasis added). Accordingly, the motion to dismiss is timely.

### b. Plaintiffs Properly Allege Article III Standing for TCPA Purposes

*HN25*[↑] In the context of the TCPA, unsolicited fax messages, like unsolicited telemarketing phone calls or text messages, violate the consumer's privacy and disturb their solicitude. *See Van Patten v. Vertical Fitness Grp., Ltd. Liab. Co.*, 847 F.3d 1037, 1043 (9th Cir. 2017). For TCPA purposes, these injuries are sufficient to confer Article III standing, and Plaintiffs need not allege any additional harm. *Id.*; *accord Gibbs v. SolarCity Corp.*, 239 F. Supp. 3d 391 (D. Mass. 2017) (collecting cases); *Flores v. Access Ins. Co.*, No. 15-CV-2883-CAS(AGRx), 2017 U.S. Dist. LEXIS 36486, at *11-12 (C.D. Cal. Mar. 13, 2017) (rejecting economic harm argument); *see also Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1252-53 (11th Cir. 2015) (holding that occupation of fax machine during junk fax transmission on its own sufficiently confers Article III standing); *Cordoba v. DIRECTV, LLC,*

320 F.R.D. 582, 2017 U.S. Dist. LEXIS 125486, at *25-27 (N.D. Ga. 2017) (same; collecting cases).

Here, Plaintiffs allege Defendants violated the TCPA by sending each of them unsolicited fax messages without their consent and without a pre-existing business relationship. (SAC ¶¶ 34-36.) Under the line of cases above, these allegations alone are sufficient to confer Article III standing on Plaintiffs, and they need not allege anything further.

Defendants primarily argue that Plaintiffs cannot "claim actual harm" in this case because each of the faxes contained a telephone number or website address where the [*39] recipient can ask to opt out. But this argument is misleading because it relies on what is essentially a defense to a TCPA claim that is jury-rigged into a standing argument. They cite *ARcare v. Qiagen North American Holdings, Inc.*, No. CV-16-7638-PA(ASx), 2017 U.S. Dist. LEXIS 8344 (C.D. Cal. Jan. 19, 2017), and argue that faxes that contain opt-out notices render Plaintiffs "unable to show that their injuries are traceable or related to [Defendants'] alleged violations of the TCPA." (Doc. No. 48 at 15.) *ARcare* followed this same line of reasoning that Defendants now advance. However, *ARcare* is not persuasive for two reasons.

First, *ARcare* is an unpublished district court case that pre-dated *Van Patten*—a binding, published opinion by the Ninth Circuit, which requires nothing more than the transmission of an unsolicited fax to confer Article III standing. The Court declines to follow *ARcare* over *Van Patten*. So long as Plaintiffs allege they received unsolicited faxes, which they have done here, they have satisfied the standing pleading requirement and need not allege more.

Second, *ARcare* has been criticized as imposing "a heightened causation requirement that is not supported by case law on standing." *Horton v. Southwest Med. Consulting, LLC*, No. 17-CV-266-CVE-mjx, 2017 U.S. Dist. LEXIS 105663, at *13 (N.D. Okla. July 10, 2017) [*40] ; *see also Gorss Motels, Inc. v. Sysco Guest Supply*, LLC, 2017 U.S. Dist. LEXIS 133488, at *19-20 (D. Conn. Aug. 21, 2017) (criticizing *ARcare*; concurring with *Horton*); *Cordoba*, 320 F.R.D. 582, 2017 U.S. Dist. LEXIS 125486, at *25-27 ("[A]n overwhelming majority of courts . . . have continued to hold that the mere receipt of faxes, telemarketing calls, and/or text messages in violation of the TCPA constitutes sufficient harm for purposes of Article III standing") (collecting cases; identifying *ARcare* as an outlier).

Based on the foregoing, Defendants' motion to dismiss Claim One based on the lack of Article III standing is DENIED.[14]

## 2. Claims Two, Seven, Eight, Nine, and Ten

Defendants move to dismiss Claims Two, Seven Eight, Nine, and Ten. However, given that the Court has found they are entitled to summary judgment, the motion to dismiss these claims is DENIED as moot.

## 3. Claim Three (TCPA, 47 U.S.C. § 227(b)(1)(B))[15]

Defendants contend Claim Three must be dismissed because Plaintiff Moser failed to provide "well pleaded factual allegations" with respect to the Claim's second element, which alleges Defendants used an automatic telephone dialing system in violation of 47 U.S.C. § 227(b)(1)(B). (Doc. No. 48 at 17.) Specifically, Moser alleges, "on information and belief . . . that Defendants made many more calls to his telephone lines by prerecorded voice message containing [a prerecorded [*41] voice to deliver a message]." (SAC, Doc. No. 1 ¶ 71.) Defendants take issue that these allegations were made "on information and belief." However, in the preceding paragraph of the Second Amended Complaint, Moser alleges: "Defendants . . . called Plaintiff MOSER'S residential telephone line, using a prerecorded voice to deliver a message, without Plaintiff MOSER'S express permission at least four (4) times within the last 4 years, the statutory period

------

[14] Because *ARcare* is inapposite here, Defendants' request for judicial notice (Doc. No. 49) of the telephone numbers contained in the faxes attached to the Second Amended Complaint is DENIED as moot.

[15] Although the motion to dismiss this claim is procedurally untimely under Federal Rule of Civil Procedure 12(g)(2), the Ninth Circuit recently joined two other Circuit Courts of Appeals in "forgiving of a district court's ruling on the merits of a late-filed Rule 12(b)(6) motion." *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 319 (9th Cir. 2017). In doing so, the Court read section 12(g)(2) in conjunction with Rule 1 and concluded that "[d]enying late-filed Rule 12(b)(6) motions and relegating defendants to the three procedural avenues specified in Rule 12(h)(2) can produce unnecessary and costly delays, contrary to the direction of Rule 1." *Id.* at 318. Accordingly, with this guidance in mind, Plaintiffs' objections to the timeliness of the motion in this regard are OVERRULED, and the Court proceeds to the merits of this otherwise untimely portion of the motion to dismiss.

2017 U.S. Dist. LEXIS 183690, *41

established by 28 U.S.C. § 1658. Plaintiff received the calls on 8/6/13, 8/29/13, 11/15/13, and 11/26/13." (*Id.* ¶ 70.) Ignoring these specific factual allegations, Defendants contend Claim Three contains "nothing more than a formulaic recitation of the second element . . . ." (Doc. No. 48 at 17.) However, even assuming, without deciding, Defendants are correct that the allegations in paragraph 71 are insufficient, Claim Three remains viably well-pled based on the specific allegations in paragraph 70. The latter paragraph contains specific facts and dates, complies with pleading requirements, and is not a mere formulaic recitation of elements. Accordingly, Defendants' motion to dismiss Claim Three is DENIED.

### 4. Claims Four (47 C.F.R. § 64.1200(b)(1)); Five (47 C.F.R. § 64.1200(b)(2)); and Six (47 C.F.R. § 64.1601(e))

Next, **[*42]** Defendants contend Plaintiffs lack standing to bring the fourth, fifth, and sixth claims because the relevant subsections of 47 C.F.R. § 64.1200 and 47 C.F.R. § 64.1601(e) do not provide for a private right of action. As an initial matter, the Court finds this portion of the motion to dismiss is timely given that it is a challenge to the Court's jurisdiction. As for the merits, the Court finds none of the regulations in these claims confer a private right of action upon Plaintiffs.

#### a. Timeliness

As discussed above, *HN26*[⬆️] standing bears on jurisdiction, and the Court can examine its jurisdiction at any time. Plaintiffs have standing to bring suit provided they satisfy constitutional and prudential requirements. *Nuclear Info. and Res. Serv. v. Nuclear Regulatory Comm'n*, 457 F.3d 941, 950 (9th Cir. 2006). To meet the constitutional requirements for standing, a plaintiff must demonstrate it has "suffered an injury in fact," "the injury is fairly traceable to the challenged action," and "it is likely . . . that the injury will be redressed by a favorable decision." *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000)). To satisfy the prudential standing requirements, a plaintiff must have "been granted a right to sue by the statute." *Id.* Thus, whether a statute grants a private right of action bears on a plaintiff's standing and thus the Court's jurisdiction. *See* **[*43]** *id.* Accordingly, the motion to dismiss is timely under Rules 12(g)(2) and 12(h)(3).

#### b. Claims Four and Five are Dismissed

*HN27*[⬆️] The FCC's TCPA-implementing regulations in 47 C.F.R. § 64.1200(b) require all prerecorded messages to state the identity of the entity responsible for the call at the beginning of the call and provide a contact number during the message for that entity. Defendants contend this regulation does not create a private right of action and accordingly seek dismissal of Claims Four and Five. Defendants are correct.

*HN28*[⬆️] Only two provisions of the TCPA expressly create private rights of action. 47 U.S.C. §§ 227(b)(3), 227(c)(5). However, the regulations in section 64.1200(b) "flow directly from the directives in Section 227(d)(3)." *Hurley v. Wayne Cty. Bd. of Educ.*, No. 3:16-9949, 2017 U.S. Dist. LEXIS 86345, at *10 (S.D. W. Va. June 6, 2017); *see also Lynn v. Monarch Recovery Mgmt.*, 953 F. Supp. 2d 612, 620 n.26 (D. Md. 2013). Section 227(d), unlike sections 227(b) and 227(c), does not contain a provision that creates a private right of action. *Charvat v. NMP, LLC*, 656 F.3d 440, 449 (6th Cir. 2011) ("Technical and procedural standards specific to automated calls are included in § 227(d) and accompanying regulation 47 C.F.R. § 64.1200(b), which do not provide a private right of action or a statutory-damages provision."); *Boydston v. Asset Acceptance LLC*, 496 F. Supp. 2d 1101, 1106 (N.D. Cal. 2007) ("In contrast to section 227(b)(3), the TCPA does not provide a private right of action for violations of the technical and procedural standards imposed by section 227(d).") *Hurley*, 2017 U.S. Dist. LEXIS 86345, at *10; *Gulden v. Consol. World Travel Inc.*, No. CV-16-1113-PHX-DJH, 2017 U.S. Dist. LEXIS 23350, at *7-8 (D. Ariz. Feb. 15, 2017).

Based on the foregoing, the **[*44]** Court "is compelled to find that *HN29*[⬆️] Congress did not intend private parties to enforce either section [227(d)] or the regulations prescribed pursuant to that section," and "is unwilling to read a private cause of action into section [227(d)] and its attendant regulations where Congress conspicuously omitted it but explicitly included it in adjacent subsections." *Hurley*, 2017 U.S. Dist. LEXIS 86345, at *10. Accordingly Claims Four and Five are DISMISSED with prejudice.

#### c. Claim Six is Dismissed

Defendants contend Plaintiffs lack standing to bring Claim Six because 47 C.F.R. § 64.1601(e) does not

convey a private right of action. Plaintiffs recognize this lack of an express grant of a private right of action but nonetheless invite the Court to imply such a right when the statute and regulations have not expressly granted one. However, the Court finds **HN30**[⬆] section 64.1601(e) does not create a private right of action. In so finding, the Court is generally guided by the United States Supreme Court's jurisprudence on statutory construction in the private right of action context and finds persuasive the only case in the country to address this issue.

**HN31**[⬆] Where a statutory scheme and its implementing regulations have expressly created a private right of action but have not expressly done so elsewhere in the same scheme, **[*45]** it is "highly improbable" that Congress—or here, the FCC—"absent mindedly forgot to mention an intended private action." *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 20, 100 S. Ct. 242, 62 L. Ed. 2d 146 (1979) (internal quotation and citation omitted); *see also Cannon v. Univ. of Chi.*, 441 U. S. 677, 717, 99 S. Ct. 1946, 60 L. Ed. 2d 560 (1979) (stating that where Congress "intends private litigants to have a cause of action," the "far better course" is for Congress to confer that remedy in explicit terms). If the statute itself does not "displa[y] an intent" to create "a private remedy," then "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Alexander v. Sandoval*, 532 U.S. 275, 286-87, 121 S. Ct. 1511, 149 L. Ed. 2d 517 (2001); *see also Transamerica Mortg. Advisors, Inc.*, 444 U. S. at 15-16. The Supreme Court has held that the judicial task is instead "limited solely to determining whether Congress intended to create the private right of action asserted." *Touche Ross & Co. v. Redington*, 442 U. S. 560, 568, 99 S. Ct. 2479, 61 L. Ed. 2d 82 (1979). "If the statute does not itself so provide, a private cause of action will not be created through judicial mandate." *Ziglar v. Abbasi*, 582 U.S. __, 137 S. Ct. 1843, 1855-56, 198 L. Ed. 2d 290 (2017). The Court keeps these principles in mind as it considers below the only case in the country to address whether section 64.1601(e) creates a private right of action

The District of Maryland in *Worsham v. Travel Options, Inc.*, No. JKB-14-2749, 2016 U.S. Dist. LEXIS 118774, 2016 WL 4592373 (D. Md. Sept. 2, 2016), noted uncertainty about where in the TCPA scheme section 64.1601(e) fits:

    In recognition of the role played by Caller **[*46]** ID in helping consumers avoid unwanted calls, and in conjunction with other amendments to its TCPA regulations in § 64.1200 *et seq.*, the FCC specifically amended this set of regulations in 2003 by adding § 64.1601(e), which requires telemarketers to transmit caller identification information, including either calling party number . . . or automatic number identification of the calling party's billing number . . . and, when available by the telemarketer's carrier, the telemarketer's name; this regulation also prohibited telemarketers from blocking the transmission of caller identification information. However, it is not clear whether § 64.1601(e) is promulgated under either subsection b or subsection c of the TCPA[, which expressly grant private rights of action]. Caller ID technology does not fit neatly into the focus of either subsection, neither of which requires the use of such technology to accomplish their respective purposes. *Thus, it is also not clear whether a violation of § 64.1601(e) falls within the private right of action granted by subsection b or subsection c. It seems just as likely that the FCC may have only intended to ensure consistency between its preexisting Caller ID regulations and its revised TCPA regulations and/or* **[*47]** *the FTC's regulations pertaining to telemarketing when the FCC promulgated § 64.1601(e)*; those efforts all occurred at the same time, in 2003. Additionally, the FCC said, "Caller ID requirements will improve the ability of consumers to identify and enforce do-not-call rights against telemarketers."

*Worsham*, 2016 U.S. Dist. LEXIS 118774, at *11-12 (emphasis added; citations omitted). Here, as Plaintiffs must concede, **HN32**[⬆] section 64.1601(e) does not expressly convey a private right of action. They nonetheless contend that the "genesis" of this section implies a private right of action was created because the section references TCPA subsection (c). However, as *Worsham* concluded, "the FCC's rule in § 64.1601(e) appears to *support* consumers' enforcement efforts under the TCPA's subsection c, rather than to *create* a separate mechanism upon which a consumer can make an actionable claim." *Id.* at *12 (emphasis in original).

The Court finds *Worsham* persuasive and—in conjunction with the Supreme Court's general guidance—finds section 64.1601(e) does not create a private right of action. The Court declines the invitation to infer a private right of action where section 64.1601(e) is silent on the matter. Accordingly, Claim Six is DISMISSED with prejudice.

### 5. Claim Eleven (Civil Conspiracy)[16]

Defendants contend Claim Eleven for "civil **[*48]** conspiracy" must be dismissed for failure to properly allege how Plaintiffs "were actually harmed" by Defendants' conduct and for failure to allege "what, if any, actual damage they suffered as a result." (Doc. No. 48 at 22.) Plaintiffs respond: "Of course the general conspiracy [sic] is not a cause of action." (Doc. No. 62 at 23.) The Court's analysis begins and ends with this concession. The purpose of the inclusion of claims in complaints is not, as Plaintiffs contend, "to highlight the agency relationships between the Defendants," and the Court declines to allow the inclusion of an *admittedly improper* claim simply to "highlight[] the agency aspects of the case." (*Id.* at 23-24.) The law could not possibly be more clear that **HN33**[⬆] civil conspiracy is a legal theory of liability, not an independent, actionable claim. *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1228 (9th Cir. 1997); *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 28 Cal. Rptr. 2d 475, 869 P.2d 454, 457 (Cal. 1994) (holding that conspiracy is not a legal cause of action independent of underlying tort); *see also FDIC v. Tarkanian*, No. 10-CV-980-WQH(BGS), 2012 U.S. Dist. LEXIS 62209, at *12-13 (S.D. Cal. May 3, 2012); *Navarrete v. Meyer*, 237 Cal. App. 4th 1276, 188 Cal. Rptr. 3d 623, 636 (Cal. Ct. App. 2015). Claim Eleven is DISMISSED with prejudice.[17]

### III. Conclusion

1. Defendants' motion for partial summary judgment (Doc. No. 50) is GRANTED-IN-PART, and judgment shall be entered in Defendants' favor on the following claims:

    a. Claim Two ("Junk Fax Law," Cal. Bus. & Prof. Code § 17538.41);

    b. **[*49]** Claim Seven (Consumer Legal Remedies

Act, Cal. Civ. Code §§ 1770 *et seq.*);

    c. Claim Eight (Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*);
    d. Claim Nine (Trespass); and
    e. Claim Ten (Conversion).

2. Defendants' motion to dismiss (Doc. No. 48) is GRANTED-IN-PART, and the following claims are DISMISSED with prejudice:
    a. Claim Four (47 C.F.R. § 64.1200(b)(1));
    b. Claim Five (47 C.F.R. § 64.1200(b)(2));
    c. Claim Six (47 C.F.R. § 64.1601(e)); and
    d. Claim Eleven (Civil Conspiracy).
The remainder of the motion to dismiss is DENIED for the reasons explained herein.

3. Plaintiffs' motion for partial summary judgment (Doc. No. 61) is DENIED.

4. Defendants' request for judicial notice (Doc. No. 49) is DENIED as moot.

5. The Clerk of Court is directed to terminate docket entry 76, which was incorrectly filed as a motion.

**IT IS SO ORDERED**.

DATED: November 6, 2017

/s/ William V. Gallo

Hon. William V. Gallo

United States Magistrate Judge

---

*End of Document*

---

[16] As with the motion to dismiss Claim Three, this portion of the motion is untimely. However, the Court proceeds to the merits of the claim in accordance with the Ninth Circuit's signaling guidance in *Pepper v. Apple Inc. (In re Apple iPhone Antitrust Litig.)*, 846 F.3d 313, 319 (9th Cir. 2017).

[17] Of course, given that agency is a general theory of liability, the Court's finding does not preclude Plaintiffs from pursuing this legal theory if it is otherwise appropriate, a determination the Court does not make today.



A Neutral
As of: October 29, 2019 6:56 PM Z

# Hurley v. Wayne Cty. Bd. of Educ.

United States District Court for the Southern District of West Virginia, Huntington Division

June 6, 2017, Decided; June 6, 2017, Filed

CIVIL ACTION NO. 3:16-9949

**Reporter**
2017 U.S. Dist. LEXIS 86345 *; 2017 WL 2454325

JOANN HURLEY, on behalf of herself and all others similarly situated, Plaintiffs, v. WAYNE COUNTY BOARD OF EDUCATION, a West Virginia Political Subdivision, and THOMAS MESSER, a West Virginia resident, Defendants.

**Prior History:** Hurley v. Wayne Cnty. Bd. of Educ., 2017 U.S. Dist. LEXIS 56951 (S.D. W. Va., Apr. 13, 2017)

## Core Terms

messages, motion to dismiss, regulations, alleges, prerecorded, violations, pleadings, phone, private right of action, vicarious liability, motion to amend, parties, motion for judgment, entity, private cause of action, agency relationship, factual allegations, direct liability, requirements, promulgated, subsections, prescribed, telephone, directs

**Counsel:**  [*1] For Joann Hurley, on behalf of herself, and all others similarly situated, Plaintiff: Anthony J. Majestro, LEAD ATTORNEY, POWELL & MAJESTRO, Charleston, WV; J. Ryan Stewart, LEAD ATTORNEY, BUCCI JAVINS & CARTER, Charleston, WV; Timothy C. Bailey, LEAD ATTORNEY, BAILEY JAVINS & CARTER, Charleston, WV.

For Wayne County Board of Education, a West Virginia Political Subdivision, and, Defendant: Bernard S. Vallejos, LEAD ATTORNEY, FARRELL FARRELL & FARRELL, Huntington, WV; Michael J. Farrell, LEAD ATTORNEY, FARRELL WHITE & LEGG, Huntington, WV.

For Thomas Messer, a West Virginia resident, Defendant: W. Michael Frazier, LEAD ATTORNEY, FRAZIER & OXLEY, Huntington, WV.

**Judges:** ROBERT C. CHAMBERS, CHIEF UNITED STATES DISTRICT JUDGE.

**Opinion by:** ROBERT C. CHAMBERS

## Opinion

### MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendant Wayne County Board of Education's ("BoE") Motion to Dismiss and Amended Motion to Dismiss. ECF Nos. 4, 10. Also pending is Plaintiff Joann Hurley's Motion for Leave to Amend the Complaint. ECF No. 28. Hurley brought suit against the BoE for violations of the Telephone Consumer Protection Act ("TCPA") and related federal regulations for allegedly improper political calls made by Defendants. The **[*2]** BoE believes Plaintiff has not alleged facts to support a claim of direct liability nor vicarious liability, and therefore the case should be dismissed against the BoE. Moreover, BoE maintains that Hurley's Motion to Amend does not address the deficiencies raised in its motion to dismiss and is therefore futile. For the following reasons the Court **DENIES** Hurley's Motion to Amend, **GRANTS** the BoE's Amended Motion to Dismiss, and **DENIES** the BoE's Motion to Dismiss as moot.

### I. Background

Sometime prior to February 2016, Hurley filed a bid for re-election to the BoE. Compl. ¶ 6, ECF No. 1. On February 25, 2016, Hurley received a phone call from a number not known to her. *Id.* ¶ 7. The call conveyed a

prerecorded message that stated "Hurley votes no for students and for schools and to vote responsibly." *Id.* The message did not reveal the identity of the proponent of the message nor the telephone number or address of the proponent. *Id.* The next day, February 26, 2016, another person received the same prerecorded message. *Id.* ¶ 12. The caller identification function on this person's phone indicated that the caller was Defendant Thomas Messer, an employee of the BoE. *Id.* Hurley kept receiving **[*3]** these prerecorded phone calls until May 9, 2016, the day before Election Day. *Id.* ¶ 9. The prerecorded messages were delivered from two different phone numbers. *Id.* ¶ 10. The first number was active from February through part of April and associated with Defendant Thomas Messer by caller ID. *Id.* ¶¶ 10, 12. The second was used for the remainder of April until May 9, 2016. *Id.* ¶ 10. During February, March, and April if the "0" key was pressed immediately following the prerecorded message, another message would play that stated: "you have reached the voicemail of Thomas Messer." *Id.* ¶ 14.

Hurley alleges that anyone with any affiliation with the BoE received the prerecorded messages and that the messages were received on both mobile phones and landlines. *Id.* ¶ 15. Hurley also alleges that Messer and the BoE initiated the calls using a call system maintained by the BoE, which incorporates the BoE's "master call list." *Id.* ¶ 17. The list contains telephone numbers for people affiliated with the BoE in some way. *Id.* Hurley alleges that none of the messages included required identifying and contact information for the initiator of the calls as required by the TCPA. *Id.* ¶ 7.

Hurley then brought **[*4]** this putative class action on behalf of herself and all people that were or now are a part of the BoE contact list. *Id.* Hurley's Complaint alleges two causes of action. Count One alleges both defendants violated Section 227(d) of the TCPA, which imposes restrictions on prerecorded phone messages. *Id.* ¶ 30; 47 U.S.C. § 227(d)(3). Count Two alleges both defendants violated the Federal Communication Commission's ("FCC") regulations enforcing the TCPA. *Id.* ¶ 34; 47 C.F.R. § 64.1200(b).

The BoE now seeks dismissal from the case. The BoE first filed a motion to dismiss and an answer in the alternative. ECF No. 4. Hurley did not respond to this motion. Some weeks later, the BoE filed an amended motion to dismiss, which sets out in much greater detail the BoE's arguments in support of its motion.[1] ECF No.

10. This motion has been fully briefed by both parties and is ripe for decision.[2]

Hurley's proposed Amended Complaint makes few additions of consequence to the original Complaint. Hurley added two additional claims in response to this Court's Order requesting additional briefing on whether Section 227(d) provided for a private cause of action. Pl.'s Mot. for Leave to Amend Compl. Ex. A, ECF No. 28-1. Hurley now alleges violations of Section 227(b) and related regulations, while still **[*5]** retaining her 227(d) claims. *Id.* Hurley also makes additions explaining Messer's method of placing the calls. *Id.* She explains that Messer used online computer programs to make robocalls at times he designated (1:00 p.m. to 7:00 p.m.) using voice actors that Messer paid through another online program to record scripts that he wrote. *Id.*

BoE renewed its arguments supporting its Motion to Dismiss in its Response to Hurley's Motion to Amend. BoE maintains that Hurley has not sufficiently pled facts to support any direct liability nor has she pled facts to support any kind of vicarious liability. BoE, relying on its

---

[1] The Court would be remiss if it did not bring to Hurley's attention that she did not file proofs of service evidencing the date on which Defendants were served with a summons and complaint. Although the Court lacks this information, it suspects that either the original motion to dismiss or the amended motion to dismiss were filed out of time. Nonetheless, Hurley did not raise this issue and the Court will not address it. It is enough to remind Hurley that she should have filed the proofs of service and both Hurley and the BoE should endeavor to observe the Federal Rules of Civil Procedure and the local rules of this District.

[2] The Court will treat the amended motion as a motion for judgment on the pleadings in accord with Federal Rule of Civil Procedure 12(c). *See* Fed. R. Civ. P. 12(c); 12(h)(2)(B). Submission of the amended motion moots the original motion. As such, the BoE has now effectively served an answer. Rule 12(c) states: "[a]fter the pleadings are closed . . . a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Where no counterclaims or cross-claims are made, pleadings are closed once a complaint and answer are filed. *Doe v. United States*, 419 F.3d 1058, 1061-62 (9th Cir. 2005). A motion to dismiss filed after an answer, as is the case here where no cross-claim or counterclaim has been filed, is treated as a motion for judgment on the pleadings pursuant to Rule 12(c). *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999). The standard of review for a motion for judgment on the pleadings made by a defendant asserting that the plaintiff has failed to state a claim is the same as would be applied were the motion treated as a motion to dismiss pursuant to Rule 12(b)(6). *Id.*

response to the Court's request for additional briefing, also argues that Section 227(d) of the TCPA does not provide a private cause of action and therefore Hurley's claims based on this section must be dismissed.

## II. Legal Standard

Rule 15(a)(2) of the Federal Rules of Civil Procedure permits amendment of a complaint after a responsive pleading has been filed "with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Leave should be freely given "when justice so requires." *Id.* "[A] district court has discretion to deny a motion to amend a complaint, so long as it does not outright refuse to grant the leave without any justifying reason." *Equal Rights Ctr. v. Niles Bolton Assocs.* 602 F.3d 597, 603 (4th Cir. 2010) (quoting **[*6]** *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)). A court may deny a motion to amend a complaint if the amendment would be futile. *Id.* (citing *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc)). An amendment is futile where even if it is permitted the amendment would not save the complaint from a motion to dismiss. *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995) (citing *Glick v. Koenig*, 766 F.2d 265, 268-69 (7th Cir. 1985)).

In analyzing a party's motion for judgment on the pleadings pursuant to Federal Rule 12(c), the Fourth Circuit has indicated that the applicable standard is the same as a motion to dismiss pursuant to Federal Rule 12(b)(6), noting that the "distinction is one without a difference." *Burbach Broad Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002). To overcome a motion for judgment on the pleadings, a complaint must be plausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal quotations and citations omitted). A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (internal quotations and citation omitted). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation **[*7]** omitted).

Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level ...." *Twombly*, 550 U.S. at 555 (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should … be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 558 (internal quotations and citations omitted). Finally, "[a]lthough for the purposes of a motion [for judgment on the pleadings] we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotations and citation omitted).

## III. Discussion

The Court will first address whether Hurley's claims based on Section 227(d)(3) (Count I of the Complaint and Count III of the proposed Amended Complaint) can survive. Section 227(d)(3) directs the FCC to "prescribe technical and procedural standards" for prerecorded telephone messages. The standards must include requirements that the messages include the identity of the entity placing the call and reveal the address or phone number of that entity. 47 U.S.C. § 227(d)(3). Leaving **[*8]** to one side that the section allegedly violated by BoE only directs the FCC to promulgate regulations containing certain requirements and says nothing about restricting the actions of private parties, Section 227(d), unlike other subsections of 227, contains no explicit private right of action. *Compare* § 227(d) *with* §§ 227(b), (c).

There is ample reason to believe that 227(d) does not confer such a right. For example, both Section 227(b) and 227(c) have subsections titled "Private right of action." 47 U.S.C. §§ 227(b), (c). In each, the statute permits private rights of action based on violations of "this subsection." *Id.* In other words, they authorize private rights of action for violations of that specific subsection—either subsection (b) or (c). Section 227(d) has no such provision. *See* 47 U.S.C. § 227(d).

To add, Section 227(g)(1) empowers state attorneys general to bring suit based on a "pattern or practice of telephone calls" in violation of "this section or the regulations prescribed under this section." 47 U.S.C. § 227(g)(1). The Court interprets "this section or the regulations" to mean Section 227, all of its parts, and any regulations promulgated pursuant to Section 227. In

2017 U.S. Dist. LEXIS 86345, *8

this respect, the TCPA is not unlike other federal consumer protection statutes, providing private rights of action for some but not all violations and empowering state attorneys general **[\*9]** to enforce the statute more broadly. *See, e.g.*, Truth in Lending Act, 15 U.S.C. § 1640(e) (empowering state attorneys general to enforce certain sections of the Act that do not provide for private rights of action). This reading is consistent with virtually every federal court to have considered this issue. *See Ashland Hosp. Corp. v. Serv. Emp. Int'l Union, Dist. 1199*, 708 F.3d 737, 745 (6th Cir. 2013); *Cunningham v. Credit Mgmt., L.P.*, No. 3:09-cv-1497, 2010 U.S. Dist. LEXIS 102802, 2010 WL 3791104, at \*5 (N.D. Tex. Aug. 30, 2010); *Merch. & Gould, P.C. v. Premiere Global Servs.*, 749 F. Supp. 2d 923, 937 n. 6 (D. Minn. 2010); *Boydston v. Asset Acceptance LLC*, 496 F. Supp. 2d 1101, 1110 (N.D. Cal. 2007); *Kopff v. Battaglia*, 425 F. Supp. 2d 76, 91 (D.D.C. 2006); *G.M. Sign, Inc. v. Franklin Bank, S.S.B.*, No. 06-cv-0949, 2006 U.S. Dist. LEXIS 29667, 2006 WL 1132386, at \*4 (N.D. Ill. Apr. 19, 2006); *Klein v. Vision Lab Telecomms., Inc.*, 399 F. Supp. 2d 528, 539 (S.D.N.Y. 2005).

This finding is further bolstered by the text of 227(d)(3). The section directs the FCC to conduct rule-making and specifies particular substance for the rules. Initiators of calls are not the subject of the section and thus the section, by its own terms, does not direct any action by any entity other than the FCC.

Moreover, the regulations promulgated pursuant to this section are solely enforceable by the FCC and state attorneys general. *See* § 227(g)(1). Hurley alleges violations of the regulations promulgated pursuant to Section 227(d). She argues that even if Section 227(d)(3) does not permit a private right of action, surely the FCC regulations, which impose certain requirements on prerecorded phone messages, create a private right of action for violations of the regulations. *See* 47 C.F.R. 64.1200. The text of the TCPA, again, compels **[\*10]** the Court to find otherwise.

Specifically, Hurley alleges violations of 47 C.F.R. 64.1200(b). The regulations prescribed in that section require all prerecorded messages to state the identity of the entity responsible for the call at the beginning of the call and to provide a contact number during the message for that entity. These provisions flow directly from the directives in Section 227(d)(3). Section 227(d), however, lacks the same private cause of action provisions contained in Sections (b) and (c). In both (b) and (c), the private cause of action provisions specifically permit cases brought based on violations of

the regulations promulgated pursuant to those subsections. §§ 227(b)(3), (c)(5) (a plaintiff may bring "an action based on a violation of . . . the regulations prescribed under this subsection . . . ."). Without such language in Section (d), the Court is compelled to find that Congress did not intend private parties to enforce either Section 227(d) or the regulations prescribed pursuant to that section. The Court is unwilling to read a private cause of action into Section (d) and its attendant regulations where Congress conspicuously omitted it but explicitly included it in adjacent subsections.

The Court will now turn to the BoE's arguments that Hurley's **[\*11]** Motion to Amend should be rejected because it does not cure the fatal flaws it raised in its Motion to Dismiss. First, the BoE argues, and the Court agrees, Hurley has made no allegation that can support a claim for direct liability against the BoE. Nowhere in Hurley's Amended Complaint does she mention a specific act done by the BoE to commit the alleged violations. The only allegations in the Complaint and Amended Complaint are aimed at Messer. To sustain her claim of direct liability Hurley must allege specific facts to support it. She has failed to do this.

Second, the BoE contends that Hurley has not alleged sufficient facts to support a claim for vicarious liability against the BoE.[3] Hurley comes closer to the mark on

_____

[3] The BoE makes a fleeting reference to section 29-12A-4 of the West Virginia Code in its Amended Motion to Dismiss apparently to support its contention that Hurley needs to plead that the phone calls placed by Messer were in the scope of his employment. Section 29-12A-4 is a qualified immunity statute that states in relevant part: "a political subdivision (BoE is such an entity) is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee" unless such injury, death or loss to persons or property were "caused by the negligent performance of acts by their employees while acting in the scope of employment." The BoE made no argument related to immunity when it first cited this section in its Amended Motion to Dismiss. But then, in its reply to Hurley's Response, the BoE unfurled a full-fledged argument for dismissal based on the immunity statute. As an initial matter, raising an issue for the first time in a reply is disfavored and those issues are generally considered waived. *See Scottsdale Ins. Co. v. Flowers* 513 F.3d 546, 553 (6th Cir. 2008) (quoting *Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002)). The practice is disfavored because it denies the non-moving party a chance to respond, to which it is ordinarily due. Still, BoE then reprised the argument in its Response to Hurley's Motion to Amend. Nevertheless, because the immunity issue can be swatted away with ease,

2017 U.S. Dist. LEXIS 86345, *11

this claim but still falls short. Hurley alleged in both her Complaint and Amended Complaint that Messer is employed by the BoE as a "technology coordinator and/or curriculum specialist," he was employed by the BoE when the calls were placed, and he used a call list maintained by the BoE to identify recipients of the messages. Taking all of these allegations as true, as the Court must at the pleading stage, Hurley has failed to allege a claim based on vicarious liability **[*12]** against the BoE.

"An employer may be liable for both negligent and intentional torts committed by an employee within the scope of his or her employment." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 756, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998). Declaring, without any factual support, that Messer "was in the course of his employment with defendant . . . during the time these illegal . . . messages were created, initiated, and made" is not sufficient to demonstrate that Messer was acting within the scope of his employment. In fact, the words: "was in the course of his employment . . . during the time" that the calls were made seems to convey only that Messer was employed by the BoE at the time the messages were disseminated. This is not enough. Hurley must allege, as is required by the standard for vicarious liability, that placing the calls was within the scope of his employment. *See id.* In the case of intentional torts committed by employees, as Messer's actions can most certainly be classified, that means the act was done with the purpose, in whole or in part, to serve his employer. *See id.* There are no facts in either complaint that support a plausible inference that Messer was acting to serve the BoE.

Rather, the facts pled lead to an inference that Messer was acting **[*13]** on his own and for his own purposes. He sought out the voice actors, wrote the scripts for the messages, and used private autodialing services to make the calls. He then set an autodialing program to make the calls from 1:00 p.m. to 7:00 p.m. The fact that he used the BoE call list (however dubious the claim may be) only supports an inference that he had access to it—not that he was acting at the behest of the BoE or in service of it. Moreover, placing the calls during Messer's working hours is purely incidental to his employment. Messer set the calls to be made during

working hours, but did not himself make them at that time; an autodialing system was programed to make them during those hours.

Arguing that a "reasonable factfinder" could find that Messer was acting within the scope of his employment, as Hurley attempts, fundamentally misunderstands the standard by which she must plead her case. That standard is more appropriate at the summary judgment phase. At this stage, the Court, assuming all *well-pleaded* factual allegations as true, determines if the plaintiff has pled a viable cause of action. *Iqbal*, 556 U.S. at 678. The Court must confine its review to the allegations made in the complaint. *See* Fed R. Civ. P. 12(d) **[*14]** . If Hurley has more evidence linking Messer's actions to the BoE she would do well to include them in her pleadings. Without them, however, she has not plead a plausible case for vicarious liability against the BoE.

In coming to this conclusion, the Court makes no determination whether Messer did or did not, in fact, act within the scope of his employment, only that Hurley did not plead as much. This distinction is the animating principle of a motion to dismiss. A determination whether Messer was acting within the scope of his employment is undeniably an issue of fact, but at the pleading stage, Hurley must plead the facts upon which that determination could rest. The Court will not fill in the blanks for her.

Hurley's attempt to assert other forms of agency relationships does not save her Motion to Amend. First, Hurley does not explicitly plead a formal agency relationship, express or implied, between the BoE and Messer outside of his status as an employee, nor does she plead apparent authority or ratification. She raises these other agency relationships in her briefing only. Hurley admittedly refers to Messer as an "employee/agent" of the BoE in her Complaint and proposed Amended Complaint but **[*15]** provides no further factual development of the alleged relationship. An agency relationship is a legal definition that applies to certain relationships based on particular facts. Declaring that Messer was an agent of the BoE in some way outside of his employment without alleging supporting facts is a bare legal conclusion that is not entitled to the presumption of truth that is ordinarily due to well-pleaded factual allegations. *Iqbal*, 556 U.S. at 678.

Arguments asserting that a finding of an agency relationship is an issue of fact for the fact-finder are

the Court will consider it. The immunity statute explicitly exempts claims based on federal statutes. W. Va. Code § 29-12A-18(e). Hurley's claims are based exclusively on the TCPA, a federal statute. The BoE's immunity argument is thus obviously inapplicable.

sorely misplaced at this stage. There is no question that the ultimate determination of the existence of such a relationship is an issue of fact, but to reiterate the pleading standard, Hurley must actually plead the facts to support her allegations. Hurley provides no factual support for her vicarious liability claim against the BoE in either her Amended Complaint or the original Complaint.

Hurley has failed to sufficiently plead either direct liability or vicarious liability claims against the BoE in her proposed Amended Complaint. These same defects infect her original Complaint. Accordingly, the Court finds that Hurley's Motion to Amend would be futile **[*16]** as applied to the BoE. The Court further finds that Hurley has failed to state a claim upon which relief could be granted against the BoE, and as a matter of law cannot maintain a claim based on 47 U.S.C. § 227(d)(3) and 47 C.F.R. 64.1200(b) as against all Defendants.

## IV. Conclusion

For the foregoing reasons, Plaintiff's Motion for Leave to Amend is **GRANTED** in part with respect to Defendant Thomas Messer and **DENIED** in part with respect to Defendant Wayne County Board of Education. ECF No. 28. Defendant's Amended Motion to Dismiss is **GRANTED**, ECF No. 10, and its Motion to Dismiss is **DENIED** as moot. ECF No. 4. The Wayne County Board of Education is **DISMISSED** from the case. Plaintiff's case based on her Amended Complaint may continue against Thomas Messer, but only Counts I & II survive. Counts III & IV are **DISMISSED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: June 6, 2017

/s/ Robert C. Chambers

**ROBERT C. CHAMBERS, CHIEF JUDGE**



**Cited**
As of: October 29, 2019 7:01 PM Z

# Gulden v. Consol. World Travel Inc.

United States District Court for the District of Arizona

February 15, 2017, Decided; February 15, 2017, Filed

No. CV-16-01113-PHX-DJH

**Reporter**
2017 U.S. Dist. LEXIS 23350 *

Charles A. Gulden, Plaintiff, v. Consolidated World Travel Incorporated, Defendant.

## Core Terms

allegations, Counts, private right of action, solicitations, initiated, training, violations, Notice, labels, motion to dismiss, leave to amend, requires, services, phone

**Counsel: [*1]** Charles A Gulden, Plaintiff, Pro se, Yuma, AZ.

For Consolidated World Travel Incorporated, Defendant: Jeffrey Aaron Backman, Richard Wayne Epstein, Roy Taub, LEAD ATTORNEYS, Greenspoon Marder PA, Ft Lauderdale, FL; Julia Anne Wagner, Todd Feltus, LEAD ATTORNEYS, Kercsmar & Feltus PLLC, Scottsdale, AZ.

**Judges:** Honorable Diane J. Humetewa, United States District Judge.

**Opinion by:** Diane J. Humetewa

## Opinion

### ORDER

This matter is before the Court on Defendant's Motion to Dismiss (Doc. 19).[1] Plaintiff filed a Response (Doc. 20),

and Defendant filed a Reply thereto (Doc. 21).

### I. BACKGROUND

Plaintiff filed a Complaint in Yuma County Justice Court in the State of Arizona on March 28, 2016. (Doc. 1-1). Defendant removed the case to this Court. (Doc. 1). Plaintiff's Complaint alleges various violations of the federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227.[2]

Plaintiff alleges that from approximately December 4, 2015 to January 31, 2016, "Defendant, Defendant's agents or parties acting on behalf of Defendant" [*2] called Plaintiff's residential phone four times "for the purpose of soliciting for its products and services." (Doc. 1-1 at ¶3).[3] These calls were initiated using "an artificial or prerecorded voice," and an automatic telephone

---

[1] Defendant has requested oral argument. The Court denies the request because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed.R.Civ.P. 78(b) (court may decide motions without oral hearings); LRCiv 7.2(f) (same).

[2] Plaintiff apparently filed at least six TCPA actions in 2016 against different defendants, including four actions (counting this one) in March 2016 alone. Plaintiff filed similar complaints in each case, which the various defendants subsequently removed to federal court. *See* Notice of Removal, *Gulden v. Dickey's Barbeque Restaurants, Inc.*, No. 2:16-cv-00387-SPL (D. Ariz. February 11, 2016); Notice of Removal, *Gulden v. Paramount Equity Mortgage, LLC*, No. 2:16-cv-00795-SRB (D. Ariz. Mar. 23, 2016); Notice of Removal, *Gulden v. New Penn Financial, LLC* (D. Ariz. Apr. 4, 2016); Notice of Removal, *Gulden v. Quicken Loans Incorporated*, No. 2:16-cv-00960-ROS (D. Ariz. Apr. 6, 2016); Notice of Removal, *Gulden v. Royal Neighbors of America & Dynamic Insurance Services, Inc.*, No. 2:16-cv-04000-DGC (D. Ariz. Nov. 18, 2016).

[3] Unless otherwise indicated, the Court's citations to filed documents reflect the docket number(s) and page number(s) generated by CMECF, the district court's electronic filing and case management system.

dialing system (ATDS) without Plaintiff's consent. (*Id.* at ¶¶5-7). Plaintiff was never Defendant's customer, and never provided personal information to Defendant. (*Id.* at ¶8). The calls at issue were not for emergency purposes, and Defendant "failed to state clearly the identity of the business, individual or other entity responsible for initiating the calls and artificial prerecorded message." (*Id.* at ¶¶9-10). Defendant also "failed to provide an automated, interactive voice-and/or key press-activated opt-out mechanism for the Plaintiff to make a do-not-call request." (*Id.* at ¶11). For at least thirty-one days prior to the calls, "Plaintiff's residential telephone number was registered on the national Do-Not-Call registry." (*Id.* at ¶12).

Based on these alleged facts, Plaintiff claims that with each of the four phone calls, Defendant committed a separate negligent violation of the TCPA pursuant to 47 U.S.C. §227(b)(1)(B). (Doc. 1-1 at ¶¶13-15). Plaintiff labels these claims "TCPA Violations **[*3]** I, II, III, & IV." (*Id.*) Plaintiff also alleges that the same four phone calls give rise to additional claims under 47 U.S.C. §227(c). (*Id.* at ¶¶16-18). Plaintiff labels these claims "TCPA Violations V, VI, VII, VIII." (*Id.*) Plaintiff further alleges that the same four phone calls give rise to three additional claims under 47 U.S.C. §227(d)(3)(A), 47 C.F.R. §64.1200(b)(3), and 47 C.F.R. §64.1200(c)(2)(i)(B). (*Id.* at ¶¶19-27). Plaintiff labels these claims TCPA Violation IX, X, and XI, respectively. (*Id.*)

Defendant moved to dismiss Plaintiff's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

## II. LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of a complaint. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). A complaint must contain a "short and plain statement showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). Rule 8 requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

Rule 8(a) does not require that a complaint contain "detailed factual allegations." *Twombly*, 550 U.S. at 545. The Rule requires that the complaint "contain sufficient factual matter, accepted as true, to 'state a claim for

relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is **[*4]** liable for the misconduct alleged." *Id.*

The Court must interpret the facts alleged in the complaint in the light most favorable to the plaintiff, while also accepting all well-pleaded factual allegations as true. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). That rule does not apply, however, to legal conclusions. *Iqbal*, 556 U.S. at 678. A complaint that provides "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor will a complaint suffice if it presents nothing more than "naked assertions" without "further factual enhancement." *Id.* at 557. The Court is mindful that it must "construe *pro se* filings liberally when evaluating them under *Iqbal*." *Jackson v. Barnes*, 749 F.3d 755, 763-64 (9th Cir. 2014) (quoting *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010)).

## III. APPLICATION

### A. All Counts (Counts I — XI)

In the Motion, Defendant argues that the entire Complaint fails as a matter of law because it does not state sufficient facts to support Plaintiff's allegations that (1) the calls at issue were initiated by Defendant; or (2) the calls were prohibited solicitations. Plaintiff responds that his Complaint alleges both who initiated the calls and the purpose for which the calls were initiated.[4] Defendant counters that Plaintiff still has not provided

---

[4] In the "Legal Standard for a Motion to Dismiss" section of his Response, Plaintiff cites *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248 (9th Cir. 1997) and *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) and asserts, "A complaint should not be dismissed for failure to state a claim 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" (Doc. 20 at 2:23-25). In light of the Supreme Court's holding in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), this statement is no longer an accurate statement of the law. *See Borja-Valdes v. City and County of San Francisco*, 2015 U.S. Dist. LEXIS 125252, 2015 WL 5522287, *8 n. 5 (N.D. Cal. Sept. 18, 2015)("Since *Twombly* and *Iqbal*... several district courts... have treated *Gilligan* as implicitly overruled.").

2017 U.S. Dist. LEXIS 23350, *4

any facts in support of his assertions that the calls contained **[*5]** unsolicited advertisements or that Defendant had any role in the calls.

### 1. The Identity of the Caller

As noted above, Plaintiff has alleged that "Defendant, Defendant's agents or parties acting on behalf of the Defendant" initiated the alleged calls. (Doc. 1-1 at ¶3). Plaintiff offers no factual support for this statement, which leaves the Court wondering how Plaintiff concluded that Defendant was the source of the alleged calls. Plaintiff's Complaint is devoid of any facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," because the Complaint is devoid of any facts implying that Defendant was involved in the calls. *Cf. Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 916 (9th Cir. 2012) (explaining that plaintiff claimed "he could identify the caller from the caller identification feature on his phone"). The Court therefore finds that on this issue, the Complaint provides only "labels and conclusions" and a "recitation of the elements" of a TCPA claim. *See Twombly*, 550 U.S. at 555. Because identity is a necessary element of all of Plaintiff's claims, this deficiency warrants dismissal of all of Plaintiff's claims.

### 2. The Character of the Call

Plaintiff's allegation that the calls were prohibited **[*6]** solicitations suffers from the same lack of factual support as his allegation that Defendant was involved in the calls. Plaintiff's Complaint alleges that the calls were initiated "for the purpose of soliciting for [Defendant's] products and services," but provides no factual support that would allow the court to draw a reasonable inference that this is true. (Doc. 1-1 at ¶3). As Defendant correctly asserts, the determination of whether a call was a prohibited solicitation should turn on "the purpose of the message." *Chesbro*, 705 F.3d at 918.

Defendant urges this Court to do "as other courts have done in the face of *similarly nondescript allegations*" and dismiss Plaintiff's complaint. (Doc. 19 at 7:6-9) (emphasis added). Defendant then cites a number of cases, but none of these cases involve a complaint dismissed on the basis of "nondescript allegations." Indeed, the cases cited by Defendant include descriptions or transcriptions of the relevant call or text message, which renders the allegations about the character of the call in those cases far from nondescript.

*See Daniel v. Five Stars Loyalty, Inc.*, 2015 U.S. Dist. LEXIS 159007, 2015 WL 7454260, *1 (N.D. Cal. Nov. 24, 2015); *Dolemba v. Illinois Farmers Ins. Co.*, 2015 U.S. Dist. LEXIS 104314, 2015 WL 4727331, *1 (N.D. Ill. Aug. 10, 2015); *Orea v. Nielsen Audio, Inc.*, 2015 U.S. Dist. LEXIS 54916, 2015 WL 1885936, *1 (N.D. Cal. Apr. 24, 2015); *Alleman v. Yellowbook*, 2013 U.S. Dist. LEXIS 127212, 2013 WL 4782217, *1 (S.D. Ill. Sept. 6, 2013).

Although Defendant's case citations are not directly on point, the Court agrees with Defendant that Plaintiff's claims contain insufficient **[*7]** factual support to state a claim under Rules 8(a) and 12(b)(6). To survive a motion to dismiss, Plaintiff must adequately allege that the calls received were unsolicited advertisements as that term is defined in the TCPA. *See* 47 U.S.C. §227(b)(1)(C). Plaintiff does not describe the calls, but simply avers that the calls were made "for the purpose of soliciting for [Defendant's] products or services." This is nothing more than a conclusion, which *Twombly* specifically prohibits. *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires *more than labels and conclusions*.") (emphasis added). Without "further factual enhancement," Plaintiff's allegation that the calls were unsolicited advertisements is insufficient to survive a motion to dismiss. *See id.* at 557.

### B. Counts IX and X

In the Motion, Defendant also argues that Counts IX and X should be dismissed because they are based on §227(d) of the TCPA, which contains no express private right of action. Plaintiff does not respond to these arguments. A review of the statute reveals that §227(d) does not, in fact, contain an express private right of action. 47 U.S.C. §227(d); *see also Boydston v. Asset Acceptance LLC*, 496 F. Supp. 2d 1101, 1106 (N.D. Cal. 2007) ("In contrast to section 227(b)(3), the TCPA does not provide a private right of action for violations of the technical and procedural standards imposed **[*8]** by section 227(d)."); *Harris v. American General Financial Services, LLC*, 2012 U.S. Dist. LEXIS 83192, 2012 WL 2243663, *2 (D. Nev. June 14, 2010) (explaining that §227(d) "does not provide for a private right of action for violations, instead describing the Federal Communications Commission's authority to promulgate regulations pursuant to this subsection"). Because §227(d) does not contain a private right of action, Counts IX and X will be dismissed with prejudice.

## D. Count XI

Defendant argues Count XI should be dismissed because the lack of training alleged by Plaintiff cannot form the basis for a TCPA claim. (Doc. 19 at 15:5-9). Plaintiff does not respond to this argument.

Plaintiff's Complaint states that Defendant's alleged violations of the TCPA "indicate that Defendant has failed to train its personnel or others acting on its behalf in procedures established pursuant to the National Do Not Call Registry and rules, pursuant to 47 U.S.C. 227(c)(2) and 47 C.F.R. §64.1200(c)(2)(B)." (Doc. 1-1 at ¶26). As Defendant correctly explains, §227(c)(2) requires that the Federal Communications Commission "prescribe regulations to implement methods and procedures for protecting the privacy rights" described in a §227(c)(1). This section does not require any particular personnel training, so it alone cannot form the basis for Plaintiff's claim that Defendant failed to train its personnel.

Defendant also points **[*9]** out that the regulation Plaintiff cited in support of Count XI, 47 C.F.R. §64.1200(c)(2)(B), does not exist. Defendant speculates that Plaintiff meant to rely on 47 C.F.R. §64.1200(c)(2)(i)(B), and argues that that section does not require any particular personnel training. The Court declines to make this assumption. In light of the typo, it is possible that Plaintiff was attempting to cite some other section in support of his claim. Plaintiff, however, has failed to state a claim upon which relief can be granted based on any failure to train because he has not identified any affirmative requirement that Defendant provide any particular training.[5]

## E. Conclusion

Plaintiff fails to state a claim upon which relief can be granted on all counts because Plaintiff has failed to allege facts suggesting Defendant was involved in the calls or that the calls were prohibited solicitations. Counts IX and X fail for the additional reason that §227(d) does not contain a provision for a private right of action. Count XI fails for the additional reason that the statute Plaintiff cited in support of that claim, 47 C.F.R.

§64.1200(c)(2)(B), does not exist.

## IV. AMENDMENT

### A. Legal Standard

Where "it is not 'abundantly clear' that [a plaintiff] could not cure [the complaint's] deficiencies by amendment," **[*10]** the court must grant an opportunity to amend the complaint. *Jackson v. Barnes*, 749 F.3d 755, 767 (9th Cir. 2014) (citations omitted); *see also Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc) (internal quotation marks and citations omitted) (holding that a *pro se* litigant must be given leave to amend his complaint "if it appears at all possible that the plaintiff can correct the defect" in the complaint); Fed. R. Civ. P. 15(a)(2) (leave to amend should be "freely" given "when justice so requires").

### B. Application

As outlined above, Plaintiff fails to state a claim upon which relief can be granted on any of his claims. The Court, however, cannot now conclude that it is "abundantly clear" that Plaintiff could not cure the deficiencies in Counts I-VIII and Count XI by amendment. *See Jackson*, 749 F.3d at 767. Thus, Plaintiff must be granted leave to amend these claims to address the deficiencies identified above and provide sufficient factual allegations to state a claim. Counts IX and X cannot be saved by amendment, however, because they rely on statutes that do not provide for a private right of action. Plaintiff will therefore not be granted leave to amend as to Counts IX and X.

## V. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss (Doc. 19) is **GRANTED**.

**IT IS FURTHER ORDERED** that Count IX and Count X are **[*11] dismissed with prejudice**.

**IT IS FURTHER ORDERED** that Plaintiff's remaining claims, Counts I-VIII and XI, are **dismissed with leave to amend**. Plaintiff shall have **thirty (30) days** from the date this Order is filed to file a first amended complaint in compliance with this Order. If Plaintiff fails to file an

---

[5] It may well be that Count XI, like Counts IX and X, is not actionable. However, because Plaintiff has not identified an existing statute or regulation upon which he bases Count XI, the Court is unable at this time to determine if this is the case.

2017 U.S. Dist. LEXIS 23350, *11

amended complaint within **thirty (30) days**, the Clerk of the Court shall, without further notice, enter a judgment of dismissal of this action without prejudice.

**Dated** this 15th day of February, 2017.

/s/ Diane J. Humetewa

Honorable Diane J. Humetewa

United States District Judge

---

**End of Document**



Positive
As of: October 29, 2019 7:03 PM Z

# Worsham v. Travel Options, Inc.

United States District Court for the District of Maryland

September 1, 2016, Decided; September 2, 2016, Filed

CIVIL NO. JKB-14-2749

**Reporter**

2016 U.S. Dist. LEXIS 118774 *; 2016 WL 4592373

MICHAEL C. WORSHAM, Plaintiff v. TRAVEL OPTIONS, INC., et al., Defendants

**Subsequent History:** Affirmed by, Motion denied by Worsham v. Travel Options, Inc., 2017 U.S. App. LEXIS 3862 (4th Cir. Md., Mar. 3, 2017)

## Core Terms

telemarketer's, regulations, Travel, allegations, telephone number, caller, Counts, violations, automatic telephone, caller id, Consumer, dialing, initiating, factual allegations, statutory damages, telephone, identification, carrier, injunctive relief, conclusions, entitlement, requires, services, damages, private right of action, telephone call, Implementing, well-pleaded, prescribed, default

**Counsel:** [*1] Michael C. Worsham, Plaintiff, Pro se, Forest Hill, MD.

**Judges:** James K. Bredar, United States District Judge.

**Opinion by:** James K. Bredar

## Opinion

### MEMORANDUM

Plaintiff Michael C. Worsham filed this lawsuit against Travel Options, Inc., and Clifford Shannon, alleging violations of the Telephone Consumer Protection Act of 1991 ("TCPA"), codified at 47 U.S.C. § 227, and the Maryland Telephone Consumer Protection Act ("MTCPA"), codified at Md. Code Ann., Com. Law §§ 14-3201 and 14-3202 (LexisNexis 2013). (Compl., ECF

No. 1.) He asked for total damages of $64,000 and injunctive relief. Service was made on the two Defendants (ECF No. 6), but neither one appeared or filed an answer. At Worsham's request, the Clerk entered defaults against both Defendants. (ECF Nos. 9, 10.) Now pending before the Court is Worsham's motion for default judgment. (ECF Nos. 18, 19.) In his motion, Worsham asks for total statutory damages of $18,000 ($8,000 under the TCPA and $10,000 under the MTCPA) to be awarded jointly and severally against both Defendants and for injunctive relief.[1] As will be explained below, default judgment will be entered against Travel Options, Inc., only; judgment will be entered for Defendant Shannon.

### I. Standard for Default Judgment

The Supreme Court has opined that a default judgment may be lawfully entered only "according to what is proper to be decreed upon the statements of the bill, assumed to be true." *Thomson v. Wooster*, 114 U.S. 104, 113, 5 S. Ct. 788, 29 L. Ed. 105, 1885 Dec. Comm'r Pat. 279 (1884). "'The defendant, by his default, admits the plaintiff's well pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established. . . . The defendant is not held . . . to admit conclusions of law.'" *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). It is the court's task, therefore, to "determine whether the well-pleaded allegations in

---

[1] In his motion, Worsham only pursues the statutory compensatory damages and [*2] does not seek the enhanced statutory damages for willful or knowing violation of the TCPA or FCC regulations.

2016 U.S. Dist. LEXIS 118774, *2

[plaintiff's] complaint support the relief sought . . . ." *Ryan*, 253 F.3d at 780. Mere default "does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu*, 515 F.2d at 1206; *see also DirecTV, Inc. v. Pernites*, 200 F. App'x 257, 258 (4th Cir. 2006) (*per curiam*).

The Court surmises that "well-pleaded allegations of fact" sufficient to support a default judgment are equal in quality and character to those factual allegations sufficient for a complaint to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Compare Ryan*, 253 F.3d at 780 ("well-pleaded allegations" **[*3]** in complaint must support relief sought), *with Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). Under Rule 8(a)(2), a plaintiff must "show" he is entitled to relief, and that "requires more than labels and conclusions"; "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). *See also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The principle that a court must accept as true all of the complaint's allegations only applies to factual allegations; legal conclusions couched as factual allegations need not be accepted as binding. *Iqbal*, 556 U.S. at 678. Further, a court need not accept "unwarranted inferences, unreasonable conclusions, or arguments." *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014).

## II. Allegations of the Complaint

Worsham alleges he resides in Harford County, Maryland, and that he "has continuously subscribed to and used his phone number 410-557-6192, which has been on the National Do Not Call list over 8 years since July 15, 2006, and is a Verizon Wireless cell phone number." (Compl. ¶ 1.) The two Defendants are Travel Options, Inc., **[*4]** which "is a Florida for-profit corporation incorporated in October 2010 with an address" in Boca Raton, Florida, and Clifford Shannon, described by Worsham as "an individual who lives in Florida, and who has been President and registered agent for Travel Options, Inc. at all times relevant to this suit." (*Id.* ¶¶ 2, 3.)

Through the use of "Caller ID," Worsham identified four calls to his number from the same Florida number, 954-656-4091, which were made July 16-18, 2014. (*Id.* ¶ 9.) During the first three calls, no message was left. (*Id.* ¶ 10.) It is reasonable to infer that the first three calls went to an answering machine or to voicemail in Worsham's home, although he does not so state, and that the caller hung up without leaving a message. Worsham says he answered the fourth call and spoke with a man who said he was Jim Allison with Travel Options. (*Id.* ¶ 11.) Allison allegedly told Worsham that he had an unused travel credit of $750 from attending a timeshare presentation in either Florida or Las Vegas in the preceding two to four years, and then Allison offered to sell a travel package to Worsham that would incorporate the unused travel credit. (*Id.*) Allison indicated the travel **[*5]** package had a Florida part, a Las Vegas part, and a cruise, all of which was worth over $4,000, but Worsham's cost after applying the credit would only be $697 if he agreed to participate in a ninety-minute timeshare presentation. (*Id.*) Allison further indicated the travel package was essentially a tax write-off for the timeshare companies "and a way to keep rooms occupied that would otherwise be empty." (*Id.*) Worsham did not attend a timeshare presentation anywhere in the two to four years preceding the telephone conversation. (*Id.* ¶ 13.) Additionally, Worsham has no business relationship of any kind with Defendant, its affiliates, agents, contractors, or partners, and he never gave any prior permission for any of them to call him. (*Id.* ¶ 24.)

Worsham makes many other allegations, but these amount to his conclusions with no supporting factual basis. For example, he alleges Shannon exercised decision-making control over Travel Options's policies, procedures, and business practices and, as well, Shannon made the decisions causing the calls and violations. (*Id.* ¶ 16.) He also alleges the name of the telemarketer is available for transmission via Caller ID by Defendants' carrier. (*Id.* **[*6]** ¶¶ 22, 23.) In addition, Worsham alleges Travel Options has no policy or procedures pertaining to the Do Not Call ("DNC") registry, as required by the TCPA and by rules promulgated by the Federal Communications Commission ("FCC"). (*Id.* ¶ 27.) Also, Worsham alleges "Defendants' calls used an '*automatic telephone dialing system*' (ATDS) as defined by 47 U.S.C. § 227(a)(1) and 47 C.F.R. § 64.1200(f)(2)." (*Id.* ¶ 29.) He further alleges, "Defendants are all aware and know about, and approve of, the telemarketing calling patterns and practices used in their calling centers and/or used by of [*sic*] their agents or contractors" (*id.* ¶ 38), "Defendants all ratified

the acts and conduct of all person [*sic*] involve [*sic*] in the Scam . . ." (*id.* ¶ 40), and "Defendants failed to pay the annual fee for access to telephone numbers within Plaintiff's area code 410 that are included on the National DNC list registry maintained by the FTC" (*id.* ¶ 44). None of these additional allegations rests on facts logically within the knowledge of Worsham, and he provides no supporting factual allegations for them.

Worsham's complaint includes twenty-four counts based on alleged violations of the TCPA, FCC rules, Federal Trade Commission ("FTC") rules, and the MTCPA:

• Count 1: Each call violated the TCPA's and FCC's prohibition on initiating calls to a telephone number on the DNC list.

• Count 2: Each call violated the TCPA's and FCC's prohibition on initiating any telephone call using an automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service.

• Count 3: Each call violated the TCPA's and FCC's requirement to identify the caller, the person or entity on behalf of whom the call is made, and a telephone number or address at which the person or entity may be contacted.

• Count [*7] 4: Each call violated the TCPA's and FCC's requirement to transmit caller identification and to include the calling number and the name of the telemarketer if the name is available by the telemarketer's carrier.

• Count 5: The TCPA and/or FCC rule violation in Count 1 violated the MTCPA.

• Count 6: The TCPA and/or FCC rule violation in Count 2 violated the MTCPA.

• Count 7: The TCPA and/or FCC rule violation in Count 3 violated the MTCPA.

• Count 8: The TCPA and/or FCC rule violation in Count 4 violated the MTCPA.

• Counts 9 through 12: The four calls violated the FTC's Telemarketing Sales Rule and, therefore, also violate the MTCPA.

• Counts 13 through 16: The four calls violated the FTC regulation mandating that a telemarketer pay an annual fee for access to telephone numbers on the DNC list and, therefore, violated the MTCPA.

• Counts 17 through 20: The four calls violated the FTC regulation requiring that a telemarketer disclose the seller's identity, the call's purpose to sell goods or services, and the nature of the goods or services and, therefore, violated the MTCPA.

• Counts 21 through 24: The four calls violated the FTC regulation prohibiting a failure to transmit or cause to transmit [*8] the telephone number and, when made available by the telemarketer's carrier, the telemarketer's name to any caller identification service used by the call's recipient and, therefore, violated the MTCPA.

### III. Applicable Law

The TCPA was passed in response to numerous complaints from both consumers and businesses about telemarketing calls, *i.e.*, telephone calls to market goods and services. Pub. L. 102-243, § 2. The Act is codified in section 227, Title 47, United States Code. The TCPA "was enacted to protect consumer privacy interests" and "seeks primarily to protect subscribers from unrestricted commercial telemarketing calls." Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991, 68 Fed. Reg. 44,144, 44,150, 44,165 (July 25, 2003). Relevant to the instant case, subsection *b* prohibits unconsented-to, nonemergency calls using any automatic telephone dialing system or an artificial or prerecorded voice to certain telephone lines, including any telephone number assigned to a cellular service; subsection *c* directed the FCC to promulgate regulations aimed at establishment and operation of a national database of telephone numbers of residential subscribers who object to receiving telephone solicitations and, further, permitted the FCC to prohibit telephone solicitations [*9] to any number in the database; and subsection *d* makes it unlawful, *inter alia*, for anyone to make a telephone call using an automatic telephone dialing system that does not comply with the technical and procedural standards prescribed by the FCC.

The TCPA permits a person to institute a private action based on a violation of subsection *b* and the regulations prescribed under that subsection "to enjoin such violation [and/or] . . . to receive $500 in damages for each such violation," § 227(b)(3); as well, subsection *c* grants a right of private action to "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under [subsection *c*] . . . to enjoin such violation [and/or] . . . to receive up to $500 in damages for each such violation," § 227(c)(5). No private right of action is granted under any other subsection of § 227.

The FCC is charged with the responsibility of prescribing regulations to implement the requirements of

2016 U.S. Dist. LEXIS 118774, *9

the TCPA's various subsections and, accordingly, has promulgated regulations codified at 47 C.F.R. § 64.1200. The FCC has addressed the specific concerns expressed in subsection *b* within § 64.1200(a), and it has addressed **[*10]** those expressed in subsection *c* within § 64.1200(c). What the FCC has prescribed in § 64.1200(b) implements subsection *d* of the TCPA, which mandates regulations for technical and procedural standards for telephone calls initiated by an automatic telephone dialing system or calls using an artificial or prerecorded voice system; likewise, the requirements of § 64.1200(d) set forth the procedural standards for telemarketers to maintain their own, company-specific, do-not-call lists and, consequently, appear to fall under the aegis of subsection *d* of the TCPA.

The regulations published by the FCC as §§ 64.1600 through 64.1605, referred to in Worsham's motion for default judgment, p. 10, are mostly in furtherance of the FCC's duty to regulate services of telephone carriers, in particular, "to establish federal policies and rules governing calling number identification service (caller ID) on an interstate basis" made necessary by new telephone switching technology that "has fostered new telephone services for both business and residential use." Calling Number Identification, 56 Fed. Reg. 57,300 (Nov. 8, 1991). *See also* Calling Number Identification, 59 Fed. Reg. 18,318 (Apr. 18, 1994) (publishing final rule pertaining to Caller ID services; noting addition of new Subpart P to Part 64 of Title 47, Code of Federal Regulations). In recognition of the role played by Caller ID in helping **[*11]** consumers avoid unwanted calls, and in conjunction with other amendments to its TCPA regulations in § 64.1200 *et seq.*, the FCC specifically amended this set of regulations in 2003 by adding § 64.1601(e), which requires telemarketers to transmit caller identification information, including either calling party number ("CPN") or automatic number identification of the calling party's billing number ("ANI") and, when available by the telemarketer's carrier, the telemarketer's name; this regulation also prohibited telemarketers from blocking the transmission of caller identification information. Rules and Regulations Implementing . . . (TCPA), 68 Fed. Reg. at 44,179. However, it is not clear whether § 64.1601(e) is promulgated under either subsection *b* or subsection *c* of the TCPA. Caller ID technology does not fit neatly into the focus of either subsection, neither of which requires the use of such technology to accomplish their respective purposes. Thus, it is also not clear whether a violation of § 64.1601(e) falls within the private right of action granted by subsection *b* or subsection *c*. It seems just as likely that the FCC may have only intended to

ensure consistency between its preexisting Caller ID regulations and its revised TCPA regulations and/or the FTC's regulations pertaining to telemarketing when **[*12]** the FCC promulgated § 64.1601(e); those efforts all occurred at the same time, in 2003. Additionally, the FCC said, "Caller ID requirements will improve the ability of consumers to identify and enforce do-not-call rights against telemarketers." 68 Fed. Reg. at 44,156. Therefore, the FCC's rule in § 64.1601(e) appears to *support* consumers' enforcement efforts under the TCPA's subsection *c*, rather than to *create* a separate mechanism upon which a consumer can make an actionable claim.

The FTC has enacted its Telemarketing Sales Rule ("TSR") in Title 16, Part 310, of the Code of Federal Regulations pursuant to its responsibilities mandated in 15 U.S.C. § 6102. Telemarketing Sales Rule, 68 Fed. Reg. 4580 (Jan. 29, 2003). Worsham's complaint relies upon § 310.4(a)(8), § 310.4(b)(1)(iii)(B), § 310.4(d)(1),[2] and § 310.8(a). Section 310.4(a)(8) prohibits abusive conduct in telemarketing by the caller's "[f]ailing to transmit or cause to be transmitted the telephone number, and, when made available by the telemarketer's carrier, the name of the telemarketer, to any caller identification service in use by a recipient of a telemarketing call."[3] Section 310.4(b)(1)(iii)(B) prohibits initiation of a telemarketing call to a person when that person's telephone number is on the DNC list. Section 310.4(d)(1) prohibits a telemarketer's failure "to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call . **[*13]** . . [t]he identity of the seller." Last, § 310.8(a) prohibits any seller from initiating or causing a telemarketer to initiate a call "to any person whose telephone number is within a given area code" unless the seller, directly or indirectly, "first has paid the annual fee" for access to numbers within that area code that are included in the DNC list.

Under the MTCPA, a violation of either the Telemarketing and Consumer Fraud and Abuse Prevention Act, as implemented by the FTC's Telemarketing Sales Rule, or the TCPA, as implemented by 47 C.F.R. § 64.1200, is also considered an unfair or deceptive trade practice under Maryland statutory law. Md. Code Ann., Com. Law § 14-3202(a). However, only a violation of the TCPA that is subject to

---

[2] Incorrectly cited as § 16.310.5(d)(1) in the complaint.

[3] The Court notes the similarity between this part of the TSR and the FCC's rule in 47 C.F.R. § 64.1601(e), *see supra*.

a private right of action, *i.e.*, one arising under either 47 U.S.C. § 227(b) or (c), is actionable under the MTCPA. *Worsham v. Ehrlich*, 181 Md. App. 711, 957 A.2d 161, 171-72 (Md. Ct. Spec. App. 2008). *See also Worsham v. Accts. Receivable Mgmt., Inc.*, 497 F. App'x 274, 278 (4th Cir. 2012) (*per curiam*) (agreeing with holding in *Worsham v. Ehrlich* that violation of 47 C.F.R. § 64.1200(b) did not state claim under MTCPA).

## IV. Analysis

Preliminarily, the Court addresses the issue of vicarious liability, which seems to be the basis for Worsham's suit against Clifford Shannon, the president and registered **[*14]** agent of Defendant Travel Options. The FCC has ruled that vicarious liability for TCPA violations may exist under federal common-law principles of agency. *In re DISH Network, LLC*, 28 FCC Rcd. 6574 (2013). *See also Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 674, 193 L. Ed. 2d 571 (2016) (finding "no cause to question" FCC's ruling on vicarious liability under TCPA). However, "in the absence of special circumstances it is the corporation, not its owner or officer, who is the principal or employer, and thus subject to vicarious liability for torts committed by its employees or agents." *Meyer v. Holley*, 537 U.S. 280, 286, 123 S. Ct. 824, 154 L. Ed. 2d 753 (2003) (applying tort principle of vicarious liability to violation of Fair Housing Act). Under general rules of agency law, a corporate officer or director's personal liability "must be 'founded upon specific acts by the individual director or officer.'" *Roylance v. ALG Real Estate Servs., Inc.*, Case No. 5:14-cv-02445-PSG, 2015 U.S. Dist. LEXIS 44930, at *19 (N.D. Cal. Mar. 16, 2015) (citation omitted), *report and recommendation modified in part on other grounds and adopted as modified by* 2015 U.S. Dist. LEXIS 44933 (N.D. Cal. Apr. 3, 2015). Thus, "'courts have declined to find personal liability [when] there has been little evidence of the corporate officer's direct participation in the wrongdoing.'" *Id.* (alteration in original) (citation omitted) (declining to recommend the entry of default judgment against corporate officer under TCPA because **[*15]** of inadequate factual allegations). Worsham's complaint makes "naked assertion[s]," *see Twombly*, 550 U.S. at 557, regarding Shannon, but those conclusions, couched as factual allegations, are insufficient to nudge the complaint against Shannon "across the line from conceivable to plausible," *id.* at 570. Consequently, the Court will enter judgment for Shannon.

## A. Count 1

In § 64.1200(c), the FCC prohibited the initiation of any telephone solicitation to a residential telephone subscriber who has registered his telephone number on the national DNC registry. Further, in § 64.1200(e), the FCC applied the prohibition in § 64.1200(c) to wireless telephone numbers. As earlier noted, Worsham has alleged that his cellular telephone number has been listed on the DNC registry since 2006, well before the four calls from Travel Options in 2014. In addition, Worsham has made factual allegations regarding the content of the fourth call that clearly lead to the conclusion that the calls were made for telemarketing purposes. Those allegations are sufficient to establish Worsham's entitlement to statutory damages under the TCPA of $500 per call. *See Dores v. One Main Financial*, Civ. No. 1:15-cv-1609-LO-MSN, 2016 U.S. Dist. LEXIS 81913, at *5 (E.D. Va. June 1, 2016) (agreeing with courts holding "that each call made in contravention of the TCPA constitutes an independent **[*16]** violation entitling the plaintiff to statutory damages"), *report and recommendation adopted by* 2016 U.S. Dist. LEXIS 81348 (E.D. Va. June 21, 2016).

## B. Count 2

As it pertains to Worsham's case, the TCPA, in 47 U.S.C. § 227(b)(1)(A)(iii), prohibits any person from making "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service." Thus, the elements of this TCPA violation, as alleged in Count 2, are (1) a call (other than one made for emergency purposes or made with the called party's prior express consent), (2) using any automatic telephone dialing system, and (3) to any telephone number assigned to a cellular telephone service.

Worsham's complaint suffices as to the first and third elements; he has provided sufficient factual basis as to the four telephone calls (the first element) and as to his telephone number being assigned to a cellular telephone service (the third element). However, he has not provided "well pleaded factual allegations" as to the second element. He has, instead, made bare, conclusional allegations: the calls were made "using an automatic telephone dialing system (ATDS)" **[*17]** (Compl. ¶ 5); "Defendants used an ATDS to call

2016 U.S. Dist. LEXIS 118774, *17

Plaintiff's number, using a predictive dialer" (*id.* ¶ 6); "Defendants initiated and conspired to initiate at least 4 telephone solicitation calls using an automatic telephone dialing system (ATDS)" (*id.* ¶ 9); and Defendants' calls used an '*automatic telephone dialing system*' (ATDS) as defined by 47 U.S.C. § 227(a)(1) and 47 C.F.R. § 64.1200(f)(2)" (*id.* ¶ 29). These allegations are nothing more than "a formulaic recitation" of the second element of his cause of action in Count 2. "[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Iqbal*, 556 U.S. at 686. *See also Dominguez v. Yahoo, Inc.*, 629 F. App'x 369, 373 (3d Cir. 2015) (unpublished) (finding assertion in affidavit that merely restated TCPA's statutory definition of automatic telephone dialing system "nothing more than a legal conclusion couched as a factual assertion"); *Williams v. T-Mobile USA, Inc.*, Case No. 15-cv-03384-JSW, 2015 U.S. Dist. LEXIS 140077, at *4-5 (N.D. Cal. Oct. 14, 2015) (plaintiff's allegations as to ATDS "no more than legal conclusions couched as fact"). As a result, Worsham has failed to show an entitlement to relief in Count 2.[4]

### C. Count 3

Worsham alleges in Count 3 that the four calls violated 47 C.F.R. § 64.1200(d)(4), which requires a telemarketer "to provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted." As the Court earlier observed, § 64.1200(d)(4) is more appropriately viewed as setting procedural standards and, therefore, within the realm of the TCPA's subsection *d*, for which no private right of action exists. The Court has considered the analysis on this point in the case of *Burdge v. Assn. Health Care Mgmt., Inc.*, No. 1:10-CV-00100, 2011 U.S. Dist. LEXIS 9879, at *7-10 (S.D. Ohio Feb. 2, 2011), and has found

_____

[4] One district court ruled the kind of allegations at issue here, which were made in that case "on information and belief," to be sufficient under Rule 8(a)(2). *Jackson v. Caribbean Cruise Line, Inc.*, 88 F. Supp. 3d 129, 139-40 (E.D.N.Y. 2015). The Court **[*18]** observes that the allegations made in *Twombly* "upon information and belief," which were comparable in alleging the elements of a cause of action, were judged by the Supreme Court to be insufficient under Rule 8(a)(2). 550 U.S. at 551, 564-65. Although "upon information and belief" may still be a legitimate form of pleading, it seems clear after *Twombly* that stating mere conclusions upon information and belief does not pass muster.

it persuasive; thus, the Court concludes Worsham does not possess a private right of action as to an alleged violation of 47 C.F.R. § 64.1200(d)(4). *See also Nat'l Fed'n of the Blind v. FTC*, 303 F. Supp. 2d 707, 718 (D. Md. 2004) (noting **[*19]** § 64.1200(d)(4) included in TCPA rules by FCC to ensure that commercial entities, including those outside FTC's jurisdiction, are similarly regulated as to provisions included in FTC's Telemarketing Sales Rule), *aff'd*, 420 F.3d 331 (4th Cir. 2005). *But see Charvat v. NMP, LLC*, 656 F.3d 440, 448 (6th Cir. 2011) (indicating, without analysis, that TCPA's subsection *c* was implemented in 47 C.F.R. § 64.1200(d)); *Drew v. Lexington Consumer Advocacy, LLC*, Case No. 16-cv-00200-LB, 2016 U.S. Dist. LEXIS 52385, at *16 (N.D. Cal. Apr. 18, 2016) (same). Consequently, Count 3 fails to state a claim for relief.

### D. Count 4

Worsham's next count asserts a violation of the TCPA by a violation of 47 C.F.R. § 64.1601(e)(1), based on a failure to transmit certain information via Caller ID. He additionally says the conduct of Travel Options violates the FTC's similar provision at 16 C.F.R. § 310.4(a)(7). A violation of the latter provision, of course, would not be considered a violation of the TCPA. Any cognizable violation of § 310.4(a)(7) would only be remediable, in this case, under the MTCPA; Worsham has made no claim under federal law on this point. The MTCPA counts are pled later in the complaint.

As previously concluded, an asserted violation of 47 C.F.R. § 64.1601(e)(1) is not properly brought under either the TCPA's subsection *b* or subsection *c*. Any violation of § 64.1601(e)(1) is a violation of technical and procedural standards under subsection *d*, and as earlier noted, no private **[*20]** right of action exists under the latter subsection of the TCPA. Count 4, consequently, fails to state a claim for relief.

### E. Count 5

In the next count, Worsham claims the violation of the TCPA in Count 1 is also a violation of the MTCPA. The conduct at issue, making four calls to a telephone number on the DNC list, constitutes four, separate violations of the TCPA's subsection *b* and, therefore, constitutes four, separate violations of the MTCPA. As a result, Worsham has established his entitlement to $500 per call in statutory damages. Md. Code Ann., Com. L. § 14-3202(b)(2)(i), (c).

### F. Count 6

In this count, Worsham seeks MTCPA damages based on the violation of 47 U.S.C. § 227(b)(1)(A)(iii), as asserted in Count 1, for using an automatic telephone dialing system to make the four calls. Having previously found that Worsham has failed to provide well-pleaded allegations of fact in support of Count 1, the Court concludes Count 6 fails to state a claim for relief.

### G. Count 7

Next, Worsham seeks statutory MTCPA damages for the conduct on which Count 3 was based, that is, a violation of 47 C.F.R. § 64.1200(d)(4). The Court previously determined that Count 3 failed to state a claim for relief. For the same reason, Count 7 fails to state a claim for relief.

### H. Count 8

This **[*21]** count under the MTCPA is premised upon the conduct alleged in Count 4 to have been in violation of 47 C.F.R. § 64.1601(e)(1). Because Count 4 was found deficient for the reason that a violation of that regulation may not be asserted in a private right of action, Count 8 is similarly deficient. An additional reason for denying relief on this count is that § 64.1601(e) is in Subpart P of Part 64, and the MTCPA only permits statutory damages for actions claiming violations of Subpart L of Part 64. Md. Code Ann., Com. L. § 14-3201(2).

### I. Count 9 through Count 12

Worsham has pleaded each of the four calls in separate counts as violations of the FTC's TSR rule prohibiting initiation of a telephone call to a person whose telephone number is on the DNC registry. He seeks statutory damages under the MTCPA for each call. His complaint adequately sets forth a claim for relief in these four counts, and Worsham will be awarded $500 per count.

### J. Count 13 through Count 16

These four counts, seeking damages under the MTCPA, are based upon each of the four calls allegedly violating 16 C.F.R. § 310.8(a), prohibiting a telemarketing call to anyone within a given area code unless the seller has first paid the annual fee for access to the DNC list for that area code. Worsham's **[*22]** allegation that Travel Options did not pay the required annual fee is a bald conclusion with no supporting, well-pleaded factual allegations. Counts 13 through 16 fail to state a claim for relief.

### K. Count 17 through Count 20

Each of these four counts asking for MTCPA statutory damages is premised upon an alleged failure to comply with 16 C.F.R. § 310.4(d)(1), which requires a telemarketer to "disclose truthfully, promptly, and in a clear and conspicuous manner" to the called party three things: the seller's identity; that the call's purpose is to sell goods or services; and the nature of the goods or services. Worsham asserts that each of the four calls violated this regulation—the first three because the caller left no message at all (the Court presumes these calls went to an answering machine or to voicemail) and the fourth for reasons Worsham does not adequately allege. With regard to the first three calls, the FTC has stated that "telemarketers are not required to leave a recorded message on the answering machines of consumers who are not home to answer the telemarketer's call." Telemarketing Sales Rule, 68 Fed. Reg. at 4645. *See also* Rules and Regulations Implementing . . . (TCPA), 68 Fed. Reg. at 44,164 (FCC stating, "Calls that reach voicemail or an answering machine will not be considered 'answered' by the called **[*23]** party."). With that guidance from the relevant agencies, the Court concludes that the caller was not required to leave any message on Worsham's answering machine or voicemail for the first three calls and, therefore, not in violation of § 310.4(d)(1). As to the fourth call, Worsham alleged the caller identified himself as Jim Allison with Travel Options and then tried to sell a travel package to Worsham. The caller thus complied with § 310.4(d)(1). Worsham has failed to show he is entitled to relief in Counts 17 through 20.

### L. Count 21 through Count 24

Worsham's last four counts, also brought under the MTCPA, allege the four calls violated 16 C.F.R. § 310.4(a)(8) by failing to transmit to Worsham's Caller ID the caller's telephone number "and, when made available by the telemarketer's carrier, the name of the telemarketer." Certainly, Worsham has brought this case because his Caller ID *did* capture the caller's

number on each of the four calls; so, the asserted violation based on a failure to transmit the caller's number clearly fails. As to the telemarketer's name, "when made available by the telemarketer's carrier," Worsham has made another bald allegation that the carrier for Travel Options made the caller's name available for Caller **[\*24]** ID. Having failed to support Counts 21 through 24 with well-pleaded facts, Worsham's complaint fails to support his claimed entitlement to relief in those counts.

### *M. Injunctive Relief*

In his complaint's prayer for relief, Worsham requests "an injunction prohibiting the Defendants or any person under their control from calling or assisting with calling any persons in Maryland in violation of the TCPA or FCC regulations." Both subsections *b* and *c* of the TCPA permit the award of injunctive relief "to enjoin such violation" of either subsection *b* or the regulations prescribed under subsection *b* or the regulations prescribed under subsection *c*. Because the authority for awarding injunctive relief in this case is statutory rather than common law, Worsham "need not plead and prove irreparable injury." *Envtl. Def. Fund, Inc. v. Lamphier*, 714 F.2d 331, 338 (4th Cir. 1983) (applying general rule to violations of 42 U.S.C. § 6901 *et seq.*).

The only "such violation[s]" of the TCPA established by Worsham's complaint are those pertaining to the four calls made to Worsham's number on the DNC list. So, injunctive relief will be awarded against Travel Options to bar any future violations of 47 C.F.R. § 64.1200(c) by it or anyone acting at its behest as to Worsham's numbers on the DNC list. Worsham's request for injunctive relief **[\*25]** is aimed at calls by Travel Options to "any persons in Maryland." He has not, however, established an entitlement to serve in a representative capacity for "any persons in Maryland." Thus, the award will only be in regard to telephone numbers placed on the DNC list by Worsham.

### *V. Conclusion*

Worsham has established his entitlement to $6,000 in statutory damages, broken down as follows: $2,000 ($500 x 4 calls) for Count 1; $2,000 ($500 x 4 calls) for Count 5; and $2,000 ($500 per count) for Counts 9 through 12. A separate order will be entered awarding damages and injunctive relief and closing the case.

DATED this 1st day of September, 2016.

BY THE COURT:

/s/ James K. Bredar

United States District Judge

### <u>ORDER</u>

In accordance with the foregoing memorandum, IT IS HEREBY ORDERED:

    1. Plaintiff's motion for default judgment (ECF Nos. 18, 19) will be GRANTED IN PART AND DENIED IN PART.

    2. Judgment IS ENTERED for Defendant Clifford Shannon and against Plaintiff.

    3. Judgment IS ENTERED for Plaintiff and against Defendant Travel Options, Inc., as follows:

        a. Defendant Travel Options, Inc., is liable to Plaintiff for statutory damages in the amount of $6,000.

        b. Defendant Travel Options, Inc., or anyone acting **[\*26]** on behalf of it, is permanently enjoined and restrained from directly or indirectly engaging in the following act: initiating any telephone solicitation to any number placed by Plaintiff on the federal do-not-call registry.

    4. The Clerk SHALL CLOSE this case.

DATED this 1st day of September, 2016.

BY THE COURT:

/s/ James K. Bredar

United States District Judge

---

*End of Document*