FILED USDC - CLRK DET
2019 DEC 10 PM2:05

51

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**MARK W. DOBRONSKI**,

       Plaintiff,

vs.

**SUNPATH LTD.,**
**ANDREW M. GARCIA**,
and **JOSEPH A. ABRAHAM,**

       Defendants.

Case No.: **19-cv-13094**

Honorable Marianne O. Battani
Magistrate Judge Elizabeth A. Stafford

--------------------------------------------------------------------

## PLAINTIFF'S RESPONSE
## IN OPPOSITION TO
## <u>DEFENDANTS' MOTION TO DISMISS</u>

Plaintiff, MARK W. DOBRONSKI, appearing *in propria persona*, hereby responds in opposition to Defendants' Motion to Dismiss, as follows:

### <u>Statement of Issues Presented</u>

In the Complaint, Plaintiff alleges that he received over a dozen telephone calls to his cellular telephone made by Defendants in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. 227, *et seq.*, and the Michigan Telephone Companies as Common Carriers Act ("MTCCCA"), M.C.L. § 484.101, *et seq.*

Defendants, in their motion to dismiss, posit two questions before this Court:

1.  Whether this Court "lacks personal jurisdiction

over each defendant in this case, all of whom reside in Massachusetts and have no involvement in the alleged unlawful telephone calls" that caused multiple violations of the TCPA within the State of Michigan; or,

      2. In the alternative, "if this Court finds that there is personal jurisdiction over any of the defendants, should Counts II, III, and IV[1] be dismissed for failure to state a claim" upon which relief may be granted.

Plaintiff asserts that this Court has personal jurisdiction over all of the Defendants as the Defendants formulated, directed, implemented, and ratified an illegal telemarketing scheme wherein the tortious and illegal telephone calls were received by Plaintiff in this District.

As will be shown in Plaintiff's brief, attached, in order to support their motion, the individual defendants have included declarations each averring that this Court does not have personal jurisdiction over any of the Defendants because Sunpath does not conduct business in Michigan. Yet, in another case in this District involving the identical Defendants, the same individual defendants supplied declarations avering that "I am aware that SunPath LTD. conducts business in the State of Michigan." These conflicting declarations call into question the credibility of the individual

---

    [1]    Plaintiff makes note that Defendants' motion appears to be contradictory in the relief being sought. Defendants brief the issue as to whether Count III – which relates to violation of 47 C.F.R. § 64.1601(e) – should be dismissed. However, in the conclusion, Defendants urge that Counts II, III, and IV should be dismissed. Given that Defendants have only briefed their argument as to Count III, Plaintiff can only respond as to Count III.

defendants, and also preclude grant of Defendants' motion at this stage of the case.

Further, Plaintiff asserts that Count III is a valid claim upon which relief may be granted as the TCPA statute expressly provides for a private right of action stemming from violations of the TCPA implementing regulations, of which 47 U.S.C. §64.1601(e) is one.

For the reasons set forth herein and in Plaintiff's accompanying brief, Defendants' Motion to Dismiss should be DENIED.

Respectfully submitted,

Dated: December 10, 2019

Mark W. Dobronski
Plaintiff *In Propria Persona*

Mark W. Dobronski
Post Office Box 85547
Westland, Michigan 48185-0547
Telephone: (734) 641-2300
Email: MarkDobronski@yahoo.com

## **CONTROLLING OR MOST APPROPRIATE AUTHORITIES**

*Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212 (6th Cir. 1989)

*Theunissen v. Matthews*, 935 F.2d 1454 (6th Cir. 1991)

*CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996)

*Calphalon Corp. v. Rowlette*, 228 F.3d 718 (6th Cir. 2000)

## **PLAINTIFF'S BRIEF**

### **Procedural Background**

On September 24, 2019, Plaintiff commenced this lawsuit in the 22nd Judicial Circuit Court, State of Michigan, alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq* ("TCPA"), and the Michigan Telephone Companies as Common Carriers Act, MCL 484.101, *et seq* ("MTCCCA") against defendants Sunpath Ltd ("Sunpath"), Andrew M. Garcia ("Garcia"), and Joseph A. Abraham ("Abraham") (collectively, "Defendants").

On October 22, 2019, Defendants removed this action from the state court to the United States District Court for the Eastern District of Michigan.

On October 29, 2019, Defendants filed Defendants' Motion to Dismiss moving the Court to dismiss this case in its entirety for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) or, in the alternative, to dismiss Count III in the Complaint for failing to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6).

### **Argument**

**A.     Lack of Personal Jurisdiction - Rule 12(b)(2).**

The case law establishes a settled procedural scheme to guide trial courts in the exercise of its discretion when considering a Rule 12(b)(2) motion. The 6th Circuit,

1

in *Air Prod. & Controls, Inc. v. Safetech International, Inc.*, 503 F.3d 544, 549 (6th

Cir. 2007) opined:

> "In the context of a Rule 12(b)(2) motion, a plaintiff bears
> the burden of establishing the existence of jurisdiction.
> *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212,
> 1214 (6th Cir.1989). Where. . . the district court relies
> solely on written submissions and affidavits to resolve a
> Rule 12(b)(2) motion, rather than resolving the motion
> after either an evidentiary hearing or limited discovery, the
> burden on the plaintiff is "relatively slight," *Am. Greetings
> Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir.1988), and
> "the plaintiff must make only a prima facie showing that
> personal jurisdiction exists in order to defeat dismissal,"
> *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th
> Cir.1991). In that instance, the pleadings and affidavits
> submitted must be viewed in a light most favorable to the
> plaintiff, and the district court should not weigh "the
> controverting assertions of the party seeking dismissal." *Id.*
> at 1459."

*Air Prod. & Controls, Inc.*, 503 F.3d at 549.

The 6th Circuit, in *Theunissen* went further to state:

> "The court's treatment of a motion under Rule 12(b)(2)
> mirrors in some respects the procedural treatment given to
> a motion for summary judgment under Rule 56.  For
> example, the pleadings and affidavits submitted on a
> 12(b)(2) motion are received in a light most favorable to
> the plaintiff. *Serras*, 875 F.2d at 1214; *Welsh*, 631 F.2d at
> 439. In sharp contrast to summary judgment procedure,
> however, the court disposing of a 12(b)(2) motion does not
> weigh the controverting assertions of the party seeking
> dismissal.  *Serras*, 875 F.2d at 1214; accord *Marine
> Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2nd
> Cir.1981).  We adopted this rule in *Serras* in order to
> prevent non-resident defendants from regularly avoiding

2

> personal jurisdiction simply by filing an affidavit denying
> all jurisdictional facts, as the Appellee has done in the case
> before us.   *Id.*; accord *Data Disc, Inc. v. Systems
> Technology Associates, Inc.*, 557 F.2d 1280, 1285 (9th
> Cir.1977).   In *Serras*, we stated that the defendant who
> alleges facts to defeat jurisdiction has recourse to the
> court's discretionary authority to hold an evidentiary
> hearing if he disputes the plaintiff's factual assertions.
> *Serras*, 875 F.2d at 1214." [Emphasis as in original.]

*Theunissen*, 875 F.2d at 1459.

"[A] court may take judicial notice of its own records in other cases, as well as

the records of an inferior court in other cases," *United States v. Wilson*, 631 F.2d

118, 119 (9th Cir. 1980) (citing 9 Wright and Miller, Federal Practice and Procedure

s 2410, at 359–61 (1971); *Kasey v. Molybdenum Corp. of America*, 336 F.2d 560 (9th

Cir. 1964).

Significantly, the Defendants have been previously haled into the federal

District Courts across the United States on no less than a dozen occasions, and untold

numbers of times in state courts, stemming from Sunpath's unlawful telemarketing

calls made in violation of the TCPA.   Following is a partial list of cases in the federal

courts:

| | | |
|---|---|---|
| Canfield v. Sunpath, *et al.* | S.D. Cal. | 3:2019-cv-01025 |
| Born v. Sunpath, *et al.* | S.D. Cal. | 8:2019-cv-01950 |
| Smith v. Sunpath, *et al.* | Neb. | 8:2019-cv-00178 |
| Fabrikant v. Sunpath, *et al.* | Neb. | 9:2019-cv-00383 |
| Keskitalo v. Sunpath, *et al.* | E.D. Mich. | 2:2017-cv-11761 |
| Massey v. Sunpath, *et al.* | N.D. Ill. | 1:2019-cv-07056 |
| Clough v. Sunpath, *et al.* | Mass. | 1:2017-cv-11158 |
| Heaton v. Sunpath, *et al.* | Mass. | 4:2017-cv-40169 |

3

Jackson v. Sunpath, *et al.*     Mass.     1:2019-cv-10556
Hartzel v. Sunpath, *et al.*     W.D.  N.Y.  1:2016-cv-00738
Cunningham v. Sunpath, *et al.*  E.D.  Tex.  4:2019-cv-00812

Given the number of times that Defendants have been haled into federal and state courts regarding their illegal telemarketing campaigns, each of the Defendants is and has clearly been on notice that their conduct is in violation of, *inter alia*, the TCPA.  Yet, notwithstanding that each of the Defendants was well aware of these violations, the Defendants continued with their illegal telemarketing campaigns without abandon.  Compl., ¶ 39.  Even if Defendants want to lay blame on a third-party agent, Defendants still formulated, directed, implemented, and ratified the telemarketing scheme.  Not only did the individual defendants have personal control over the marketing activities of the defendant corporation, they also had the ability to cease the telemarketing activity.  Compl., ¶ 30.  Despite being aware of the numerous lawsuits resultant from Defendants' illegal telemarketing activities, the Defendants apparently did nothing to stop those illegal activities and continued to reap the profits from same.  Compl., ¶ 32.

As seen from the above list, this is also not the first time that all three of the Defendants have been haled into the Eastern District of Michigan for violations of the TCPA.  See, *e.g., Keskitalo v. Sunpath Ltd., et al.,* Civil. No. 17-cv-11761 (E.D. Mich. Nov. 13, 2017) (Friedman, B.).  The Defendants in the course of the *Keskitalo* case made a similar Rule 12(b)(2) motion to dismiss alleging lack of personal

jurisdiction.   In that case, Judge Friedman found that the Court had personal jurisdiction over all three Defendants.  And, so too, should this Court in this case.

## I.  The Court may properly exercise personal jurisdiction over the Defendants for violations of the TCPA.

The Court may exercise limited personal jurisdiction over an individual if that person transacts any business within the state, does or causes an act to be done, or consequences to occur here. *SFS Check, LLC v. First Bank of Delaware*, 990 F.Supp.2d 762, 771 (E.D. Mich. 2013)(Berg, T.).  Where an out-of-state agent is actively and personally involved in the conduct giving rise to the claim, the Court may exercise personal jurisdiction when traditional notions of fair play and substantial justice so dictate. *Flagstar Bank, FSB v. Centerpointe Financial, Inc.*, No. 2-10-CV-14234, 2011 WL 2111984, *3 (E.D. Mich.2011)(Borman, P).  For the reasons that follow, the Court should find the pleadings in the Complaint satisfy this standard.

In *Serras*, the court had concern with preventing non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts. *Serras*, 875 F.2d at 1214.  And, that concern is clearly justified in this case as the Defendants, in their instant motion, cleverly tap dance around whether or not they conduct business in Michigan as they attempt to avoid personal jurisdiction.  This Court should take judicial notice of declarations made by the

5

individual defendants in another matter wherein the Defendants <u>admit</u> that "SunPath Ltd. conducts business in the State of Michigan." Defendants Garcia and Abraham, in the *Keskitalo* case, filed declarations with the court each averring that Sunpath conducts business in Michigan. See Exhibit A, attached hereto, Declaration of Andrew Garcia, at paragraph 11 ("I am aware that SunPath Ltd. conducts business in the State of Michigan"); See Exhibit B, attached hereto, Declaration of Joseph Abraham ("I am aware that SunPath Ltd. conducts business in the State of Michigan").

Michigan's long-arm statute provides for jurisdiction over an individual who transacts *any* business within the state. M.C.L. § 600.705(1). This Court has given plain meaning to this provision, noting "the Michigan Supreme Court has held that the word 'any' in M.C.L. § 600.705(1) 'means just want is says'; it includes each and every act in this state, and is satisfied by even 'the slightest act of business in Michigan'" *Alisoglu v. Central States Thermal King of Oklahoma, Inc.*, No. 12-CV-10230, 2012 WL 1666426, *4 (E.D. Mich. 2012)(Rosen, G). See also, *Lanier v. American Board of Endodontics*, 843 F.2d 901, 909-09 (6th Cir. 1988).

Case law is legion that the placement of telephone calls constitutes transaction of business in Michigan within the meaning of Michigan's long-arm statute. *Alisoglu v. Central States Thermal King of Oklahoma, Inc.*, No. 12-CV-10230, 2012 WL 1666426, *4 (E.D. Mich. 2012)(Rosen, G) (defendant transacted business in

Michigan when its employee(s) communicated with Plaintiffs through e-mail and telephone calls); *Neogen Corp. v. New Gen Screening*, 282 F.3d 883, 888 (6th Cir. 2002) (defendant transacted business in Michigan through mail and web-based contact); *Lanier v. American Board of Endodontics*, 843 F.2d 901, 908 (6th Cir. 1988) (Illinois defendant "transacted business" in Michigan through mail and telephone contacts with Michigan residents); *Dedvukaj v. Maloney*, 447 F.Supp.2d 813 (E.D. Mich. 2006)(Rosen, G) (requirements of § 600.705(1) satisfied where defendant communication with Michigan plaintiff through email and phone).

Additionally, the statute also allows courts to exercise jurisdiction over any person who commits a tort within the state. M.C.L. § 600.705(2). For purposes of this provision, a "tort" in the broad sense is the breach of a noncontractual legal duty owed the plaintiff. *Overby v. Johnson*, 418 F.Supp. 471, 473 (E.D. Mich. 1976). "Torts" include statutory violations such as the Clayton Act and the Civil Rights Act. *Id.*; *Green v. Wilson*, 211 Mich.App. 140, 144 (1995); *appeal granted* 453 Mich. 901; *affirmed* 455 Mich. 342; *Black v. Rasile*, 113 Mich.App. 601, 603 (1980). The TCPA is a strict liability statute. *Harris v. World Financial Network Nat. Bank*, 867 F. Supp. 2d 888, 894 (S. D. Mich. 2012).

Here, Plaintiff have alleged sufficient facts to support the assertion of the long-arm statute at this stage, alleging that Defendants engaged in initiating telemarketing calls using an automated telephone dialing system ("ATDS") to Plaintiff's cellular

7

telephone for the purpose of hawking Defendants' auto warranty products. Compl.

¶¶ 41-45.  For purposes of their business practices, placing calls constitutes the

conducting of "business" for purposes of M.C.L. § 601.705(1); *Alisoglu, supra.*  The

complaint alleges that the individual defendants, Garcia and Abraham, authorized and

directed these activities as part of the transaction of business of Sunpath. Compl.¶¶

30-32. Accordingly, the individual defendants purposely transacted "business" in the

State of Michigan.

The Defendants have very cleverly failed to disclose in their instant motion the

fact that Sunpath is certificated for authority to transact business or conduct affairs

in Michigan as a foreign corporation. See Exhibit C.  Not only is Sunpath certificated

for authority to transact business in Michigan, Sunpath has a registered office located

in Michigan.

Pursuant to M.C.L. § 450.2002(1):

> "A foreign corporation that receives a certificate of
> authority under this act. . . has the same rights and
> privileges as a domestic corporation organized for the
> purposes set forth in the application pursuant to which the
> certificate of authority is issued. Except as otherwise
> provided in this act, the corporation is subject to the same
> <u>duties, restrictions, penalties, and liabilities</u> of a similar
> domestic corporation."  [Emphasis added.]

M.C.L. 450.1261(b) provides:

> "A corporation, subject to any limitation provided in this
> act, in any other statute of this state, or in its articles of
> incorporation, shall have power in furtherance of its

8

corporate purposes to do all of the following: . . .

(b) Sue and be sued in all courts and participate in actions and proceedings, judicial, administrative, arbitrative, or otherwise, in the same manner as natural persons."

At the time that Sunpath applied for a certificate of authority to transact business or conduct affairs in Michigan, Sunpath voluntarily submitted to the jurisdiction of and consented to "be sued in all courts and participate in actions and proceedings, judicial, administrative, arbitrative, or otherwise, in the same manner as natural persons." A foreign corporation, authorized to do business in this state, may sue and be sued same as domestic corporations. *H. Williamson, Limited v. Phinney Walker Co.*, 247 Mich. 645, 226 N.W. 672 (1929). In becoming domesticated by complying with the statute regulating the transaction of business in this state by foreign corporations, it has acquired a local existence for business and jurisdictional purposes, and may sue and be sued the same as domestic corporations or natural persons. *Republic Motor Truck Co. v. Buda Co.*, 212 Mich. 55, 179 N.W. 474 (1920). Under statute providing for designation of an agent of foreign corporation for service of process in any action in state, designation of agent constituted consent on part of corporation to be sued in courts of state upon causes of action arising in state and consent to be sued goes to the jurisdiction of the person, rather than jurisdiction of the subject matter. *Renfroe v. Nichols Wire & Aluminum Co.*, 348 Mich. 425, 432, 83 N.W.2d 590 (1957).

9

This court should not overlook the contradictory declarations given in the *Keskitalo* case and this case by the individual defendants, Garcia and Abraham. This is precisely the type of misconduct – a non-resident defendant attempting to avoid personal jurisdiction simply by filing an affidavit denying all jurisdictional facts – that the 6th Circuit was concerned about in the *Serras* case. It is axiomatic that one or the other must be false, as logically they both cannot be true. Court disposing of motion to dismiss for lack of personal jurisdiction does not weigh controverting assertions of party seeking dismissal, because court wants to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing affidavit denying all jurisdictional facts; dismissal on pleadings is proper only if all specific facts which plaintiff alleges collectively fail to state prima facie case for jurisdiction. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1996). In the absence of an evidentiary hearing, the court must view the pleadings and affidavits in the light most favorable to plaintiff and not consider the controverting assertions of defendant. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000) citing *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir.1998). Plaintiff must make only a prima facie showing of personal jurisdiction in order to defeat dismissal. See *id.*

Because the corporate defendant and the individual defendants are alleged to have engaged in "business" and committed "torts" within the State of Michigan, this court may assert personal jurisdiction over them. For these reasons, the Court should

deny the motion.

### ii.   The Defendants' alleged conduct in committing violations of the TCPA satisfy constitutional requirements.

The ability to exercise personal jurisdiction arises when the defendant has "minimum contacts" with the forum state so as to not "offend traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316. The Supreme Court reiterated the importance of "affiliation between the forum and the underlying controversy, principal, [an] activity or an occurrence that takes place in the forum state." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S.Ct. 1773, 1780, 198 L.Ed.2d 395 (2017). "'Specific' or 'case-linked' jurisdiction depends on an affiliation between the forum and the underlying controversy." *Walden v. Fiore*, 134 S.Ct. 1115, 1122 n.6 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011)). Neither the *Bristol* case nor the *Walden* case stand for the proposition that individuals that commit violations in one state can simply retreat to their state. It is not a necessary condition for personal jurisdiction that the defendants be physically present within the jurisdiction. *Knight Capital Partners Corp. v. Henkel AG & Company, KGAA*, 257 F.Supp.3d 853, 862 (E.D. Mich. 2017)(Lawson, D).

Defendants correctly identify the three-part test and its requirements that: (1)

the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities there; and, (3) the acts of the defendant of consequences cause by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000) (quoting *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

Within the context of TCPA cases, the same argument being raised by Defendants has been rejected numerous times.  Sending a message into the forum state in violation of the TCPA is sufficient to confer personal jurisdiction over the defendant. *Mais v. Gulf Coast Collection Bureau, Inc.*, 2013 WL 1283885 (S.D. Fla. 2013). *See, e.g., Payton v. Kale Realty, LLC*, 2014 WL 4214917, *4 (N.D. Ill. 2014); *Luna v. Shac. LLC*, 2014 WL 3421514, at *4 (N.D. Cal. 2014); *Baker v. Caribbean Cruise Line, Inc.*, 2014 WL 880634, at *2 (D. Ariz. 2014); *Hudak v. Berkley Group, Inc.* 2014 WL 345676, at ** 2-3 (D. Conn. 2014); *Heidorn v. BDD Mktg. & Mgmt. Co., LLC*, 2013 WL 6571629 (N.D. Cal. Aug 19. 2013), report and recommendation adopted, 13-CV-00229-YGR, 2013 WL 6571168 (N.,D. Cal. Oct, 9, 2013).

Despite there being no dearth of cases permitting the exercise of long-arm jurisdiction, the Defendants argue that the Court may not exercise that jurisdiction here.  Defendants' motion must be denied.

### iii. The individual defendants have purposefully availed themselves of this forum and caused a violation in Michigan.

To purposefully avail oneself, "a defendant need not be physically present or have physical contacts with the form, as long as its efforts are 'purposefully directed' toward forum residents." *Burger King Corp. v. Rudzewicz*, 471 U.S. at 472. A single contact with a forum state may confer personal jurisdiction if It is directly and substantially related to the plaintiff's claim. *Vanderberg & Sons Furniture*, 2013 WL 504168, * 4 (W.D. Mich. 2013). Sending fraudulent communications into a forum state constitutes purposeful availment. *Neal v. Janssen*, 2760 F.3d 328, 332 (6th Cir. 2001). The acts of making phone calls and sending facsimiles into the forum, standing alone, may be sufficient to confer jurisdiction on the foreign defendant where the phone calls and faxes form the bases for the action. *Id.*

In this case, Plaintiff alleges that the individual defendants are officers and/or directors of Sunpath, and orchestrated directed, and participated in the tortious or illegal conduct complained of. Comp. ¶¶ 4-5 Further, that the individual defendants had personal control of the marketing activities of Sunpath, including the ability to cease the telemarketing activity. Comp. ¶ 30. Additionally, Plaintiff alleges that the individual defendants were actively and personally involved in the conduct giving rise to this claim, including formulating, directing, implementing and ratifying the telemarketing scheme. Comp. ¶ 31. Last, but not least, the individual defendants

13

profited from the illegal telemarketing activities in which defendants were engaged. Comp. ¶ 32. The personal liability provisions of the TCPA render this conduct a statutory violation and render them personally responsible for this conduct. In that capacity, the Defendants are responsible for having directed numerous calls to the State of Michigan to Plaintiff. As alleged, the purpose of these calls was to sell auto warranty products administered by Defendants. As such, the Defendants have purposefully availed themselves of the benefits of the state of Michigan to do their telemarketing, and violated the TCPA in the process. Implicitly, the Defendants have purposefully availed themselves and caused a consequence in Michigan in violation of the TCPA.

### iv. The claims against the individual defendants arise from their activities as officers and/or directors of Sunpath.

Next, a plaintiff must show that his claims "arise from" the defendants contact with the forum state. *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002). This factor requires only "that the cause of action, of whatever type, have a substantial connection with the defendant's in-state activities. *Id.*

In this case, the jurisdictional connection is that the individual defendants directed the Sunpath autodialers and telemarketers to initiate calls to Plaintiff, here in Michigan. The initiation of these calls constitutes the alleged violation of the TCPA. As such, the activities in causing these calls relates directly to the nature of

the claims, and Plaintiff's complaint satisfies the second prong of the test.

> **v.    It is reasonable for this Court to exercise personal jurisdiction over these individual defendants.**

The final due process equipment for recognizing personal jurisdiction is that the exercise of jurisdiction is reasonable. *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002). When the first two requirements are met, as is the case here, an inference arises that personal jurisdiction in the forum would be reasonable. *Id.* Only unusual cases will overcome the inference of reasonableness. *Air Products and Controls, Inc. v. Safetech International, Inc.*, 503 F.3d 544, 554 (6th Cir. 2007) (quoting *Theunissen v. Matthews*, 935 F.2d 1454, 1461 (6th Cir. 1991)).

Here, exercising personal jurisdiction over the individual defendants would not offend traditional notions of fair play and substantial justice as they contend. The individual defendants transacted business in Michigan by directly participating in the authorization to place telemarketing calls to consumers within the State, and they availed themselves of the form by directly authorizing and allowing such calls.  In the *Keskitalo* case, both of the individual defendants have admitted that Sunpath conducts business in Michigan. The present cause of action arises directly from such contact. Each of the individual defendants in their respective declarations made in the *Keskitalo* case concede that Sunpath conducts business in Michigan and their awareness of that fact, but each decry any belief, expectation, or contemplation that

15

they would not be personally haled into court in the State of Michigan.  But, but by purposefully directing Sunpath's telemarketing activities at residents of Michigan, the individual defendants and Sunpath each have conducted activities to reasonably anticipate being haled into this Court.

While it may be true that the individual defendants did not, each themselves, pick up a telephone and personally dial a number to place the calls in question, that conduct is not at issue in this case.  Rather, the allegations of the complaint allege that the individual defendants direct actions and decisions are what authorized the autodialer and telemarketers to make such calls.  Therefore, when Plaintiff alleges that Sunpath placed calls to Plaintiff in violation of the TCPA, such calls could not have been made but for the actions and decisions made by the individual defendants. The individual defendants are no less responsible than any other individual who directs that a tort be committed on their behalf across state lines.

Under these circumstances, the exercise of personal jurisdiction over the individual defendants in this case supports the Court finding the exercise of personal jurisdiction is appropriate.  For these reasons, the Court should deny the motion.

**B.     Count III states a valid claim for relief- Rule 12(b)(6).**

Plaintiff makes note that Defendants' motion seems to be contradictory in the relief being sought.  Defendants brief the issue as to whether Count III – which relates to 47 C.F.R. § 64.1601(e) – should be dismissed.  However, in the conclusion,

Defendants urge that Counts II, III, and IV should be dismissed.  Given that Defendants have only briefed their argument as to Count III, Plaintiff can only respond as to Count III.

A motion to dismiss under Fed. R. Civ. Pro. 12(b)(6) requires the Court to construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief. *Meador v. Cabinet for Human Resources*, 902 F.2d 474, 475 (6th Cir.1990), cert. denied, 498 U.S. 867, 111 S.Ct. 182, 112 L.Ed.2d 145 (1990).

In Count III of the Complaint, Plaintiff alleges that Defendants violated 47 C.F.R. § 64.1601(e) by "spoofing" the caller identification number that was transmitted with the Subject Calls.  Compl. ¶ 53.

Contrary to Defendants' *unsubstantiated* assertion that 47 C.F.R. § 64.1601(e) was implemented pursuant to subsection d of the TCPA [47 U.S.C. § 227(d)], the subject regulation was implemented pursuant to subsection b of the TCPA [47 U.S.C. § 227(b)].  Defendants *admit* that subsection b of the TCPA provides for a private right of action.  See Def. Motion, p. 12.

Subsection b of the TCPA [47 U.S.C. § 227(b)] promulgates as follows:

(b) Restrictions on use of automated telephone equipment

(1) Prohibitions.  It shall be unlawful for any person within the United States, or any person outside the United

17

States if the recipient is within the United States—

(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—

* * *

(iii) to any telephone number assigned to a paging service, <u>cellular telephone service</u>, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States;

* * *

(2) Regulations; exemptions and other provisions.  <u>The Commission shall prescribe regulations to implement the requirements of this subsection.</u>  In implementing the requirements of this subsection, the Commission—

(A) shall consider prescribing regulations to allow businesses to avoid receiving calls made using an artificial or prerecorded voice to which they have not given their prior express consent;

(B) may, by rule or order, exempt from the requirements of paragraph (1)(B) of this subsection, subject to such conditions as the Commission may prescribe—

(I) calls that are not made for a commercial purpose; and

(ii) such classes or categories of calls made for commercial purposes as the Commission determines—

(I) will not adversely affect the privacy rights that this section is intended to protect; and

(II) do not include the transmission of any unsolicited advertisement;

* * *

(3) Private right of action.   A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—

(A) an action based on a violation of this subsection or the <u>regulations prescribed under this subsection</u> to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

(C) both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph." [Emphasis added.]

It is significant to note that Congress has expressly delegated authority and directed the Federal Communications Commission to "prescribe regulations to implement the requirements of this subsection." 47 U.S.C. § 227(b)(2). Further, the Congress also expressly provided for a private right of action based on a violation of this subsection "or the regulations prescribed under this subsection". 47 U.S.C. § 227(b)(3)(A). The quote phrases appear in the statute and are not mere surplusage that can be disregarded. Under accepted canons of statutory interpretation, we must

19

interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous. *Keeley v. Whitaker*, 910 F.3d 878, 884 (6th Cir. 2018).

The Commission followed through on the mandates made by Congress and initiated a rulemaking resultant from which the Commission prescribed regulations. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003). One result of the rulemaking was a new TCPA implementing regulation requiring mandatory caller identification, codified at 47 C.F.R. § 64.1601(e), as follows:

> "Any person or entity that engages in telemarketing, as defined in section 64.1200(f)(10) must transmit caller identification information.
>
> (1) For purposes of this paragraph, caller identification information must include either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer. It shall not be a violation of this paragraph to substitute (for the name and phone number used in, or billed for, making the call) the name of the seller on behalf of which the telemarketing call is placed and the seller's customer service telephone number. The telephone number so provided must permit any individual to make a do-not-call request during regular business hours.
>
> (2) Any person or entity that engages in telemarketing is prohibited from blocking the transmission of caller identification information.

20

> (3) Tax-exempt nonprofit organizations are not required to
> comply with this paragraph."

The Commission expressly noted that the caller ID requirements are primarily to

protect subscribers from unrestricted commercial telemarketing calls. *In the Matter*

*of Rules and Regulations Implementing the Telephone Consumer Protection Act of*

*1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014, 14123 (2003),

at ¶ 184.

Given that the Commission prescribed the recited regulation to implement

protections to subscribers from unrestricted commercial telemarketing calls, the

regulation clearly falls within the Congressional mandate of 47 C.F.R. § 227(b)(2).

And, it follows, a private right of action accrues under 47 U.S.C. § 227(b)(3) for a

violation of "the regulations prescribed under this subsection."

Defendants rely upon *Worsham v. Travel Options, Inc.*, Civil No. JKB-14-

2749, 2016 U.S. Dist. LEXIS 118774, at *19-20 (D. Md. Sept. 2, 2016) to support

their position.   However, a reading of that decision reveals that Judge Bredar

indicates some uncertainty relating the regulation back to the statute:

> "However, it is not clear whether § 64.1601(e) is
> promulgated under either subsection b or subsection c of
> the TCPA. . . Thus, it is also not clear whether a violation
> of § 64.1601(e) falls within the private right of action
> granted by subsection b or subsection c." *Id.*, at *4.

Although not mentioned by Defendants in their motion, other District Courts

have come to the conclusion that a plaintiff can bring a claim for a violation of 47

21

C.F.R. §64.1601(e).  For example, in *Braver v. Northstar Alarm Services*, LLC, No.

CIV-17-0383-F, 2017 WL 11139779, at *5–6 (W.D. Okla. Aug. 25, 2017), copy

attached at Exhibit D, the Court held as follows:

> "Braver argues that 47 C.F.R. § 64.1601(e) requires every
> telemarketing call to transmit either the telemarketer or
> seller's name, and to transmit a phone number which a
> consumer could call back to request placement on the
> do-not-call list. Because the complaint alleges facts
> intended to show that this was not done, Braver argues the
> second count is properly brought as a claim for a violation
> of 47 C.F.R. § 64.1601(e).  Northstar's arguments for
> dismissal of count two are rejected."

In *Engle v. Unified Life Ins. Co., Inc.*, No. 14-CV-1908-MMA-JLB, 2014 WL

12508347, at *5 (S.D. Cal. Oct. 27, 2014), copy attached at Exhibit E, the Court

opined:

> "Defendants next move to dismiss Plaintiffs' claims for
> violations of the implementing regulations—specifically 47
> C.F.R. § 64.1200(b)(1), 47 C.F.R. § 64.1200(b)(2), and 47
> C.F.R. § 64.1601(e). . .
>
> Section 227(b)(3) expressly authorizes a plaintiff to bring
> 'a action based on a violation of this subsection or the
> regulations prescribed under this subsection.' 47 U.S.C. §
> 227(b)(3); see also *Greene v. Sprint Commications Co.*,
> 340 F.3d 1047, 1051 (9th Cir. 2003) ("Section 227, for
> example, authorizes an action for violation of the section
> 'or the regulations prescribed under this subsection.' ")
> (citing 42 U.S.C. § 227(b)(3)); *Bais Yaakov of Spring
> Valley v. Alloy, Inc.*, 936 F. Supp. 2d 272, 286 (S.D.N.Y.
> 2013) ("Under the TCPA, the FCC is charged with
> prescribing regulations to implement the TCPA's
> requirements, see 47 U.S.C. § 227(b)(2), and parties may
> sue for violations of the statute "or the regulations

prescribed" thereunder, *id.* § 227(b)(3).")...

The Court finds that Plaintiffs may allege violations of both § 227(b)(1) of the TCPA and, in the alternative, violations of various implementing regulations prescribed under the TCPA, here 47 C.F.R. § 64.1200(b)(1), 47 C.F.R. § 64.1200(b)(2), and 47 C.F.R. § 64.1601(e)."

Because the TCPA is a consumer protection statute, we must interpret it broadly in favor of consumers. *Breda v. Cellco Partnership*, 934 F.3d 1, 10 (1st Cir. 2019).

If this Court has any doubt, it certainly is within the discretion of this Court to recognize the primary jurisdiction doctrine and refer this question to the FCC. The doctrine of primary jurisdiction allows courts to refer a matter to the relevant agency "whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body[.]" *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 466 (6th Cir. 2010); quoting *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63–64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956). "[T]he outstanding feature of the doctrine is ... its flexibility permitting ... courts to make a workable allocation of business between themselves and the agencies." *Charvat*, 630 F.3d at 466; *Civil Aeronautics Bd. v. Modern Air Transp., Inc.*, 179 F.2d 622, 625 (2d Cir.1950); *W. Pac. R.R. Co.*, 352 U.S. at 64, 77 S.Ct. 161.

Accordingly, Count III should not be dismissed.

## Conclusion

WHEREFORE, Plaintiff respectfully prays that this Court enter an order that

Defendants' Motion to Dismiss be DENIED.

Respectfully submitted,

Dated: December 10, 2019

Mark W. Dobronski
Plaintiff *In Propria Persona*

Mark W. Dobronski
Post Office Box 85547
Westland, Michigan 48185-0547
Telephone:  (734) 641-2300
Email: MarkDobronski@yahoo.com

24

## <u>Certificate of Service</u>

I hereby certain that on **December 10, 2019**, I caused a copy of the foregoing *Plaintiff's Response in Opposition to Defendants' Motion to Dismiss* to be sent in a sealed envelope, with first-class postage fully prepaid thereupon, and deposited in the United States Mail, addressed to:

>Emily C. Palacios, Esq.
>Miller, Canfield, Paddock and Stone, PLC
>101 North Main Street, 7th Floor
>Ann Arbor, Michigan 48104

Mark W. Dobronski

# EXHIBIT
# A

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION

JANE KESKITALO and DAVID KESKITALO,   )
  )
                    Plaintiffs,   )
  )
                     v.   )    No. 2:17-cv-11761
  )
SUNPATH, LTD., ANDREW GARCIA,   )    Hon. Bernard A. Friedman
JOSEPH ABRAHAM, SCOTT MCMILLAN,   )
RICHARD SCANLON, and JAMES KELLEY,   )
  )
              Defendants.   )

## DECLARATION OF ANDREW GARCIA

I, Andrew Garcia, under penalty of perjury, state the following:

1. I am the President, Vice President, and Treasurer of SunPath LTD. I am also a director of SunPath LTD.

2. I am over the age of 18 and competent to make this Declaration, and have personal knowledge of the matters stated in this Declaration, all of which are true.

3. I currently reside in Sharon, Massachusetts, and formerly maintained an address in South Boston, Massachusetts. I consider Massachusetts to be my domicile, and consider myself to be a citizen of Massachusetts. I have not lived in any other state during the last three years.

4. Until receiving notice of the above-captioned case, I was not familiar with either Ms. Jane Keskitalo or Mr. David Keskitalo.

5. I have never done business with Ms. or Mr. Keskitalo, have never solicited business from Ms. or Mr. Keskitalo, and have never had contact with either Ms. or Mr. Keskitalo.

6. I have never placed a phone call to either of the Keskitalos.

7. I have never placed a phone call to anyone in the State of Michigan in an attempt to contact either of the Keskitalos, and have never otherwise attempted to contact either of the Keskitalos.

8. I have never used an automatic telephone dialing system to contact any person (in Michigan or otherwise), including without limitation the Keskitalos.

9. I never lived, owned or leased property, or conducted business, in the State of Michigan.

10. I do not otherwise have any connection to the State of Michigan.

1

11. I am aware that SunPath LTD. conducts business in the State of Michigan. I have never believed, expected, or contemplated that there was any possibility of me being personally haled into court in the State of Michigan merely because SunPath LTD. has contacts with the State of Michigan. I, personally, have no contacts with the State of Michigan, I have never availed myself, personally, of the benefits and protections of the laws of the State of Michigan, and do not believe it comports with due process for me to be personally haled into court in the State of Michigan.

12. If called to testify, I would testify in accordance with the foregoing.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: _7/18/17_          By: _____
                                    Andrew Garcia

# EXHIBIT
# B

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION

JANE KESKITALO and DAVID KESKITALO,  )
)
Plaintiffs,  )
)
v.  )  No. 2:17-cv-11761
)
SUNPATH, LTD., ANDREW GARCIA,  )  Hon. Bernard A. Friedman
JOSEPH ABRAHAM, SCOTT MCMILLAN,  )
RICHARD SCANLON, and JAMES KELLEY,  )
)
Defendants.  )

## DECLARATION OF JOSEPH ABRAHAM

I, Joseph Abraham, under penalty of perjury, state the following:

1. I am the Secretary of SunPath LTD. I am also a director of SunPath LTD.

2. I am over the age of 18 and competent to make this Declaration, and have personal knowledge of the matters stated in this Declaration, all of which are true.

3. I currently reside in Hanover, Massachusetts, and formerly maintained an address in Pembroke, Massachusetts. I consider Massachusetts to be my domicile, and consider myself to be a citizen of Massachusetts. I have not lived in any other state during the last three years.

4. Until receiving notice of the above-captioned case, I was not familiar with either Ms. Jane Keskitalo or Mr. David Keskitalo.

5. I have never done business with Ms. or Mr. Keskitalo, have never solicited business from Ms. or Mr. Keskitalo, and have never had contact with either Ms. or Mr. Keskitalo.

6. I have never placed a phone call to either of the Keskitalos.

7. I have never placed a phone call to anyone in the State of Michigan in an attempt to contact either of the Keskitalos, and have never otherwise attempted to contact either of the Keskitalos.

8. I have never used an automatic telephone dialing system to contact any person (in Michigan or otherwise), including without limitation the Keskitalos.

9. I never lived, owned or leased property, or conducted business, in the State of Michigan.

10. I do not otherwise have any connection to the State of Michigan.

11. I am aware that SunPath LTD. conducts business in the State of Michigan. I have never believed, expected, or contemplated that there was any possibility of me being personally

1

haled into court in the State of Michigan merely because SunPath LTD. has contacts with the State of Michigan. I, personally, have no contacts with the State of Michigan, I have never availed myself, personally, of the benefits and protections of the laws of the State of Michigan, and do not believe it comports with due process for me to be personally haled into court in the State of Michigan.

12. If called to testify, I would testify in accordance with the foregoing.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: __7/18/17__

By: _____
Joseph Abraham

2

# EXHIBIT
# C

CSCL/CD-560 (Rev. 08/15)

# MICHIGAN DEPARTMENT OF LICENSING AND REGULATORY AFFAIRS
## CORPORATIONS, SECURITIES & COMMERCIAL LICENSING BUREAU

| Date Received | (FOR BUREAU USE ONLY) |
|---|---|

FEB 2 9 2016

This document is effective on the date filed, unless a subsequent effective date within 90 days after received date is stated in the document

TranInfo:1 21136575-1 02/22/16
Chk#: 5814 Amt: $60.00
ID: SUNPATH LTD **FILED**

Name
SunPath LTD. - Attention Legal Dept.

Address
25 Braintree Hill Office Park - Suite 100

| City | State | ZIP Code |
|---|---|---|
| Braintree | MA | 02184 |

MAR 02 2016

EFFECTIVE DATE:        ADMINISTRATOR
                      CORPORATIONS DIVISION

Document will be returned to the name and address you enter above.
If left blank, document will be returned to the registered office.

**60796G**

# APPLICATION FOR CERTIFICATE OF AUTHORITY
# TO TRANSACT BUSINESS OR CONDUCT AFFAIRS IN MICHIGAN
### For use by Foreign Corporations
(Please read information and instructions on the last page)

*Pursuant to the provisions of Act 284, Public Acts of 1972 (profit corporations), or Act 162, Public Acts of 1982 (nonprofit corporations), the undersigned execute the following Application:*

1. The name of the corporation is:

   SunPath LTD.

2. (Complete this item only if the corporate name in item 1 is not available for use in Michigan.)
   The assumed name of the corporation to be used in all its dealings with the Bureau and in the transaction of its business or conducting of its affairs in Michigan is:

3. It is incorporated under the laws of Delaware

   The date of its incorporation is November 15, 2012 , and the term of existence

   if other than perpetual is n/a

4. a. The address of the main business or headquarters office of the corporation is:

| 25 Braintree Hill Park - Suite 100 | Braintree | MA | 02184 |
|---|---|---|---|
| (Street Address) | (City) | (State) | (ZIP Code) |

   b. The mailing address if different than above:

| | | | |
|---|---|---|---|
| (Street Address) | (City) | (State) | (ZIP Code) |

5. The street address of its registered office in Michigan is:

30600 Telegraph Road - Suite 2345                    Bingham Farms                    ☐ , Michigan ___48025-5720___
(Street Address)                                                      (City)                                                            (ZIP Code)

The mailing address of the registered office in Michigan, if different than above:

_____ , Michigan _____
(Street Address or P.O. Box)                                          (City)                                                            (ZIP Code)

The name of the resident agent at the registered office is: National Registered Agents, Inc.

The resident agent is an agent of the corporation upon whom process against the corporation may be served.

6. The specific business or affairs which the corporation is to transact or conduct in Michigan is as follows:

Sale of automotive service contracts and provision of services related thereto, and any lawful purpose.

The corporation is authorized to transact such business or conduct those affairs in the jurisdiction of its incorporation.

7. (To be completed by profit corporations only)

The total authorized shares of the corporation are: 115,000 Common shares and 60,000 preferred shares.

8. If the applicant is a trust, please specify any powers or privileges possessed by the trust that are not possessed by an individual or a partnership.

n/a

Signed this __16th__ day of __FEBRUARY, 2016__ , _____

By _____
(Signature of Authorized Officer or Agent)

JOSEPH ABRAHAM · AUTHORIZED OFFICER
(Type of Print Name)

# EXHIBIT
# D

2017 WL 11139779
Only the Westlaw citation is currently available.
United States District Court, W.D. Oklahoma.

Robert H. BRAVER, for himself and all
individuals similarly situated, Plaintiff,

v.

NORTHSTAR ALARM SERVICES,
LLC, a Utah Limited Liability Company;
Yodel Technologies, LLC; and Does 2 –
10, Unknown Individuals, Defendants.

Case No. CIV-17-0383-F
|
Signed 08/25/2017

**Attorneys and Law Firms**

David Humphreys, Luke J. Wallace, Paul M. Catalano,
Humphreys Wallace Humphreys PC, Tulsa, OK, Keith J.
Keogh, Pro Hac Vice, Timothy J. Sostrin, Pro Hac Vice,
Keogh Law Ltd, Chicago, IL, for Plaintiff.

Brian R. Matula, Gum Puckett & Mackechnie LLP, D. Kent
Meyers, Mary H. Tolbert, Crowe & Dunlevy, Oklahoma City,
OK, Daniel S. Blynn, Pro Hac Vice, Stephen R. Freeland,
Pro Hac Vice, Venable LLP, Washington, DC, Elizabeth C.
Rinehart, Pro Hac Vice, Venable LLP, Baltimore, MD, Jesse
R. Pierce, Jesse R. Pierce & Associates PC, Nugent D.
Beaty, Jr., Pierce & O'Neill LLP, Houston, TX, for Defendant
Northstar Alarm Services LLC.

Anne E. Zachritz, Resolution Legal Group, Oklahoma City,
OK, Eric S. Allen, Pro Hac Vice, Allen Mitchell & Allen
PLLC, Salt Lake City, UT, for Defendant Yodel Technologies
LLC.

**ORDER**

STEPHEN P. FRIOT, UNITED STATES DISTRICT JUDGE

**\*1** Defendant Northstar Alarm Services, LLC ("Northstar"),
moves for dismissal from this action. Doc. no. 11. The motion
is brought under Rules 8(a) and 12(b)(6), Fed. R. Civ. P.
Alternatively, Northstar seeks a more definite statement of
any claims which survive the motion to dismiss. *See*, Rule
12(e), Fed. R. Civ. P. Plaintiff Robert H. Braver ("Braver")

responded to the motion, objecting to dismissal of any claims.
Doc. no. 24. No reply brief was filed.

I. The Complaint

The First Amended Class Action Complaint (doc. no. 7,
referred to as "the complaint" in this order) is brought by
Braver, purportedly on behalf of himself and individuals
similarly situated. It alleges violations of the Telephone
Consumer Protection Act of 1991 (TCPA or the Act),
47 U.S.C. § 227, which was enacted to curb abusive
telemarketing practices.

The complaint alleges the following unlawful conduct.

The complaint alleges that, "In violation of the TCPA,
Northstar hired a third-party, Yodel [non-moving defendant
Yodel Technologies, LLC ("Yodel") ], who commissioned
telemarketing calls to Mr. Braver's telephone number for the
purposes of advertising their [presumably Northstar's] goods
and services using a prerecorded message without [Braver's]
express consent...." Doc. no. 7, ¶ 2. The complaint alleges
that Braver received two automated telemarketing calls,
referred to as "robocalls." In the first call, Braver "received a
prerecorded message telemarketing 'robocall' advertising the
commercial availability of burglar alarm equipment and alarm
monitoring services." *Id.* at ¶ 18. The second robocall call
related back to the prior call. *Id.* at ¶¶ 18, 22. The complaint
alleges the calls were received by Braver at 10:17 a.m. and
4:23 p.m., both on August 26, 2016. *Id.* The complaint
alleges that a correct company name, and correct company
contact information, were not provided in connection with the
calls. For example, the company was identified in the calls
under different names; [1] no company name was transmitted
via Caller ID with the first call; and the Caller ID number
transmitted with the second call was "405-144-8814" which
the complaint alleges "is an impossible telephone number
under the North American Numbering Plan." *Id.* at ¶¶ 18-25.

The complaint alleges that during the second call, Braver
feigned interest in an alarm system and was transferred to a
representative of Northstar. *Id.* at ¶ 26. The complaint alleges
that once Northstar was identified, Braver was able to contact
Northstar to obtain additional information related to the calls,
such as the following information: Northstar indicated the
calls had been initiated by Yodel Technologies of Palm
Harbor, Florida; Northstar had "vetted" Yodel Technologies;
and Northstar was "fully aware that Yodel was initiating

telemarking calls to consumers using prerecorded voice messages." *Id.* at ¶¶ 27, 29.

**\*2** The complaint alleges facts which could suggest that Northstar was aware that Yodel was not fully compliant with the TCPA. For example, the complaint alleges that Braver expressed his concerns about the unlawful nature of the calls to Northstar but that the concerns were "largely dismissed" by Northstar. *Id.* at ¶ 28. The complaint alleges that a search was conducted by Braver among official records of several states but that Braver was unable to locate records for entities with the names used in the calls or given to him by Northstar. *Id.* at ¶ 32. The complaint alleges that Braver located a web site, yodelvoice.com, which listed a non-existent address (123 A Street, Palm Harbor, Florida), but that Braver was unable to find any official records in Florida for "Yodel Technologies or anything similar." *Id.* at ¶ 33.

Following the "Unlawful Conduct" portion of the complaint, the complaint alleges various legal propositions in a part of the complaint entitled "Northstar's Liability and its Arrangement with Yodel." This part of the complaint sets out legal rulings by the Federal Communications Commission which Braver contends show that a seller such as Northstar cannot avoid liability under the Act by outsourcing telemarketing. For example, this part of the complaint cites a May 2013 FCC ruling, In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules, 28 FCC Rcd. 6574, for the proposition that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at ¶ 39. The complaint cites the May 2013 FCC ruling for the proposition that "even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer has apparent, (if not actual) authority to make the calls." *Id.* at ¶ 40.

This part of the complaint also quotes the May 2013 FCC ruling's discussion of various types of evidence which may support a finding of apparent authority for purposes of the Act. *Id.* at ¶ 42. The complaint does not allege that any of these specific types of evidence exist in this case, but it notes these categories of material evidence. As quoted in the complaint, the May 2013 FCC ruling lists the following types of evidence to show apparent authority: evidence that the seller allowed the outside sales entity to access information

and systems normally within the seller's exclusive control, including access to detailed information regarding the nature and pricing of the seller's products or the seller's customer information; evidence of the ability of the outside sales entity to enter consumer information into the seller's sales or customer systems; evidence of authority on the part of the outside sales entity to use the seller's trade name; evidence that the seller approved, wrote or reviewed the outside entity's telemarketing scripts; and evidence that a seller knew or reasonably should have known the telemarketer was violating the TCPA on the seller's behalf but that the seller did not take steps to force the telemarketer to stop that conduct. *Id.*

The court finds that in this part of the complaint (the part entitled "Northstar's Liability and its Arrangement with Yodel"), the complaint essentially alleges that by virtue of Northstar's relationship with Yodel, the law permits Northstar to be held vicariously liable for the calls in question in this action, under certain doctrines including but not limited to the doctrine of apparent authority.

Next, the complaint sets out class allegations, after which the complaint alleges three counts. Each of the three counts incorporates all preceding allegations.

**\*3** Count one alleges that defendants' robocalls delivered a prerecorded telemarketing message without Braver's express written consent and therefore constitute violations of 47 C.F.R. § 64.1200(a)(3) as promulgated under 47 U.S.C. § 227(b) of the TCPA. *Id.* at ¶ 58.

Count two alleges that defendants' robocalls were initiated without transmitting the caller's name and/or without transmitting a valid telephone number and therefore constitute violations of 47 C.F.R. § 64.1601(e) as promulgated under 47 U.S.C. § 227(c) of the TCPA. Doc. no. 7, ¶ 64.

Count three alleges the robocalls were initiated without defendants having first implemented an effective written policy meeting the required minimum standards therefore constituting two violations of 47 C.F.R. § 64.1200(d) as promulgated under § 227(c) of the TCPA. Doc. no. 7, ¶¶ 73, 74.

The complaint concludes by seeking a permanent injunction, damages of $ 500.00 per violation and treble damages for willful violations of the law.

Braver v. Northstar Alarm Services, LLC, Slip Copy (2017)

## II. Northstar's Arguments Under Rule 12(b)(6)

The inquiry under Rule 12(b)(6) is whether the complaint contains enough facts to state a claim for relief that is plausible on its face. Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007). To survive a motion to dismiss, a plaintiff must nudge his claims across the line from conceivable to plausible. Id. The mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims. Ridge at Red Hawk, 493 F.3d at 1177. In conducting its review, the court assumes the truth of the plaintiff's well-pleaded factual allegations and views them in the light most favorable to the plaintiff. Id. Pleadings that are no more than legal conclusions are not entitled to the assumption of truth; while legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. Ashcroft v. Iqbal, 556 U.S.662, 664 (2009). When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Id. The court will disregard mere "labels and conclusions" and "[t]hreadbare recitals of the elements of a cause of action" to determine if what remains meets the standard of plausibility. Twombly, 550 U.S. at 555; Iqbal, 556 U.S. at 678.

### Direct Liability Claims Against Northstar

Northstar argues, first, that it should be dismissed from any claims premised on its direct liability for the calls described in the complaint because the allegations make clear that the calls were not made by Northstar.

In this regard, Northstar argues that each of Braver's claims requires proof that a defendant "initiated" an improper telephone call. Northstar argues that in the previously mentioned May 2013 FCC ruling, the FCC rejected the position which Braver took in that litigation, which was that the FCC should rule that a seller initiates every call made by a third-party telemarketer and thus is liable for the telemarketer's improper calls under the TCPA if there is any kind of agreement or relationship between the two. Northstar argues that instead of agreeing with Braver, the FCC ruled that the word "initiate" suggests a direct connection

between a person or entity and the making of a call, and that "a person or entity 'initiates' a telephone call when it takes steps necessary to physically place a telephone call...." See, Northstar's arguments at doc. no. 11, p. 10 of 26, quoting 28 FCC Rcd. 6574, 6583. Northstar's brief continues, as follows: "As a result, a seller does not generally initiate calls made through a third-party telemarketer, and is not directly liable for telemarketer's violations of the TCPA." Id., quoting 28 FCC Rcd. at 6574. (Northstar's motion then goes on to address an exception to this general rule, based on vicarious liability, discussed next.) In short, Northstar argues that the TCPA generally allows suits based only on direct violations; that Northstar has no direct liability since it did not make the calls in question; and that setting aside, for now, the issue of any potential vicarious liability, Northstar cannot have any direct liability in this action.

**\*4** Plaintiff's response brief does not dispute or otherwise address this argument, opting to press only Northstar's vicarious liability.

The court deems confessed Northstar's argument that it has no direct liability in this action and that any potential liability on its part must be based on vicarious liability. See, LCvR7.1(g)(any motion not opposed within 21 days may, in the discretion of the court, be deemed confessed). Accordingly, Northstar's motion will be granted to the extent of any direct liability claims which the complaint may have intended to allege against Northstar. Such claims will be dismissed with prejudice under Rule 12(b)(6).

### Vicarious Liability Claims Against Northstar

Northstar next argues that none of the three counts alleges facts which plausibly show vicarious liability on Northstar's part.

The complaint alleges that Northstar "hired" Yodel to commission calls to advertise Northstar's products; that a call to Braver from Yodel was transferred to Northstar after Braver feigned interest in an alarm system; that Northstar subsequently provided information to Braver indicating Northstar had vetted Yodel; that Northstar was fully aware that Yodel was initiating telemarketing calls to consumers using prerecorded voice messages; that an "impossible" Caller ID number was transmitted for the second call; that Braver's investigation showed the company names being used by Northstar and by Yodel were inaccurate or fictitious; that

the web site yodelvoice.com listed an apparently fictitious address in Florida; and that when Braver brought his concerns about the unlawful nature of the calls to Northstar's attention, those concerns were largely dismissed by Northstar. Taken as a whole, the allegations provide reason to believe that Northstar was, or should have been, aware of alleged violations of law occurring during calls advertising its goods and services.

Northstar argues, among other things, that the complaint does not allege the type of detailed information about the relationship between Northstar and Yodel which the May 2013 FCC ruling cited in the complaint states may show apparent authority. In other words, Northstar argues that the complaint does not allege that Yodel had access to data or systems exclusively controlled by Northstar; that Yodel had detailed information about Northstar, its goods, or its customers; that Yodel had the ability to enter information into Northstar's sales systems; that Yodel had the authority to use Northstar's name and trademarks; or that Northstar had a role in preparing Yodel's telemarketing scripts.

The above-described information would rarely be available to a plaintiff at the pleadings stage. *See*, Mauer v. American Intercontinental University, Inc., 2016 WL 4651395 at * *2-3 (N.D. Ill. 2016) (while a consumer must ultimately prove a seller's role and relationship to the telemarketer caller, consumers need only generally allege an agency claim so as to provide each defendant notice of the claims against them at the pleadings stage; this is particularly true where the facts to more precisely identify the seller and telemarketer's roles are not available absent discovery). At least in situations like this one, where the complaint plausibly alleges legally significant details about Yodel's and Northstar's relationship, Braver is not required to allege additional details about Northstar and Yodel's relationship in order to permit Braver's vicarious liability claims to go forward.

**\*5** The court rejects Northstar's argument that the complaint fails to plausibly allege vicarious liability on Northstar's part, whether vicarious liability is premised upon apparent authority or some other doctrine.

This conclusion means that the court also rejects Northstar's argument that a ratification theory has not been sufficiently pled. The complaint refers (twice) to vicarious liability (doc. no. 7, ¶¶ 39, 50), and authorities cited by both parties indicate that ratification is one way of establishing common law agency via vicarious liability. *See, e.g.,* the May 2013 FCC

ruling, 28 FCC Rcd. 6574, 6586-87. While the complaint arguably emphasizes apparent authority as a means of finding Northstar vicariously liable, other principles of agency law -- such as the classical definition of agency, and ratification by knowingly accepting the benefits of the acts of another -- may potentially apply in this case. *Id.* Furthermore, with regard to ratification, the complaint indicates that Braver, a possible purchaser of Northstar's goods and services, was transferred to Northstar after Braver feigned an interest in Northstar's products. This at least makes it arguable that Northstar accepted the benefits of Yodel's alleged conduct, an issue material to ratification.

At this stage, the court makes no ruling regarding the ultimate viability of any particular theory pursuant to which plaintiff may seek to hold Northstar vicariously liable. The court merely concludes that it would be premature to now exclude any particular doctrine among those by which Braver might seek to establish Northstar's vicarious liability (actual agency, apparent authority or ratification).

### Count Two

Northstar's next argument pertains only to count two. Northstar contends count two should be dismissed because it misidentifies the applicable subsection of the TCPA. Northstar characterizes count two as a "spoofing" claim and argues that § 227(e) applies rather than § 227(c) (the subsection cited in count two). Northstar further argues that the requirements for a claim under § 227(c) are not satisfied, even if that section of the statute had been properly identified in count two. In that regard, Northstar argues that § 227(c) makes it unlawful for a person "to cause any caller identification service to knowingly transmit misleading or inaccurate caller identification information with the intent to defraud, cause harm, or wrongfully obtain anything of value....", but that there are no allegations that Northstar had an intent to defraud, or to cause harm, or to wrongfully obtain anything of value.

Count two alleges a violation of 47 C.F.R. § 64.1601(e). [2] Northstar's argument for dismissing the second count does not address the sufficiency of this count as a claimed violation of 47 C.F.R. § 64.1601(e). Furthermore, Braver's response brief stands by the second count as alleged. Braver argues that the second count correctly alleges a violation of 47 C.F.R. § 64.1601(e) because the second count alleges the robocalls were "initiated without transmitting the caller's name and/

or without transmitting a valid telephone number." Doc. no. 7, ¶ 64. Braver argues that 47 C.F.R. § 64.1601(e) requires every telemarketing call to transmit either the telemarketer or seller's name, and to transmit a phone number which a consumer could call back to request placement on the do-not-call list. Because the complaint alleges facts intended to show that this was not done, Braver argues the second count is properly brought as a claim for a violation of 47 C.F.R. § 64.1601(e).

**\*6** Northstar's arguments for dismissal of count two are rejected.

### III. Northstar's Arguments Under Rule 8(a)

Rule 8(a), Fed. R. Civ. P., sets out general rules of pleading. In pertinent part, this rule provides that a claim for relief must contain a short and plain statement of the claim showing the pleader is entitled to relief. The complaint is sufficient in this regard, and no claims will be dismissed for failure to comply with Rule 8.

### IV. Northstar's Arguments Under Rule 12(e)

Under Rule 12(e), Fed. R. Civ. P., Northstar asks the court to require a more definite statement of any claims which otherwise survive this motion. Northstar seeks a more definite statement of the specific code subsections which Braver relies on, and a better description of each defendant's role in the alleged violations.

The complaint describes a relatively straightforward factual scenario. Each count identifies the particular regulation which it alleges Northstar and Yodel violated. Each count also identifies the section of the TCPA pursuant to which Braver

contends the regulations which he alleges were violated, were promulgated. The complaint sets out a good deal of information regarding the respective roles of Northstar and Yodel, the only defendants who are identified by name in the complaint. (John Does are also named as defendants, but no John Does have been identified.)

The complaint gives adequate notice to Northstar of the nature of Braver's claims against each of the two named defendants. Northstar's request for a more definite statement of the claims will be denied.

### V. Conclusion

After careful consideration, Northstar's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

The motion is **GRANTED** to the extent that Northstar is **DISMISSED** from any claims that are premised upon Northstar's direct liability for the allegedly unlawful conduct described in this action. Northstar is dismissed with prejudice from all direct liability claims. Rule 12(b)(6), Fed. R. Civ. P.

In all other respects, Northstar's motion is **DENIED**.

The result is that Northstar has no direct liability but remains a defendant for purposes of all three counts based on its potential vicarious liability for the alleged unlawful conduct described in this action.

IT IS SO ORDERED this 25th day of August, 2017.

**All Citations**

Slip Copy, 2017 WL 11139779

---

Footnotes

1    There are allegations regarding inaccurate or confused company names used in the calls ("The Local Department of Homeland Security," "The Security Help Center," and "Home Security Help Center"). Northstar allegedly claimed to Braver that "Home Security Help Center" was Northstar's registered "calling name" in the State of Nevada. The complaint alleges that particular name was never mentioned in the two calls. *Id.* at ¶¶ 20, 23, 30, 31.

2    Count two alleges the robocalls were "initiated without transmitting the caller's name and/or without transmitting a valid telephone number, and therefore constitute [a violation] of 47 C.F.R. § 64.1601(e) as promulgated under 47 U.S.C. § 227(c)." Doc. no. 7, ¶ 64 (emphasis added).

---

# EXHIBIT
# E

Engle v. Unified Life Insurance Company, Inc., Not Reported in Fed. Supp. (2014)

Case 2:19-cv-13094-TGB-EAS ECF No. 7, PageID.155 Filed 12/10/19 Page 46 of 51

2014 WL 12508347
Only the Westlaw citation is currently available.
United States District Court, S.D. California.

Frank ENGLE; Kenneth Moser, Plaintiffs,
v.
UNIFIED LIFE INSURANCE COMPANY,
INC.; HCC Life Insurance Company, Inc.;
FCHCN Insurance Agency, Inc. dba Hife–
Health Insurance for Everyone; National
Congress of Employers, Inc.; Health Plan
Intermediaries Holdings, LLC dba Health
Innovations Insurance Agency LLC, dba Health
Insurance Innovations; and Does 1–25, Defendants.

Case No. 14- CV-1908-MMA (JLB)
|
Signed October 24, 2014
|
Filed 10/27/2014

**Attorneys and Law Firms**

Daniel J. Williams, Law Offices of Daniel J. Williams, San
Diego, CA, for Plaintiffs.

Robert S. Crowder, Thomas Cushing Aikin, Freeman,
Freeman & Smiley, LLP, Los Angeles, CA, Dane Joseph
Bitterlin, Hugh Anthony McCabe, Neil Dymott Frank McFall
& Trexler APLC, David P. Hall, Del Mar Law Group, Barton
H. Hegeler, Hegler & Anderson, Storm Peyton Anderson,
Barton H. Hegeler, Attorney at Law, A.P.C., San Diego, CA,
for Defendants.

**ORDER:**

**GRANTING IN PART AND DENYING
IN PART UNIFIED LIFE INSURANCE
COMPANY, INC.'S MOTION TO DISMISS**

**GRANTING IN PART AND DENYING
IN PART HCC LIFE INSURANCE
COMPANY'S MOTION TO DISMISS**

**GRANTING IN PART AND DENYING
IN PART NATIONAL CONGRESS OF
EMPLOYERS, INC.'S MOTION TO DISMISS**

Hon. Michael M. Anello, United States District Judge

**\*1** Plaintiffs Frank Engle and Kenneth Moser allege
violations of the Telephone Consumer Protection Act
("TCPA") and California state law based on their receipt of
pre-recorded voice messages from Unified Life Insurance
Company Incorporated, HCC Life Insurance Company,
FCHCN Insurance Agency Incorporated DBA Hife–Health
Insurance for Everyone, National Congress of Employers
Incorporated, Health Plan Intermediaries Holdings LLC DBA
Health Innovations Insurance Agency LLC DBA Health
Insurance Innovations, and DOES 1–25.[1] Defendants HCC
Life Insurance Company ("HCC"), Unified Life Insurance
Company Incorporated ("Unified Life"), and National
Congress of Employers Incorporated ("National Congress")
each separately move to dismiss Plaintiffs' Complaint on
several grounds pursuant to Federal Rule of Civil Procedure
12(b)(6).[2] The Court finds the matter suitable for decision
on the papers, without oral argument, pursuant to Local Civil
Rule 7.1. Having considered the parties' submissions, and for
the reasons stated below, the Court **GRANTS IN PART** and
**DENIES IN PART** Defendants'[3] motions to dismiss.

**BACKGROUND**

**A. Facts**[4]

Plaintiffs Frank Engle and Kenneth Moser (collectively
"Plaintiffs") are residents of the County of San Diego,
California. Doc. No. 1-1 ("Compl.") ¶ 2. Within the last
four years, and without the express permission of Plaintiffs,
Defendants have called Plaintiffs' residential telephone lines
using an artificial or prerecorded voice to deliver a message at
least thirty-nine times. Id. ¶ 13. In addition to the thirty-nine
known phone calls, Plaintiffs allege that Defendants made
many more calls to Plaintiffs' residential telephone lines by
prerecorded voice message. Id. Furthermore, none of the calls
were made for an emergency purpose, nor were they exempt
under 47 C.F.R. 64.1200(a) and/or 7(c). Id.

In each of the above mentioned calls, Defendants did
not transmit caller identification information. Id. ¶ 25.
Additionally, Defendants did not introduce the message with

Case 2:19-cv-13094-TGB-EAS ECF No. 7, PageID.156 Filed 12/10/19 Page 47 of 51

Engle v. Unified Life Insurance Company, Inc., Not Reported in Fed. Supp. (2014)

a live, natural voice that identified Defendants' businesses or the individuals responsible for making the call, provided addresses or phone numbers for their entities, or asked permission to play the recording. *Id.* ¶¶ 13, 28.

### B. Procedural History

On June 27, 2014, Plaintiffs filed suit against Defendants in San Diego County Superior Court. Doc. No. 1. Plaintiffs allege claims for: (1) Violations of the TCPA and its implementing regulations; (2) Violations of the Consumers Legal Remedies Act ("CLRA"); (3) Trespass to Chattel; and (4) Violations of California's Unfair Competition Law ("UCL"). Compl. ¶¶ 10-42.

**\*2** On August 13, 2014, Defendant HCC removed the case to this Court on several grounds pursuant to 28 U.S.C. §§ 1331, 1367, 1441, 1446. Doc. No. 1.

Defendants HCC, Unified Life, and National Congress now move to dismiss Plaintiffs' Complaint on several grounds pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. Nos. 5, 8, 10. Plaintiffs oppose the motions and provide supporting declarations by Kenneth Moser and Frank Engle. Doc. Nos. 11, 12, 18. Defendants replied and object to the Moser and Engle declarations.[5] Doc. Nos. 20, 22, 23. Defendants contend that the entire Complaint is factually deficient and specifically fails to plead a sufficient injury for a trespass to chattel claim, a sufficient injury to provide an independent basis for an unfair business practices claim, and an adequate basis for punitive damages. Doc. No. 5 at 2–3; Doc. No. 8–1 at 2–10; Doc. No. 10–1 at 2–10. Additionally, Defendants contend that Plaintiffs fail to state a claim for a violation of the TCPA, improperly claim separate violations of the implementing regulations of the TCPA, and fail to state a claim for a violation of the CLRA because insurance is not subject to regulation under that statute. Doc. No. 5 at 2–3; Doc. No. 8–1 at 2–10; No. 10–1 at 2–10.

### LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations, brackets, and citations omitted).

**\*3** In reviewing a motion to dismiss under Rule 12(b)(6), the Court must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill*, 80 F.3d at 337–38 (9th Cir. 1996). Legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987); *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). In determining the propriety of a Rule 12(b)(6) dismissal, generally, a court may not look beyond the complaint for additional facts. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir. 1998).

### DISCUSSION

#### A. Plaintiffs Sufficiently State a TCPA Claim

Plaintiffs' first cause of action is for violations of 42 U.S.C. § 227(b)(1)(B), which makes it unlawful for any person to "initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by the rule or order of the Commission..." Compl. ¶¶ 10–12. Defendants argue that Plaintiffs have failed to allege specific facts that go beyond a recitation of the elements of a TCPA claim, and have failed to allege specific facts to put each defendant on notice of the claims. Doc. No. 5 1 at 3–6; Doc. No. 8 1 at 2 3; Doc. No. 10 -1 at 3.

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The *Iqbal* court found that Rule 8(a)(2) does not require courts to accept parties' "legal conclusions" as true; adding that a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted) (internal quotation marks omitted). Therefore, legal conclusions stated as factual allegations are insufficient on their own because, however disguised, they remain a legal conclusion. *Vaccaro*

Engle v. Unified Life Insurance Company, Inc., Not Reported in Fed. Supp. (2014)

Case 2:19-cv-13094-TGB-EAS ECF No. 7, PageID.157 Filed 12/10/19 Page 48 of 51

v. *CTS Pharmacy, Inc.*, No. 13-CV-174-IEG RBB, 2013 WL 3776927, at *2 (S.D. Cal. July 16, 2013). However, "[i]t does not follow that factual allegations that borrow or echo statutory language are necessarily legal conclusions." *Id.* Allegations do not become any less factual by quoting a statute. *Id.*

In the Complaint, Plaintiffs allege that "Defendants called Plaintiffs' residential telephone lines, using an artificial or prerecorded voice to deliver a message without Plaintiffs' express permission at least 39 times ..." Compl. ¶ 13. The fact that the words "artificial or prerecorded voice" are contained within the TCPA does not render Plaintiffs' factual allegations inadequate. *See Vaccaro*, 2013 WL 3776927 at *2. Even though Plaintiffs' allegations seem vague, neither section 227(b)(1)(B) nor Federal Rule of Civil Procedure 8 requires Plaintiffs to plead their claim with particularity. *See Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1172 (N.D. Cal. 2010).

Defendants rely on *Sepehry-Fard v. Department Stores National Bank* for the proposition that Plaintiffs must explain why they believe Defendants made the offending calls, describe the date, timing, or content of the calls, and explain why they believe the calls were artificial or prerecorded. *See* Doc. No. 5-1 at 4; Doc. No. 8-1 at 4; Doc. No.10-1 at 5; *see Sepehry-Fard v. Dep't Stores Nat'l Bank*, No. 13-CV-03131-WHO, 2014 WL 595067, at *2 (N.D. Cal. Feb. 14, 2014). However, that case involved a *pro se* plaintiff whose complaint was deficient. *Id.* The court instructed the plaintiff to include the above mentioned factual details in order to state plausible TCPA claims under multiple TCPA sections. *Id.* The plaintiff's complaint was deficient in part because he did not separate allegations of calls to his residential and cellular phone, not because the plaintiff did not follow the court's suggested pleading method. *See id.* Here, Plaintiffs have asserted TCPA violations arising from calls to their residential lines only, and alleged violations against Defendants in their role as a direct violator, or by acting vicariously through a direct violator. Compl. ¶¶ 4, 13. Accordingly, the Court finds that Defendants' reliance on *Sepehry-Fard* is unavailing.

**\*4** Additionally, Defendants argue that by being referred to simply as "Defendants" throughout the Complaint, each individual defendant has not been put on notice of the claims asserted against it. Doc. No. 5-1 at 1; Doc. No. 8-1 at 3; Doc. No. 10-1 at 3. However, as this Court explained in *Robinson*, "federal 'notice pleading standards do not require a plaintiff to allege details at the pleading stage about the time and context' of every telephone call." *Robinson v. Midland Funding, LLC*,

No. 10-CV-2261-MMA-AJB, 2011 WL 1434919, at *3 (S.D. Cal. Apr. 13, 2011) (citing *Kramer*, 759 F. Supp. 2d at 1172).

Here, Plaintiffs allege that each defendant is "an owner, officer, director, employee, and/or agent of each defendant ... having participated in defendants' actions, having knowledge of defendants' actions, and/or consenting to defendants' actions." Compl. ¶ 4. While Plaintiffs have not expressed in detail the contents of each call, they have alleged a legal theory that each defendant violated the TCPA either by directly making the call, or acting vicariously through the other defendants. *See* Compl. ¶ 4. As the TCPA allows recovery either through direct or vicarious violation, Plaintiffs have sufficiently alleged a theory of recovery to meet the pleading standards of Rule 8. *See Gomez v. Campbell-Ewald Co.*, No. 13-55486, ___ F.3d. ___, 2014 WL 4654478, at *4 (9th Cir. Sept. 19, 2014) (holding that a defendant may be held vicariously liable for TCPA violations); *see also Kramer*, 759 F. Supp. 2d at 1172 (finding the TCPA is designed to combat mass unsolicited commercial telemarketing and thus notice pleading standards are relaxed).

Furthermore, Defendant HCC argues that Plaintiffs fail to allege any facts supporting the conclusion that the calls were not exempt under the TCPA. Doc. No. 8-1 at 5. HCC relies on *Daniels v. Comunity Lending, Inc.*, No. 13-CV-88-WQH-JMA, 2014 WL 51275, at *5 (S.D. Cal. Jan. 6, 2014) for the proposition that a plaintiff must prove that the calls were not exempt under the TCPA in the complaint. However, for calls made to residential telephone lines by artificial or prerecorded voice, the Federal Communications Commission has only exempted those calls "not made for commercial purposes; made for commercial purposes which do not transmit an unsolicited advertisement; made to a party with whom the caller has an established business relationship; and non-commercial calls by tax-exempt nonprofit organizations." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 8752 ¶ 5 (1992). Here, Plaintiffs state that the "calls were not made for any emergency purposes, nor were the calls exempt under 47 C.F.R. 64.1200(a) and/or 7(c)." Compl. ¶¶ 13. Additionally, HCC admits in its motion to dismiss that Plaintiffs specifically allege the calls were "advertising calls related to the business of insurance." Doc. No. 8-1 at 7. An advertising call is not an exempt call under the TCPA. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 8752 ¶ 5 (1992). Therefore, Plaintiffs

Case 2:19-cv-13094-TGB-EAS ECF No. 7, PageID.158 Filed 12/10/19 Page 49 of 51

Engle v. Unified Life Insurance Company, Inc., Not Reported in Fed. Supp. (2014)

have alleged sufficient facts to support the conclusion that Defendants' alleged calls were not exempt under the TCPA.

Accordingly, the Court **DENIES** Defendants' motions to dismiss Plaintiffs' TCPA claim brought pursuant to 47 U.S.C. § 227(b)(1)(B).

### B. Plaintiffs' Claims for Violations of the Implementing Regulations of the TCPA Are Properly Pled in the Alternative

**\*5** Defendants next move to dismiss Plaintiffs' claims for violations of the implementing regulations—specifically 47 C.F.R. § 64.1200(b)(1), 47 C.F.R. § 64.1200(b)(2), and 47 C.F.R. § 64.1601(e)—on the grounds that Plaintiffs cannot allege violations of both the TCPA and the implementing regulations based on the same misconduct. *See* Doc. No. 5–1 at 7–8; Doc. No. 8–1 at 6; Doc. No. 10–1 at 6–7. Specifically, Defendant Unified Life argues that "at best, Plaintiffs may be entitled to a cause of action *either* under the TCPA *or* the implementing regulations, but not both." *See* Doc. No. 5–1 at 8 (emphasis in original); *see also* Doc. No. 8–1 at 5–6; Doc. No. 10–1 at 6–7.

This argument is not well-taken. Section 227(b)(3) expressly authorizes a plaintiff to bring "an action based on a violation of this subsection or the regulations prescribed under this subsection." 47 U.S.C. § 227(b)(3); *see also Greene v. Sprint Commc'ns Co.*, 340 F.3d 1047, 1051 (9th Cir. 2003) ("Section 227, for example, authorizes an action for violation of the section 'or the regulations prescribed under this subsection.'") (citing 42 U.S.C. § 227(b)(3)); *Bais Yaakov of Spring Valley v. Alloy, Inc.*, 936 F. Supp. 2d 272, 286 (S.D.N.Y. 2013) ("Under the TCPA, the FCC is charged with prescribing regulations to implement the TCPA's requirements, *see* 47 U.S.C. § 227(b)(2), and parties may sue for violations of the statute "or the regulations prescribed" thereunder, *id.* § 227(b)(3)."). Moreover, Federal Rule of Civil Procedure 8(d) (2) permits a plaintiff to allege "2 or more statements of a claim ... alternatively or hypothetically, either in a single count ... or in separate ones." Fed. R. Civ. P. 8(d)(2); *see also MB Fin. Grp., Inc. v. U.S. Postal Serv.*, 545 F.3d 814, 819 (9th Cir. 2008) ("[A] plaintiff is generally entitled to plead alternative or multiple theories of recovery on the basis of the same conduct on the part of the defendant."). Thus, when read in conjunction, Plaintiffs may allege violations of an express provision of the TCPA and, alternatively, violations of the implementing regulations prescribed under the TCPA, in separate counts. *See* 47 U.S.C. § 227(b)(3); Fed. R. Civ. P. 8(d)(2).

Defendants rely on *Heidorn v. BDD Mktg. & Mgmt. Co., LLC*, No. 13-CV-00229 JCS, 2013 WL 6571629, at \*16 (N.D. Cal. Aug. 19, 2013) for the proposition that a telephone call that violates multiple provisions of the implementing regulations is considered a single violation. *See* Doc. No. 8–1 at 5–6; Doc. No. 10–1 at 6–7. However, the Court finds such reliance is misplaced. *Heidorn* involved the calculation of damages, specifically whether a plaintiff can recover per violation where one telephone call violates a TCPA provision as well as multiple provisions of the implementing regulations. *Id.* at \*16. Here, however, damage calculation is not presently at issue, and therefore *Heidorn* has no bearing at this stage of the litigation.

The Court finds that Plaintiffs may allege violations of both § 227(b)(1) of the TCPA and, in the alternative, violations of various implementing regulations prescribed under the TCPA, here 47 C.F.R. § 64.1200(b)(1), 47 C.F.R. § 64.1200(b)(2), and 47 C.F.R. § 64.1601(e). Accordingly, the Court **DENIES** Defendants' motions to dismiss.

### C. Plaintiffs Fail to State a Claim for Violations of the CLRA

Plaintiffs' fifth cause of action is for violations of California Civil Code section 1770(a)(22)(A), a provision of the CLRA, which requires that "all recorded messages disseminated within the state be introduced by a live, natural voice giving the name of the entity calling, the name of the entity being represented, an address or phone number for that entity, and asking permission to play the recording." Compl. ¶¶ 28-32. Defendants argue that Plaintiffs' claim fails because insurance is not a good or service as defined under the CLRA. Doc. No. 8–1 at 6.

**\*6** The CLRA only applies to transactions "intended to result or which result[ ] in the sale or lease of goods or services to any consumer..." Cal. Civ. Code § 1770(a). The California Supreme Court has held that the CLRA does not apply to insurance because it is not a "good" or "service" within the meaning of the Act. *Fairbanks v. Superior Court*, 46 Cal. 4th 56, 61 (2009). Therefore, the CLRA would not apply to the alleged calls Plaintiffs received if the calls only pertained to the sale of insurance. *See id.*

To rebut this, Plaintiffs assert in their opposition briefs that the calls also included an offer for membership in National Congress of Employers Incorporated trade organization. Doc. Nos. 11, 12, 22 at 6. However, in determining the propriety

Case 2:19-cv-13094-TGB-EAS ECF No. 7, PageID.159 Filed 12/10/19 Page 50 of 51

Engle v. Unified Life Insurance Company, Inc., Not Reported in Fed. Supp. (2014)

of a Rule 12(b)(6) dismissal, generally, a court may not look beyond the complaint for additional facts. *Ritchie*, 342 F.3d at 908. In the Complaint, Plaintiffs allege only that they received "advertising calls" related to the business of insurance. Compl. ¶¶ 39–40. Thus, as currently pleaded, Plaintiffs fail to state a claim under the CLRA. Accordingly, the Court **GRANTS** Defendants' motions and **DISMISSES** the CLRA claim on the basis that the sale of insurance is not a good or service under the CLRA. However, the Court grants Plaintiffs leave to amend their complaint. *See Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (holding that "[i]f a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency").

### D. Plaintiffs Fail to State a Claim for Trespass to Chattel

Defendants assert that Plaintiffs' sixth cause of action for trespass to chattel fails because they have not sufficiently alleged that their telephones suffered damages or were functionally impaired. Doc. No. 8–1 at 7. Plaintiffs contend that Defendants willfully, and with an intent to vex, injure, or annoy, made phone calls to them, without their consent, that caused damages that are yet to be ascertained. Compl. ¶¶ 33–37.

Under California law, one is only guilty of the tort of trespass to chattel if "his intermeddling is harmful to the possessor's materially valuable interest in the physical condition, quality, or value of the chattel, or if the possessor is deprived of the use of the chattel for a substantial time, or some other legally protected interest of the possessor is affected..." *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1351 (2003). Additionally, when dealing with electronic communication, the tort of trespass to chattel is not extended to encompass "communication that neither damages the recipient computer system nor impairs its functioning." *Id.* at 1347. In the context of personal phones rather than computers the Court finds *In re Apple & ATTM Antitrust Litigation* persuasive. *In re Apple & ATTM Antitrust Litig.*, No. C 07–05152 JW, 2010 WL 3521965, at *6 (N.D. Cal. July 8, 2010) *vacated in part sub nom.*, 826 F. Supp. 2d 1168 (N.D. Cal. 2011). In that case, the court found that the plaintiffs' not being able to use their phones for only a few days stood in sharp contrast to the "loss of use of commercial email servers in a large corporation for a 'substantial' or 'measurable' amount of time" which *Hamidi* recognized "could constitute an injury for the purpose of

trespass to chattels." *In re Apple & ATTM Antitrust Litig.*, 2010 WL 3521965, at *6.

*7 Plaintiffs only "lost the use" of their phones for the duration of a phone call or the matter of time it takes their phones to ring and go to voicemail. The minimal time that Plaintiffs could not use their phones does not meet the impaired function standard required by *Hamidi*. *See Hamidi*, 30 Cal. 4th at 1347. Accordingly, the Court **GRANTS** Defendants' motions and **DISMISSES** Plaintiffs' trespass to chattel claim on the basis that Plaintiffs have not adequately pled damages from the purported trespass.

### E. Plaintiffs States a Claim for a Violation of the UCL

Plaintiffs' seventh cause of action alleges Defendants engaged in unfair business practices under Business and Professions Code section 17200 ("UCL") by violating the TCPA and California Insurance Code section 790.03 (erroneously cited as § 790.3 in the Complaint). Compl. ¶¶ 38–42. Defendants argue that Plaintiffs fail to state a plausible claim for unfair business practices under the UCL because they have (1) failed to provide any facts relating to 47 U.S.C. § 227(e) which requires that Defendants knowingly transmitted misleading or inaccurate caller identification information with the intent to defraud, cause harm, or wrongfully obtain something of value, (2) failed to provide any facts to allege a violation of California Insurance Code section 790.03, (3) failed to provide a basis for the UCL claim because California Insurance Code section 790.03 (erroneously cited as § 790.3 in the Complaint) cannot be used, and (4) failed to allege an economic injury which is required by the UCL. Doc. No. 5–1 at 9; Doc. No. 8–1 at 8–9; Doc. No. 10–1 at 9–10.

Section 17200 prohibits "any unlawful, unfair or fraudulent business act or practice ..." These prongs of unfair competition are disjunctive, meaning that a claim for unfair competition liability can be based on unlawful, unfair, or fraudulent activity. *Cel-Tech Commn's, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180 (1999). Here, Plaintiffs allege a violation under the unlawful prong. Compl. ¶ 41. The unlawful prong of the UCL embraces "anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel-Tech Commn's, Inc.*, 20 Cal. 4th at 195 (citing *Barquis v. Merchants Collection Assn*, 7 Cal. 3d 94, 112 (1972)). Therefore, the UCL borrows other violations of law and "makes them independently actionable as unfair competitive practices." *Daro v. Superior Court*, 151 Cal. App. 4th 1079, 1092–93 (2007), *as modified on denial of reh'g* (July 3, 2007).

For the reasons stated above, Plaintiffs' TCPA claims are properly pled, and therefore, they support Plaintiffs' UCL claim. *See Reyes v. Saxon Mortgage Servs., Inc.*, No. 09–CV–1366–DMS–WMC, 2009 WL 3738177, at *5 n.1 (S.D. Cal. Nov. 5, 2009) (rejecting defendant's motion to dismiss plaintiff's UCL claim because plaintiff's TCPA claim was adequately pled). Accordingly, the Court **DENIES** Defendants' motions to dismiss Plaintiffs' UCL claim.

### F. Plaintiffs Fail to State Any Causes of Action Giving Rise to an Entitlement of Punitive Damages

Plaintiffs seek punitive damages for Defendants' alleged violations of the CLRA and trespass to chattel. Compl. ¶¶ 31, 37. However, for the reasons stated above, Plaintiffs CLRA and trespass to chattel claims have been dismissed.

Accordingly, the Court **GRANTS** Defendants' motions to dismiss Plaintiffs' claim of entitlement to punitive damages.

### CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motions to dismiss with leave to amend the Complaint.

**\*8  IT IS SO ORDERED.**

DATED: October 24, 2014.

**All Citations**

Not Reported in Fed. Supp., 2014 WL 12508347

---

Footnotes

1   Defendants FCHCN Insurance Agency Incorporated and Health Plan Intermediaries Holdings LLC have not appeared in this action.

2   As HCC's, Unified Life's, and National Congress' motions to dismiss are almost identical, the Court will address the motions together.

3   HCC, Unified Life, and National Congress will be collectively referred to as "Defendants."

4   The Court assumes the truth of all facts as alleged in the Complaint. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).

5   Defendants HCC and National Congress object to the Engle and Moser declarations, stating they are outside the scope of the pleadings, and Unified Life objects to various statements in the declarations. The Court agrees with HCC and National Congress that the declarations are outside the scope of the pleadings, and will not consider the declarations nor the objections raised by Unified Life. If on a motion under Rule 12(b)(6), "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). However, a Rule 12(b)(6) motion to dismiss cannot be converted to one for summary judgment until "the district court acts to convert the motion by indicating that it will not exclude... the supporting extraneous materials." *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk S. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997). As all of the parties have not had a reasonable opportunity to present all pertinent materials, the Court declines to convert Defendants' motions to dismiss and excludes Plaintiffs' declarations. *See Swedberg v. Marotzke*, 339 F.3d 1139, 1142 (9th Cir. 2003). Instead, the Court will only look to the "four corners" of the complaint. *See Americopters, LLC v. F.A.A.*, 441 F.3d 726, 732 n.4 (9th Cir. 2006).

---

**End of Document**                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.