**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MARK W. DOBRONSKI,

      Plaintiff,

                                  Case No. 19-13094

v.

                                  Hon. Marianne O. Battani

SUNPATH LTD., ANDREW M. GARCIA,
and JOSEPH A. ABRAHAM,

      Defendants.

_____/

**OPINION AND ORDER GRANTING IN PART AND**
**DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

## I.    INTRODUCTION

Plaintiff Mark W. Dobronski commenced this action in state court on September 24, 2019, alleging that Defendant SunPath Ltd. and two of its corporate officers, chief executive officer Andrew M. Garcia and chief operating officer Joseph A. Abraham, violated his rights under the federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by placing telemarketing robocalls to his cell phone and displaying a false caller identification number as the originating source of these calls.  Defendants removed the case to this Court on October 22, 2019, citing Plaintiff's assertion of claims arising under federal law.

Through the present motion filed on October 29, 2019, Defendants seek the dismissal of this suit for lack of personal jurisdiction, and they request in the alternative

that the claim asserted in Count III of Plaintiff's complaint be dismissed on the ground that no private right of action arises from the violation alleged in support of this claim.  In support of their jurisdictional challenge, Defendants have submitted affidavits in which the two individual Defendant corporate officers deny (i) that Defendant SunPath initiates outbound telemarketing calls to consumers or oversees any third party in initiating these calls, and (ii) that the individual officers had any role in placing the calls identified in Plaintiff's complaint.  As for their challenge to the "spoofing" claim asserted in Count III of Plaintiff's complaint, Defendants argue that no private right of action exists for vindicating an alleged violation of the anti-"spoofing" regulation cited in support of this claim.

Defendants' motion has been fully briefed by the parties.  Having reviewed the parties' submissions in support of and in opposition to this motion, as well as the accompanying exhibits and the remainder of the record, the Court has determined that it is appropriate to decide Defendants' motion without a hearing.  *See* Local Rule 7.1(f)(2), Eastern District of Michigan.  For the reasons stated below, the Court **GRANTS IN PART** Defendants' motion to dismiss, to the extent that it seeks the dismissal of Count III of Plaintiff's complaint, but otherwise **DENIES** this motion.

## II.    FACTUAL BACKGROUND

For present purposes, the facts of this case may be briefly summarized.  Plaintiff Mark W. Dobronski, proceeding *pro se*, alleges in his verified complaint that between November 9, 2018 and May 29, 2019, he received 14 calls on his cell phone that had the characteristics of calls placed via an automated telephone dialing system ("ATDS").

2

(*See* Dkt. 1, Ex. A, Verified Complaint at ¶¶ 41-42.)  Upon answering these calls, Plaintiff

spoke to a telemarketer who discussed options for automobile warranty coverage.  (*See*

*id.* at ¶ 43.)  During the course of these calls, the telemarketers "would identify that they

were affiliated with" Defendant SunPath Ltd.  (*Id.*)

According to Plaintiff, each of these 14 calls to his cell phone violated the TCPA in

three respects.  First, he alleges that these calls were unlawfully initiated "using an

automated telephone dialing system" that placed calls to his cell phone "without [his] prior

express written consent."  (*Id.* at ¶ 47.)  Next, Plaintiff alleges that although his cell phone

number is listed on the National Do Not Call Registry, the calls at issue nonetheless were

placed to this registered number without a lawful justification.  (*See id.* at ¶¶ 21, 50.)

Finally, he alleges that each of the 14 calls was unlawfully "spoofed" — that is, it

displayed a false caller identification number as the originator of the call.  (*See id.* at ¶

53.)

As noted, Plaintiff's apparent basis for charging Defendant SunPath with liability is

that during each of the 14 phone calls giving rise to this suit, the individual to whom he

spoke would state "[u]pon inquiry" that he or she was "affiliated with" this Defendant.  (*Id.*

at ¶ 43.)  Although Plaintiff does not specifically allege that Defendant SunPath itself

initiated any of these calls, he observes elsewhere in his complaint that "sellers may be

held vicariously liable for violations of the TCPA by third-party telemarketers that initiate

calls to market the seller's products or services."  (*Id.* at ¶ 27.)  As for the two corporate

officers of SunPath that he has named as additional Defendants, Plaintiff alleges that

3

they are subject to liability in light of their "personal control of [SunPath's] marketing activities," their "ability to cease the telemarketing activity" at issue, and their "active[] and personal[] involve[ment] in the conduct giving rise to" Plaintiff's claims, including "formulating, directing, implementing and ratifying the telemarketing scheme" through which the calls at issue were made to Plaintiff's cell phone.  (*Id.* at ¶¶ 30-31.)

## III.    STANDARD OF REVIEW

Through the present motion, Defendants seek the dismissal of this suit for lack of personal jurisdiction, and they request in the alternative that Count III of Plaintiff's complaint be dismissed for failure to state a claim.  To the extent that Defendants have moved for dismissal under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, it is Plaintiff's burden, as the party bringing this suit in a Michigan forum, to establish that the Court may permissibly exercise personal jurisdiction over each of the three out-of-state Defendants.  *See Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002).  Because the parties have invited the Court to resolve Defendants' motion solely upon the written record and without jurisdictional discovery or an evidentiary hearing, Plaintiff "need only make a prima facie showing of jurisdiction."  *Neogen Corp.*, 282 F.3d at 887 (internal quotation marks and citation omitted).

To make the requisite *prima facie* showing, Plaintiff must "establish[] with reasonable particularity sufficient contacts between [each Defendant] and the forum state to support jurisdiction."  *Neogen Corp.*, 282 F.3d at 887 (internal quotation marks and citation omitted).  Where, as here, "a federal court's subject matter jurisdiction over

4

a case stems from the existence of a federal question, personal jurisdiction over a defendant exists if the defendant is amenable to service of process under the forum state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant due process." *Bird v. Parsons,* 289 F.3d 865, 871 (6th Cir. 2002) (internal quotation marks, citation, and alterations omitted).  In determining whether this standard has been met, the Court "will not consider facts proffered by the defendant that conflict with those offered by the plaintiff, and will construe the facts in the light most favorable to" Plaintiff as the non-moving party.  *Neogen Corp.,* 282 F.3d at 887 (citation omitted).

Next, when determining whether Count III of Plaintiff's complaint is subject to dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, the Court must construe the complaint in a light most favorable to Plaintiff and accept all well-pleaded factual allegations as true.  *League of United Latin American Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007).  The Court then must ask whether these facts, taken as true, "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007).  As the Supreme Court has emphasized, however, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.

5

IV.   **ANALYSIS**

A.   **The Allegations of Plaintiff's Verified Complaint, Taken as True, Are Sufficient to Make a *Prima Facie* Showing That the Court May Exercise Personal Jurisdiction over Each of the Defendants.**

1.   **Applicable Law**

As the principal challenge raised in their motion, Defendants argue that Plaintiff has failed to put forward a sufficient factual basis for the Court to exercise personal jurisdiction over either Defendant SunPath or its two corporate officers, Defendants Garcia and Abraham.  As noted earlier, where "a federal court's subject matter jurisdiction over a case stems from the existence of a federal question, personal jurisdiction over a defendant exists if the defendant is amenable to service of process under the forum state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant due process."  *Bird,* 289 F.3d at 871 (internal quotation marks, citation, and alterations omitted).  In this case, Plaintiff has asserted claims under the federal TCPA, so this two-part standard governs the Court's jurisdictional inquiry. Moreover, because Michigan's long-arm statute has been construed as "extend[ing] to the limits imposed by federal constitutional due process requirements," the governing two-pronged test may be reduced to a single inquiry:  namely, "whether the exercise of personal jurisdiction over [Defendants] comports with constitutional due process." *AlixPartners, LLP v. Brewington,* 836 F.3d 543, 549 (6th Cir. 2016) (internal quotation marks and citations omitted).

6

To satisfy this standard, Plaintiff must "establish with reasonable particularity sufficient minimum contacts with Michigan so that the exercise of jurisdiction over [Defendants] would not offend traditional notions of fair play and substantial justice." *Neogen Corp.,* 282 F.3d at 889 (internal quotation marks and citation omitted).  This requirement of minimum contacts is "met if [Defendants] purposefully availed [themselves] of the privilege of conducting activities within the forum State."  282 F.3d at 889 (internal quotation marks, alteration, and citation omitted).  "Purposeful availment, the constitutional touchstone of personal jurisdiction, is present where the defendant's contacts with the forum state proximately result from actions by the defendant *himself* that create a substantial connection with the forum State, and where the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there."  282 F.3d at 889 (emphasis in original) (internal quotation marks and citations omitted).  This "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person."  282 F.3d at 889 (internal quotation marks and citation omitted).

The Sixth Circuit has adopted a three-part test for determining whether the exercise of limited personal jurisdiction[1] over an out-of-state defendant comports with due process:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.  Second, the cause of action must arise from the defendant's activities there.  Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine Co. v. Mohasco Industries, Inc.,* 401 F.2d 374, 381 (6th Cir. 1968) (footnote omitted).  The Court first inquires whether this standard has been met with respect to Defendant SunPath, and then turns to the individual Defendants.

### 2.    Defendant SunPath

Defendants' challenge to the exercise of personal jurisdiction over Defendant SunPath rests upon a simple premise:  that this firm did not make the telephone calls giving rise to this suit.  In support of this proposition, Defendants point to the affidavits submitted by the two individual Defendants, Andrew Garcia and Joseph Abraham, who state:  (i) that "SunPath does not engage in outbound telemarketing itself and therefore does not initiate outbound sales calls to consumers," (ii) that "SunPath's records show that it did not initiate any of the calls to the Plaintiff alleged in th[e] Complaint," and (iii) that "SunPath did not direct, oversee, or manage any third party in initiating" the calls

---

[1] Although Defendants address both general and specific (or limited) personal jurisdiction in their motion, Plaintiff appears to rely solely upon the latter in his opposition to Defendants' motion.  (*See* Dkt. 7, Plaintiff's Response Br. at 5, 11-12.)  Thus, the Court considers only whether Plaintiff has made a *prima facie* showing of the existence of limited personal jurisdiction over each Defendant.

8

identified in the complaint.  (Dkt. 4, Defendants' Motion to Dismiss, Ex. 1, Garcia Decl. at

¶¶ 6-7; Ex. 2, Abraham Decl. at ¶¶ 6-7.)  In Defendants' view, these assertions defeat

Plaintiff's showing, under the second prong of the above-cited *Southern Machine*

standard, that his claims in this case arise from SunPath's activities in the forum state of

Michigan, given that SunPath purportedly had no direct or indirect involvement in initiating

the offending calls to Plaintiff's cell phone.  Rather, Defendants contend that there simply

were "no contacts with Michigan by Defendant[] [SunPath] out of which [Plaintiff's] cause

of action arises."  (Defendants' Motion, Br. in Support at 11.)

   To refute these assertions in Defendants' affidavits, Plaintiff relies primarily upon

the allegation in his complaint that during each of the calls at issue, the caller stated that

he or she was "affiliated with Sun[P]ath."  (Complaint at ¶ 11.)[2]  This allegation, accepted

---

[2]Plaintiff also cites (i) the statements made by SunPath representatives in another
suit in this District, *Keskitalo v. SunPath Ltd.,* No. 17-11761, that SunPath conducts
business in Michigan, (*see* Plaintiff's Response, Ex. A, Garcia Decl. at ¶ 11; Ex. B,
Abraham Decl. at ¶ 11), and (ii) a corporate filing by SunPath that purportedly discloses
the existence of a registered office in this state, (*see* Plaintiff's Response, Ex. C,
Application for Certificate of Authority at 2).  As Defendants correctly observe, however,
the fact that a defendant conducts some business or is somehow present in a state does
not suffice to permit the exercise of limited personal jurisdiction over that defendant with
respect to claims unrelated to this forum-state presence or activity.

   In this case, Defendants state without contradiction that SunPath serves as a
"third party administrator of extended service contracts for automobiles."  (Defendants'
Motion, Br. in Support at 2.)  Assuming that some of these contracts are held by
Michigan auto owners, it stands to reason that SunPath will have some interactions with
Michigan residents, and that the firm therefore conducts some business in this state.
Such activity, however, says nothing about whether Plaintiff's telemarketing-based claims
arise from conduct that SunPath purposefully directed toward Michigan.  Thus, Plaintiff's
evidence of SunPath's business presence in Michigan is largely immaterial to the Court's
present inquiry.

as true, provides support for Plaintiff's effort to hold SunPath responsible for the phone calls giving rise to his claims in this case, whether as the direct initiator of these calls or, perhaps, under a theory of vicarious liability.  *See, e.g., Lucas v. Telemarketer,* No. 18-3633, 2019 WL 3021233, at *5 (6th Cir. May 29, 2019) (observing that the TCPA also allows for claims under the latter theory); *Hossfeld v. Government Employees Insurance Co.,* 88 F. Supp.3d 504, 510 (D. Md. 2015) (same).[3]  Moreover, Plaintiff states without contradiction that a defendant's violation of the TCPA through the purposeful initiation of a call to a phone in the forum state suffices to confer personal jurisdiction over the defendant.  *See, e.g., Keim v. ADF MidAtlantic, LLC,* 199 F. Supp.3d 1362, 1370 (S.D. Fla. 2016) ("[M]ultiple courts have found calls or text messages to a phone number affiliated with a particular state that violate the TCPA sufficient to satisfy the effects test for a court of that state to exercise personal jurisdiction over the defendant."); *Payton v. Kale Realty, LLC,* No. 13-8002, 2014 WL 4214917, at *3 (N.D. Ill. Aug. 26, 2014) (collecting cases).  Accordingly, accepting Plaintiff's allegations as true — as the Court must in the present procedural posture — it seemingly follows that Plaintiff has made a *prima facie* showing that the Court may exercise limited personal jurisdiction over Defendant SunPath.

In resisting this conclusion, Defendants point to the Sixth Circuit's statement that "in the face of a properly supported motion for dismissal, the plaintiff may not stand on

---

[3]The Court notes that Defendants have not challenged the sufficiency of Plaintiff's allegations to state viable claims against them under the TCPA, at least with respect to the claims asserted in Counts I and II of the complaint.

his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir. 1991). Because Plaintiff's opposition to Defendants' motion rests almost entirely upon the allegations of his complaint — along with, as noted earlier, exhibits indicating only that Defendant SunPath conducts some business in Michigan — and is unaccompanied by any affidavits or other materials that might supplement these allegations with the requisite "specific facts showing that the court has jurisdiction," Defendants submit that Plaintiff has failed to satisfy the Sixth Circuit's standard for making a *prima facie* showing of personal jurisdiction.

Yet, the guidance provided by *Theunissen* is not as clear and straightforward as Defendants suggest.  Shortly after cautioning that a plaintiff "may not stand on his pleadings" in opposing a "properly supported motion for dismissal," the court emphasized that a "court disposing of a [Rule] 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal," but instead must view the parties' pleadings and affidavits "in a light most favorable to the plaintiff."  *Theunissen,* 935 F.2d at 1459. The court explained that this analytical approach is intended to "prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts."  935 F.2d at 1459.  The court then observed that if a defendant wished to proceed in this fashion by "alleg[ing] facts to defeat jurisdiction" that contradict "the plaintiff's factual assertions," its proper recourse was to appeal to "the court's discretionary authority to hold an evidentiary hearing" in order to resolve the

11

parties' competing versions of the facts bearing upon personal jurisdiction.  935 F.2d at 1459.  By itself, then, *Theunissen* does not make it altogether clear whether Plaintiff may rely on the allegations of his complaint alone to oppose Defendants' jurisdictional challenge.

Fortunately, the Sixth Circuit has shed additional light on this question in a recent decision.  In *Malone v. Stanley Black & Decker, Inc.,* No. 19-3880, __ F.3d __, 2020 WL 3989601, at *1 (6th Cir. July 15, 2020), the plaintiffs brought a product liability suit arising from injuries sustained while using a table saw, and they named as one of the defendants a Taiwanese company, Rexon, that had manufactured this piece of equipment.  The Sixth Circuit found that the complaint's jurisdictional allegations, while "sparse on detail," were sufficient "to satisfy the relatively slight burden of a prima facie showing" of personal jurisdiction over defendant Rexon.  *Id.* at *4 (internal quotation marks and citation omitted).  Although the district court evidently had agreed to a point, and had "assumed the complaint's allegations were enough to satisfy [Ohio's] long-arm statute," it nonetheless had "concluded that [the plaintiffs] failed to satisfy the Due Process Clause," apparently on the ground that "an affidavit from one of Rexon's sales managers disclaimed some of the complaint's allegations."  *Id*.  In particular, the sales manager asserted, among other things, that Rexon had "never engaged in any marketing effort specifically targeting Ohio," had no "offices, agents, or property in the state," and had "never entered into any contract in the State of Ohio."  *Id.* (internal quotation marks omitted).

12

The Sixth Circuit reversed the district court's dismissal of the suit, holding that the sales manager's affidavit was "irrelevant" to the district court's inquiry once it elected to resolve Rexon's jurisdictional challenge on the parties' written submissions alone.  *Id.*  In light of the district court's adoption of this procedure, the plaintiffs "needed only to make a prima facie showing," and the Sixth Circuit pointed to its earlier observation that the plaintiffs "did [so] through their complaint."  *Id.* at *5.  Accordingly, while "Rexon provided an affidavit that in some ways cut against jurisdiction, the district court's choice of procedure made that irrelevant."  *Id.*  In support of this conclusion, the court pointed to its recognition in past precedents, including *Theunissen,* that a defendant should not be permitted to "defeat[] personal jurisdiction merely by filing a written affidavit contradicting jurisdictional facts alleged by a plaintiff."  *Id.* (internal quotation marks and citations omitted).  Instead, a defendant who wishes to challenge a plaintiff's jurisdictional allegations may request a "pretrial evidentiary hearing," and thereby trigger the evaluation of the plaintiff's jurisdictional allegations under a "more-exacting standard."  *Id.* (internal quotation marks and citations omitted).  Because "Rexon did not request a hearing and the [district] court did not hold one," the plaintiffs' modest "prima facie burden did not change."  *Id.*

In light of this recent Sixth Circuit decision, Plaintiff's *prima facie* showing in this case cannot be deemed insufficient solely on the ground that it rests on the jurisdictional allegations of his complaint alone, and not on any affidavits or other extrinsic materials that might lend additional support to this showing.  As already explained, the allegations

of Plaintiff's complaint, while not overly detailed, are nonetheless sufficient to make a *prima facie* showing of personal jurisdiction over Defendant SunPath, where Plaintiff has alleged that the individuals to whom he spoke in the telephone calls at issue identified themselves as "affiliated with SunPath," (Complaint at ¶ 43), and where the case law holds that the purposeful availment standard is satisfied when a defendant initiates allegedly unlawful calls to a resident of the forum state.  To be sure, Defendants challenge Plaintiff's jurisdictional allegations, through affidavits in which SunPath's officers deny that the company "engage[s] in outbound telemarketing itself," "initiate[s] outbound sales calls to consumers," or "direct[s], oversee[s], or manage[s] any third party in initiating" such calls to "consumers in Michigan."  (*See* Garcia Decl. at ¶¶ 6-7; Abraham Decl. at ¶¶ 6-7.)  As the Sixth Circuit has instructed in *Malone,* however, such affidavits are irrelevant to the Court's inquiry under the governing *prima facie* standard.  Indeed, absent an opportunity for Plaintiff to explore the statements in these affidavits, whether through discovery or at an evidentiary hearing, it is unclear how he could be expected to challenge the blanket assertions of SunPath's corporate officers that, for example, the company does not "itself" engage in outbound telemarketing efforts or "direct, oversee, or manage any third party in initiating" such calls.  Unsurprisingly, then, the law of this Circuit does not demand that Plaintiff make such a showing, at the threshold stage of this case, in order to meet the modest burden imposed by the *prima facie* standard.

### 3.    Defendants Garcia and Abraham

14

The foregoing analysis largely resolves the Court's jurisdictional inquiry with respect to the two SunPath officers named in Plaintiff's complaint, Defendants Andrew Garcia and Joseph Abraham.  In support of his TCPA claims against these two individuals, Plaintiff alleges that they "have personal control of the marketing activities of the defendant corporation, including the ability to cease the telemarketing activity," and that they were "actively and personally involved in the conduct giving rise to [Plaintiff's] claim[s], including formulating, directing, implementing and ratifying the telemarketing scheme" through which the calls at issue were placed to Plaintiff's cell phone.  (Complaint at ¶¶ 30-31.)  Arguably, these allegations satisfy the standard for imposing individual liability on corporate officers for their role in a company's violation of the TCPA, *see, e.g., City Select Auto Sales Inc. v. David Randall Associates,* 885 F.3d 154, 160-61 (3d Cir. 2018) (assuming, without deciding, that a corporate officer may be held liable for his company's TCPA violations "if he had direct, personal participation in or personally authorized the conduct found to have violated the statute" (internal quotation marks and citation omitted)); *Maryland v. Universal Elections,* 787 F. Supp.2d 408, 415 (D. Md. 2011) (citing a number of courts that have adopted this "personal participation" standard); *Jackson Five Star Catering, Inc. v. Beason,* No. 10-10010, 2013 WL 5966340, at *4 (E.D. Mich. Nov. 8, 2013) (also applying this standard) — and, again, it bears emphasis that Defendants have not mounted a Rule 12(b)(6) challenge to the sufficiency of Plaintiff's allegations in support of his claims against Defendants Garcia and Abraham.  Likewise, Defendants do not argue that Plaintiff's allegations as to the

personal involvement of these corporate officers in the initiation of the calls at issue, if accepted as true, would fail to provide a basis for exercising personal jurisdiction over these individuals.

Instead, Defendants' jurisdictional challenge to the claims asserted against Defendants Garcia and Abraham rests exclusively upon affidavits in which these two SunPath officers deny (i) that they had "any role" in making the calls at issue, (ii) that they "direct[ed] anyone to make" these calls, and (iii) that they had any knowledge that the calls were made.  (*See* Garcia Decl. at ¶ 8; Abraham Decl. at ¶ 8.)  Once again, then, the effect of these assertions is to refute Plaintiff's allegations that these two individuals did, in fact, personally participate in or authorize the calls identified in Plaintiff's complaint as having violated the TCPA.  As explained, however, because the Court is deciding Defendants' motion on the parties' written submissions alone, it suffices that the allegations of Plaintiff's complaint make a *prima facie* showing of jurisdiction over the individual Defendants; once it is determined that they do so, Defendants' declarations are no longer relevant to the Court's inquiry.  *See Malone,* 2020 WL 3989601, at *4-*5.  It follows that Plaintiff has made the requisite *prima facie* showing of jurisdiction with respect to his claims against Defendants Garcia and Abraham.

**B.    The TCPA Does Not Confer a Right to Pursue the Claim Asserted in Count III of Plaintiff's Complaint.**

In Count III of his complaint, Plaintiff alleges that Defendants violated a regulation promulgated under the authority of the TCPA, 47 C.F.R. § 64.1601(e), by providing false or "spoofed" caller identification numbers for each of the 14 telephone calls at issue in

16

this suit.  (Complaint at ¶ 53.)  As the final challenge advanced in their motion,

Defendants argue that this claim should be dismissed on the ground that no private right

of action exists under the TCPA for vindicating alleged violations of this regulation.  As

discussed below, the Court agrees.

As observed by Defendants, the court in *Worsham v. Travel Options, Inc.,* No.

14-2749, 2016 WL 4592373, at *3-*5 (D. Md. Sept. 2, 2016), extensively surveyed the

TCPA and its implementing provisions, explaining as a threshold matter that only

subsections (b) and (c) of the statute, 47 U.S.C. §§ 227(b) and (c), authorize the

commencement of private actions arising from violations of these provisions or the

corresponding regulations promulgated under these subsections.  The court noted, in

contrast, that "[n]o private right of action is granted under any other subsection of § 227."

*Id.* at *4.  As one of his several TCPA claims, the plaintiff in *Worsham* (like Plaintiff here)

alleged that the defendants had violated 47 C.F.R. § 64.1601(e) by failing to transmit

certain required caller identification information in their several calls to the plaintiff's cell

phone.  *See id.* at *7.  The question before the court, then, was whether this caller

identification regulation was "promulgated under either subsection *b* or subsection *c* of

the TCPA," such that a private right of action arose from its violation, or whether the

regulation instead was issued under the authority of another subsection of the statute

that did not confer a private right of action.  *Id.* at *4.  Although the court acknowledged

that the outcome of this inquiry was "not clear," it concluded that the "rule in [47 C.F.R.] §

64.1601(e) appears to *support* consumers' enforcement efforts under the TCPA's

17

subsection *c*, rather than to *create* a separate mechanism upon which a consumer can make an actionable claim." *Id.* Accordingly, the court held that the plaintiff's claim under § 64.1601(e) arose from "a violation of technical and procedural standards under subsection *d"* of the TCPA, for which "no private right of action exists," and that the plaintiff therefore had "fail[ed] to state a claim for relief." *Id.* at *7; *see also Meyer v. Capital Alliance Group,* No. 15-2405, 2017 WL 5138316, at *17 (S.D. Cal. Nov. 6, 2017) (electing to follow *Worsham* in holding that "section 64.1601(e) does not create a private right of action").

This case law, of course, is not binding on the Court. In addition, Plaintiff cites two cases in which the plaintiffs were permitted to go forward with claims arising from alleged violations of 47 C.F.R. § 64.1601(e). *See Braver v. Northstar Alarm Services, LLC,* No. 17-0383, 2017 WL 11139779, at *5 (W.D. Okla. Aug. 25, 2017); *Engle v. Unified Life Insurance Co.,* No, 14-1908, 2014 WL 12508347, at *5 (S.D. Cal. Oct. 27, 2014).

In a recent decision in another suit Plaintiff has brought in this District, the court addressed precisely the same argument raised in Defendants' motion, and surveyed the same cases cited by the parties here. *See Dobronski v. SelectQuote Insurance Services,* No. 19-12798, __ F. Supp.3d __, 2020 WL 2744124, at *3 (E.D. Mich. May 27, 2020). The court first noted that the cases identified by the parties were not "binding authority here," and that this Circuit's case law likewise "is devoid of binding authority" on the availability of a cause of action arising from a violation of 47 C.F.R. § 64.1601(e). *Id.*

18

The court then found that the decisions cited by the defendant were "considerably more persuasive and on point," and that the cases relied on by Plaintiff, in contrast, did not "directly address the issue of a private right of action for violations of 47 C.F.R. § 64.1601(e)." *Id.* Accordingly, the court denied Plaintiff's request for leave to amend his complaint, reasoning that it would be futile to allow Plaintiff to assert a claim alleging that the caller identification information for calls placed to his phone was "spoofed." *Id.*

The Court finds that this recent decision, in another case brought by Plaintiff, thoroughly surveys the relevant case law and persuasively explains why the court elected to follow *Worsham* and *Meyer* over *Braver* and *Engle*. Thus, the Court sees no need to elaborate on the cogent analysis put forward in that case. Consequently, for the reasons stated in *Dobronski,* 2020 WL 2744124, at *3, the Court holds that Count III of Plaintiff's complaint is subject to dismissal for failure to state a claim upon which relief can be granted.

## V.    CONCLUSION

For these reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' October 29, 2019 motion to dismiss (Dkt. 4). Specifically, the Court **GRANTS** Defendants' request for dismissal of Count III of Plaintiff's complaint for failure to state a claim, but **DENIES** Defendants' request to dismiss this suit for lack of personal jurisdiction.

19

**IT IS SO ORDERED.**

Date: July 27, 2020                          s/Marianne O. Battani
                                             MARIANNE O. BATTANI
                                             United States District Judge